# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISON

NOVO NORDISK, INC.,

        Plaintiff,

        vs.

BROOKSVILLE
PHARMACEUTICALS INC.,

        Defendant.

Case No.  8:23-cv-1503- WFJ-TGW

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

---

**FRIER & LEVITT, LLC**
101 Greenwich Street
8th Floor, Suite 8B
New York, New York 10006
(646) 970-6882

Attorneys for Defendant Brooksville
Pharmaceuticals Inc.

On the Brief:

Matthew J. Modafferi, Esq.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ............................................................ 1

ALLEGATIONS ............................................................................ 2

STATUTORY BACKGROUND ............................................................ 3

STANDARD OF REVIEW ................................................................ 5

ARGUMENT ................................................................................ 6

    I.     PLAINTIFF CANNOT DEMONSTRATE ARTICLE III
           STANDING…................................................................ 6

    II.    PLAINTIFF'S CLAIM IS PRE-EMPTED BY THE FEDERAL
           FDCA ........................................................................ 9

    III.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A CLAIM UNDER
           THE FDUTPA ............................................................ 16

    IV.   BROOKSVILLE'S CONDUCT FALLS WITHIN THE FDUTPA'S
           SAFE HARBOR PROVISION ............................................ 20

CONCLUSION ............................................................................ 21

# TABLE OF AUTHORITIES

## CASES

*Amara v. Publix Supermarkets, Inc.*,
8:22-cv-367-VMC-JSS,
2022 U.S. Dist. LEXIS 145598 (M.D. Fla. Aug. 12, 2022) .............................. 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... 1, 5, 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)) ............................................................................................ 5

*Bowsher v. Synar*,
478 U.S. 714 (1986) .............................................................................................. 7

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ........................................................................................... 11

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*,
169 So. 3d 164 (Fla. 4th DCA 2015) ................................................................. 19

*Carriuolo v. GM Co.*,
823 F.3d 977 (11th Cir. 2016) ........................................................................... 18

*CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus.*,
No. 3:16-CV-186-J-34JRK,
2018 U.S. Dist. LEXIS 24920 (M.D. Fla. Feb. 15, 2018) ........................... 18, 19

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .............................................................................................. 8

*Cruz v. Cingular Wireless, LLC*,
648 F.3d 1205 (11th Cir. 2011) ......................................................................... 17

*Dapeer v. Neutrogena Corp.*,
95 F. Supp. 3d 1366 (S.D. Fla. 2015) .................................................................. 8

iii

*Emory v. Peeler*,
756 F.2d 1547 (11th Cir. 1985)..................................................................... 8

*Erickson v. Pardus*,
551 U.S. 89 (2007) ....................................................................................... 5

*F.T.C. v. Sperry & Hutchinson Co.*,
405 U.S. 233 (1972)..................................................................................... 15

*Guerro v. Target Corp*,
889 F. Supp. 2d 1348 (S.D. Fla. 2021) ....................................................... 18

*Hernandez v. Aurobindo Pharma USA, Inc.*,
582 F. Supp. 3d 1192 (M.D. Fla. Jan. 24, 2022)........................................... 2

*Hope Med. Enter., Inc. v. Fagron Compounding Servs., LLC*,
2023 U.S. App. LEXIS 19072 (9th Cir. Jul. 26, 2023) ................................. 14

*Hope Med. Enters., Inc. v. Fagron Compounding Servs., LLC*,
2021 U.S. Dist. LEXIS 206565 (C.D. Cal. Oct. 26, 2021) ............................ 14

*Houston v. Marod Supermarkets, Inc.*,
733 F.3d 1323 (11th Cir. 2013)) ................................................................... 7

*Jackson v. BellSouth Telecomms.*,
372 F.3d 1250 (11th Cir. 2004)..................................................................... 5

*Lankhorst v. Indep. Sav. Plan Co.*,
No. 3:11-cv-390-J-34JRK,
2012 U.S. Dist. LEXIS 204347 (M.D. Fla. Feb. 23, 2012) ........................... 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...................................................................................... 7

*Mink v. Smith & Nephew, Inc.*,
860 F.3d 1319 (11th Cir. 2017)................................................................... 12

*MSPA Claims 1, LLC v. Tenet Fla., Inc.*,
918 F.3d 1312 (11th Cir. 2019)....................................................................... 6

*Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs.*,
48 F.4th 1040 (9th Cir. 2022) ....................................... 2, 12-16, 18, 20

*Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs.*,
No. SACV 20-01506-CJC(JDEx),
2020 U.S. Dist. LEXIS 220759 (C.D. Cal. Nov. 18, 2020) .................. 10, 11, 12

*Ohio State Troopers Association, Inc. v. Point Blank Enterprises, Inc.*,
347 F. Supp. 3d 1207 (S.D. Fla. 2018) .................................................... 7

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
842 So. 2d 773 (Fla. 2003) ......................................................................... 18

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014)..................................................................................... 10

*Prohias v. AstraZeneca Pharms., L.P.*,
958 So. 2d 1054 (Fla. Dist. Ct. App. 2007) ...................................... 21

*Snyder v. Green Roads of Florida, LLC*,
430 F. Supp. 3d 1297 (S.D. Fla. 2020) ............................................... 21

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................................................................................... 7

*Strickland v. Alexander*,
772 F.3d 876 (11th Cir. 2014)................................................................ 19

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002)....................................................................................... 3

*Wasser v. All Market, Inc.*,
329 F.R.D. 464 (S.D. Fla. 2018)............................................................... 7

*Wellness Pharm., Inc. v. Becerra,*
2021 U.S. Dist. LEXIS 179276 (D.D.C. Sept. 21, 2021)....................................... 4

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008) .............................................................................................. 9

*Zlotnick v. Premier Sales Grp., Inc.,*
480 F.3d 1281 (11th Cir.2007)......................................................................... 18

## **RULES AND STATUTES**

15 U.S.C. § 45(a)(1) ......................................................................................... 15

21 C.F.R. §§ 10.25(a), 10.30........................................................................... 10

21 U.S.C. § 333................................................................................................ 10

21 U.S.C. § 337(a) ..................................................................................... 10, 16

21 U.S.C. § 353a ........................................................................................... 3, 4

21 U.S.C. § 353a(a) ........................................................................................... 4

21 U.S.C. §§ 353a(c) ......................................................................................... 5

21 U.S.C. §§ 353a, 353b ................................................................................... 3

21 U.S.C. § 355................................................................................................... 3

21 U.S.C. §§ 332-34, 372............................................................................... 10

21 U.S.C. §§ 393(a), (b)(2)(B)........................................................................ 10

Fed. R. Civ. P. 12(b)(6).................................................................................... 5

Fla. Stat. § 499.023 .......................................................................................... 3

Fla. Stat. § 501.204(2)) ....................................................................... 15

Fla. Stat. § 501.211(1)........................................................................... 17

Fla. Stat. § 501.212(1)........................................................................... 21

Section 503A of the FDCA.......................................................... 2, 3, 4, 16, 20

U.S. Const. art. VI, cl. 2 ......................................................................... 10

## OTHER AUTHORITIES

https://www.accessdata.fda.gov/scripts/drugshortages/default.cfm (last
     searched August 8, 2023) ................................................................... 4

https://www.fda.gov/drugs/human-drug-compounding/drug-compounding-and-
     drug-shortages; *see also* https://www.fda.gov/drugs/postmarket-drug-safety-
     information-patients-and-providers/medications-containing-semaglutide-
     marketed-type-2-diabetes-or-weight-loss ......................................................... 4

https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-
     providers/medications-containing-semaglutide-marketed-type-2-diabetes-
     or-weight-loss .................................................................................. 4, 9

## PRELIMINARY STATEMENT

Plaintiff filed identical, boilerplate complaints against several different pharmacies, including Brooksville Pharmaceuticals ("Brooksville").  *See Novo Nordisk v. DCA Pharmacy*, 3:23-cv-668 (M.D. Tenn.); *Novo Nordisk v. Wellhealth, Inc.*, 3:23-cv-782 (M.D. Fla.); *Novo Nordisk v. Live Well Drugstore LLC,* 3:23-cv-808 (M.D. Fla.); *Novo Nordisk v. Brooksville Pharmaceuticals*, 3:23-1503.[1]  As one would expect with the same recycled complaint, there are no facts as to Brooksville but rather conclusory allegations and conclusions of law that fall short of meeting the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In addition, and as a threshold matter, Plaintiff cannot demonstrate Article III standing and the requirements necessary for injunctive or declaratory relief.  Even if Plaintiff could establish a concrete, real, and imminent future harm, which it cannot, Plaintiff's claim is preempted by federal statute, the Food Drug and Cosmetic Act ("FDCA").  Finally, even assuming (1) Plaintiff can show Article III standing (which it cannot) and (2) that its claim is not preempted (it is preempted), Plaintiff's Complaint fails to plausibly allege a claim under the FDUTPA.

---

[1] The sole claim here is for an alleged violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

1

Accordingly, the Court should grant Brooksville's motion to dismiss and deny any amendment as futile.

## ALLEGATIONS

Plaintiff is a healthcare company that provides three medicines containing semaglutide for weight management and diabetes and is the only company in the United States with products containing semaglutide that are approved by the Food and Drug Administration ("FDA"). Compl. ¶¶ 2, 3, 27. Brooksville provides drugs containing semaglutide that are not FDA approved. *Id.* ¶ 9, 31, 32.[2]

The remainder of the Complaint contains conclusory allegations and conclusions of law,[3] as well as allegations that are irrelevant to Brooksville.[4]

---

[2] Contrary to Plaintiff's allegations, "[c]ongress does not subject compounded drugs to an approval process it uses for new drugs because valid compounding has traditionally been seen as an appropriate means of customizing existing drugs to the needs of individual patients." *Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs.*, 48 F.4th 1040, 1042 (9th Cir. 2022). In addition, when a drug is in shortage, compounding pharmacies may prepare a compounded version of that drug if they meet certain requirements in the FDCA. *See* https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss. Semaglutide is listed on FDA's Drug Shortages list. https://www.accessdata.fda.gov/scripts/drugshortages/default.cfm (last searched August 8, 2023). Plaintiff omits these critical facts from the complaint; however, the Court can take judicial notice of them in deciding this motion. *See Hernandez v. Aurobindo Pharma USA, Inc.*, 582 F. Supp. 3d 1192, 1200 (M.D. Fla. Jan. 24, 2022) (collecting cases).

[3] Compl. ¶¶ 9, 10, 11, 12, 14, 20, 28, 33-37, 43-50 (setting forth conclusory allegations and conclusions of law).

[4] *See* Compl. ¶ 13 (citing to a meningitis outbreak from over a decade ago that involved a New England Compounding Center); *see also* https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/press-releases/january-31-2018-new-england-compounding-center-pharmacist-sentenced-role-nationwide-fungal.

## STATUTORY BACKGROUND

Generally, the FDCA and parallel state statutes require approval by the FDA and other state agencies before drugs can be sold. *See, e.g.*, 21 U.S.C. § 355; Fla. Stat. Ann. § 499.023. Compounded drugs are exempted from these requirements under both federal and state laws when certain conditions are met. *See, e.g.*, 21 U.S.C. §§ 353a, 353b. "Drug compounding" refers to "the process by which a pharmacist or doctor combines, mixes, or alters ingredients to create a medication tailored to the needs of an individual patient." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 360-61 (2002).

Section 503A of the FDCA regulates "pharmacy compounding." 21 U.S.C. § 353a. Drug products are exempted from normal-drug approval requirements under Section 503A when compounded (1) "for an identified individual patient based on the receipt of a valid prescription order or a notation, approved by the prescribing practitioner, on the prescription order that a compounded product is necessary for the identified patient" and (2) before the receipt of a prescription when the compounding is based on a history of receiving valid prescription orders for the compounding of the drug product, which orders have been generated solely within an established relationship between the pharmacy and the patient or prescribing physician. 21 U.S.C. § 353a(a).

3

Section 503A also requires that the compounded prescription is: (1) made from approved drug products using ingredients that comply with national standards; (2) not compounded regularly or in inordinate amounts (as defined by the Secretary) if the compounded drug is essentially a copy of a commercially available product; and (3) not a drug product whose safety or effectiveness may be adversely affected by compounding.  21 U.S.C. § 353a(b)); *see Wellness Pharm., Inc. v. Becerra*, 2021 U.S. Dist. LEXIS 179276, at *9 (D.D.C. Sept. 21, 2021) (setting aside section 353a(b)(3)(B)).  The provision of 503A that applies to compounding a drug product that is "essentially a copy of a commercially available drug" does not apply to compounding a drug on the shortage list because FDA does not consider drugs on the list to be "commercially available."  *See* FDA Guidance "Drug Compounding and Drug Shortages."[5]

The FDA is authorized to create the rules and regulations necessary to implement section 503A.  21 U.S.C. §§ 353a(c).

---

[5] https://www.fda.gov/drugs/human-drug-compounding/drug-compounding-and-drug-shortages; *see also* https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss ("When a drug is in shortage, compounders may be able to prepare a compounded version of that drug if they meet certain requirements in the Federal FDCA").  As of August 2023, semaglutide is listed on FDA's Drug Shortages list. https://www.accessdata.fda.gov/scripts/drugshortages/default.cfm (last searched August 8, 2023).

## STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. *See Iqbal*, 556 U.S. at 678. Nonetheless, the plaintiff must still meet pleading requirements by "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at

678, 680.  Thus, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Moreover, when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." *Id.*

## ARGUMENT

### I.    Plaintiff Cannot Demonstrate Article III Standing

A threshold issue is whether Plaintiff has standing to pursue its claims. *See Bowsher v. Synar*, 478 U.S. 714, 721 (1986).  Article III standing has three components: (1) the plaintiff must have "suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "An injury-in-fact must be both (1) particularized (affect the plaintiff in a personal and individual way) and (2) concrete (real, and not abstract)." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019).  "The party invoking federal jurisdiction bears

6

the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"The injury-in-fact demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that [she] will be affected by the allegedly unlawful conduct in the future.'" *Ohio State Troopers Association, Inc. v. Point Blank Enterprises, Inc.*, 347 F. Supp. 3d 1207, 1223 (S.D. Fla. 2018) (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013)); *see also Wasser v. All Market, Inc.*, 329 F.R.D. 464, 470 (S.D. Fla. 2018) ("[T]o satisfy Article III, a Plaintiff pursuing injunctive relief must seek to redress a real and immediate threat of future injury, and past harm will not suffice."). A threat of future injury also "must be certainly impending to constitute an injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

These same standards apply to declaratory relief. *See Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("[A] plaintiff seeking declaratory or injunctive relief must allege and ultimately prove a real and immediate—as opposed to merely hypothetical or conjectural—threat of *future* injury.") (emphasis in original) (citation omitted); *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) ("The remote possibility that a future

7

injury may happen is not sufficient to satisfy the actual controversy requirement for declaratory judgments.") (citation omitted).

Although the FDUTPA "allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction, . . . it cannot supplant Constitutional standing requirements – The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs . . . must be able to demonstrate more than mere injury from past wrongs." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373-74 (S.D. Fla. 2015) (internal quotation marks and citations omitted). "[A]t the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element" of standing. *Id.* (internal quotation marks omitted).

Plaintiff alleges that it has suffered harm to its goodwill and reputation (*see* Compl. ¶¶ 37, 45, 49), but does not allege how this is possible, let alone plausible. Brooksville compounds using the semaglutide molecule that also is contained in Plaintiff's drugs but there is no connection between the compound and Plaintiff's drugs or Plaintiff. There are no allegations that Brooksville uses Plaintiff's product names or the name Novo Nordisk. There is no casual connection between Plaintiff's conclusory allegations of harm to its goodwill and reputation and Brooksville.

Without plausible allegations concerning past harm, future harm is even more speculative and remote. Indeed, bare assertions and speculation are not

8

enough. Plaintiff concludes, without support or explanation, that its goodwill and reputation will continue to be harmed absent an injunction. *See* Compl. ¶ 46. It is axiomatic that an injunction will not be issued simply to prevent the possibility of some remote future injury. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In sum, Plaintiff cannot demonstrate the elements of standing for injunctive and declaratory relief.[6]

## II.    Plaintiff's Claim is Pre-empted By the FDCA

Preemption is a creature of the Supremacy Clause of the United States Constitution which states that "the Laws of the United States ... shall be the supreme Law of the Land ... ." U.S. Const. art. VI, cl. 2.

Congress passed the FDCA in 1938 to, among other things, create the FDA and charge that agency with ensuring that "drugs are safe and effective." 21 U.S.C. §§ 393(a), (b)(2)(B). Congress made the FDA responsible for investigating potential violations of the FDCA, and gave it a number of enforcement mechanisms, including injunction proceedings, civil and criminal penalties, and seizure. 21 U.S.C. §§ 332-34, 372. "Given this scheme, if someone believes the FDCA is being violated, a private lawsuit is generally not the way to address it" and "[w]hile citizens may petition the FDA to take

---

[6] There also is no basis to amend the Complaint to include unfounded allegations concerning real and immediate harm to Plaintiff's reputation. Indeed, pharmacies are permitted to compound semaglutide. *See* https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss (explicitly noting that the FDA permits proper compounding of semaglutide).

administrative action, private enforcement of the statute is barred." *Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs.*, No. SACV 20-01506-CJC(JDEx), 2020 U.S. Dist. LEXIS 220759, at *6 (C.D. Cal. Nov. 18, 2020) (citing 21 C.F.R. §§ 10.25(a), 10.30). The FDCA explicitly instructs that there shall be no private claims to enforce the statute:

> [e]xcept as provided in subsection b, all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.

21 U.S.C. § 337(a); *see also* 21 U.S.C. § 333 (outlining penalties); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014) ("[T]he FDCA and its regulations provide the United States with nearly exclusive enforcement authority, including the authority to seek criminal sanctions in some circumstances."); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352-53 (2001) (determining that, given the fact that FDCA violations are prosecuted only by the United States, claims where violation of the statute was a "critical element" are impliedly preempted).

In *Buckman*, the Supreme Court addressed implied preemption under the FDCA and section 337(a). The Supreme Court explained that the FDA has the sole authority "to police fraud consistently with the Administration's judgment and objectives" and held that plaintiffs' claims were preempted because those claims "exist[ed] solely by virtue of the FDCA disclosure requirements" and permitting such claims to proceed would "skew[] ... [the]

delicate balance of statutory objectives" the FDA seeks to achieve in enforcing the FDCA's requirements.  531 U.S. at 350, 352-53.  In finding these claims impliedly preempted under the FDCA, the Supreme Court explained that the claims "exist[ed] solely by virtue of the FDCA ... requirements." *Id.* at 353.  Plaintiffs were not "relying on traditional state tort law which had predated the federal enactments in question," but "the existence of these federal enactments [were] a critical element in their case." *Id.*  Therefore, to avoid implied preemption, the Court explained, claims must be based not on the FDCA, but on common law or "traditional state tort law [that] predated the federal law in question." *Id.*; *see Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1327 (11th Cir. 2017) ("the Supreme Court told us that traditional state-law tort claims survive implied preemption so long as they don't seek to privately enforce a duty owed to the FDA.").

Two recent decisions from the Ninth Circuit (*Nexus Pharms.* and *Hope Medical*) are analogous to the case here and demonstrate that Plaintiff's claims are preempted.  In *Nexus Pharms. Inc. v. Cent. Admixture Pharm. Servs.*, plaintiff alleged that it sold the only FDA approved ephedrine sulfate product, defendants (503 facilities) were selling a non-FDA approved compounded ephedrine sulfate product, and thus defendants violated the FDUTPA by

selling unapproved drugs and unfairly competing with Nexus.[7]  2020 U.S. Dist.

LEXIS 220759, at *4-*5.  Plaintiff alleged that defendants engaged in unfair

competition because they were selling an unapproved drug when Plaintiff has

the FDA-approved version.  "Put another way, Nexus alleges that [d]efendants'

actions constitute unfair competition because they are not following the rules—

and those rules are the FDCA rules."  *Id.* at *8.  Thus, the district court held

that, "[l]ike in *Buckman*, Nexus's claims exist only because of the FDCA's

requirements [and] [c]onsequently, Nexus's unfair competition claims are

impliedly preempted."  *Id.*

The Ninth Circuit affirmed the lower court decision. The Court of

Appeals explained that plaintiff's claim was barred by the exclusive

enforcement statute because it would require litigation of an alleged

underlying FDCA violation, a task reserved to the FDA, and proceedings to

enforce or restrain violations of the FDCA, including the compounding statute,

had to be by the United States.  *Nexus Pharms., Inc. v. Cent. Admixture Pharm.

Servs.*, 48 F.4th 1040, 1048 (9th Cir. 2022), *reh'g denied en banc* 2022 U.S. App.

LEXIS 30561 (9th Cir. Nov. 3, 2022); *see also id.* at 1049 ("to permit Nexus to

proceed with a claim that Defendants violated this law when the FDA did not

so determine would, in effect, permit [Nexus] to assume enforcement power

---

[7] Plaintiff presents identical allegations (albeit regarding a different drug product).

which the statute does not allow and require the finder of fact to make a decision that the FDA itself did not make.") (citation omitted).

Critically, the Ninth Circuit addressed the difference between a "purported state law violation [] of a law that says in substance 'comply with the FCDA'" and "a traditional common law tort." *Nexus Pharms.*, 48 F.4th at 1050. If Nexus had claimed harm to a patient, "where a traditional common law tort action might provide a remedy to the patient," then its claim would have survived preemption. *Id.* However, the claim is that a manufacturer is harmed because the defendant purportedly violated a state law that says in substance "comply with the FDCA." *Id.* Thus, the private enforcement bar provision applied, and the claim was preempted. *Id.* at 1050-51.

In *Hope Medical Enterprises, Inc. v. Fagron Compounding Servs., LLC*, the plaintiff alleged that it had FDA approval for its sodium thiosulfate drugs, defendants sold compounded sodium thiosulfate drugs that were not FDA approved, and thus, defendants' practices constituted unfair competition in violation of several states' unfair trade practice and consumer protection laws, including the FDUTPA.[8] *Hope Med. Enters., Inc. v. Fagron Compounding Servs., LLC*, 2021 U.S. Dist. LEXIS 206565, *2-*3 (C.D. Cal. Oct. 26, 2021). Recently, the Ninth Circuit reversed the lower court's decision and held that

---

[8] Plaintiff presents identical allegations (albeit regarding a different drug product).

13

the FDCA's prohibition on private enforcement and the doctrine of implied preemption barred the suit because it sought to "'enforce its interpretation' of the FDCA's rules for manufacturing compounded drugs against a competitor.'" *Hope Med. Enter., Inc. v. Fagron Compounding Servs.*, LLC, 2023 U.S. App. LEXIS 19072, *3 (9th Cir. Jul. 26, 2023).

Here, Plaintiff's claim is based on an alleged violation of the Florida Drug and Cosmetic Act – which requires compliance with the FDCA – as opposed to a claim sounding in traditional common law tort. *See* Compl. ¶¶ 29, 30, 32 (alleging Defendant violated the Florida Drug and Cosmetic Act because it is selling a drug that has not been "approved by the FDA under section 505 of the FDCA … ."). Such a claim is preempted. *See Buckman*, 531 U.S. at 353 (barring unfair competition claim because the FDCA rules are a "critical element" of the claim); *Nexus Pharms.*, 48 F.4th at 1050 (barring claim alleging a manufacturer is harmed because the defendant purportedly violated a state law that says in substance "comply with the FDCA.").

Also, the FDUTPA is not a common law tort claim such that Plaintiff can thread the needle to avoid preemption. Rather, the FDUTPA parallels section 5(a)(1) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a)(1). *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010) (courts interpreting the FDUTPA "must give 'due consideration and great weight' to Federal Trade Commission and federal court interpretations

14

of section 5(a)(1) of the FTCA" (quoting Fla. Stat. § 501.204(2)). The Supreme Court has held that section 5(a)(1) extends beyond common law conceptions of unfair competition, (*see F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 243, (1972) ("It would not have been a difficult feat of draftsmanship to have restricted the operation of the Trade Commission Act to those methods of competition in interstate commerce which are forbidden at common law . . . , if that had been the purpose of the legislation.")), and the FDUTPA is not a traditional common law claim. *See Lankhorst v. Indep. Sav. Plan Co.*, No. 3:11-cv-390-J-34JRK, 2012 U.S. Dist. LEXIS 204347, at *11 (M.D. Fla. Feb. 23, 2012) ("[T]he FDUTPA is a statutorily created cause of action, which did not exist at common law.").

Here, a necessary element of Plaintiff's claim is the alleged violation of the Florida Drug and Cosmetic Act and the FDCA. Plaintiff's claim requires litigation of whether Brooksville's compounded drugs comply with section 503A of the FDCA, when the FDA itself has not made such a finding. "[T]o permit [Plaintiff] to proceed with a claim that Defendants violated this law when the FDA did not so determine would, in effect, permit [Plaintiff] to assume enforcement power which the statute does not allow and require the finder of fact to make a decision that the FDA itself did not make." *Nexus Pharms.*, 48 F.4th at 1049 (citation omitted); *see also Buckman*, 531 U.S. 350, 352-53 (same). Proceedings to enforce or restrain violations of the FDCA,

15

including the compounding statute, must be by and in the name of the United States, not a private party, and Plaintiff's claim is barred by the exclusive enforcement statute, 21 U.S.C. § 337(a).

Indeed, even if a state decides to have stricter provisions than the federal FDCA, preemption is still appropriate. *See Nexus Pharms.*, 48 F.4th at 1048 ("The statutory prohibition on private enforcement gives the FDA discretion to temper enforcement or not to enforce in circumstances it deems appropriate. If state law facilitates enforcement beyond what the FDA has deemed appropriate, then state law claims indeed "stand as an obstacle" to FDA's enforcement discretion by enabling what the FDA regards as over-enforcement.").

Accordingly, as explicitly discussed in *Nexus Pharms.* and *Hope Medical*, and in accordance with binding Supreme Court precedent in *Buckman*, Plaintiff's claim is preempted. "[B]ecause federal preemption cannot be cured by amendment, the Court [should] dismiss[] this case with prejudice." *Amara v. Publix Supermarkets, Inc.*, 8:22-cv-367-VMC-JSS, 2022 U.S. Dist. LEXIS 145598, at *14 (M.D. Fla. Aug. 12, 2022).

### III.    Plaintiff Fails to Plausibly Allege a Claim Under the FDUTPA

To the extent that Plaintiff somehow has overcome preemption and has adequately pled the elements of standing, Plaintiff fails to plausibly state a

FDUTPA claim.    Under the FDUTPA, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Fla. Stat. § 501.204. "[A]nyone aggrieved by a violation of [the FDUTPA] may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate [the FDUTPA]." Fla. Stat. § 501.211(1); *accord Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1207 n.5 (11th Cir. 2011).

An objective test is used to determine whether an act is deceptive under FDUTPA, and "the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Carriuolo v. GM Co.*, 823 F.3d 977, 983-84 (11th Cir. 2016) (citation omitted).  A deceptive act occurs "if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. This standard requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying consumer." *Zlotnick v. Premier Sales Grp., Inc.,* 480 F.3d 1281, 1284 (11th Cir.2007) (citation and quotations omitted).

To establish an unfair practice, the plaintiff must show that it is "one that 'offends established public policy' and one that is 'immoral, unethical,

oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (citation omitted).

As an initial matter, Plaintiff does not allege deception because there is no deception. No consumers were misled. Plaintiff makes conclusory allegations of unfairness by alleging that Brooksville violated the Florida Drug and Cosmetic Act because it sells a drug that is not approved by the FDA.[9] But this allegation is insufficient as it provides no facts concerning the claim. *See Guerro v. Target Corp*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2021) (granting motion to dismiss FDUTPA claim, premised on the fact that honey sold by Defendant did not contain pollen as required by law, because the complaint failed to provide any detail regarding how Plaintiff knows that Defendant's honey did not contain pollen and thus the complaint does not provide fair notice to Defendant regarding the factual basis for Plaintiff's claim).

The FDUTPA claim also fails because Plaintiff, a non-consumer, must plausibly allege injury or detriment to a Florida consumer. *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus.*, No. 3:16-CV-186-J-34JRK, 2018 U.S. Dist. LEXIS 24920, at *45 (M.D. Fla. Feb. 15, 2018) ("That an entity other than a consumer can bring a FDUTPA claim does not mean, however, that harm to consumers is not required." (quotation and alteration

---

[9] To the contrary, all compounded products are unapproved drugs pursuant to Section 503(A). *See Nexus Pharms.,* 48 F.4th at 1042 (noting compounded drugs not subject to new drug approval process).

omitted)); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) (explaining that after the 2001 amendments, while "the claimant *does not have to be a consumer* to bring" a FDUTPA claim, "the claimant would have to prove that *there was an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim" (emphasis in original)).

The *CEMEX* case is instructive. There, the plaintiff asserted that it had alleged harm to consumers because the scheme at issue allowed an unauthorized product distributor to hold itself out as an authorized product distributor, which "deceived, confused, and misled consumers." 2018 U.S. Dist. LEXIS 24920, at *47-*48. The court explained that this was insufficient to plausibly allege consumer harm sufficient to support a FDUTPA claim because there were no "facts supporting a plausible inference that any consumers have or are likely to have suffered damages"—no consumer was harmed by having purchased the products at issue from an unauthorized distributor. *Id.* at *48.

Similarly, Plaintiff here has not plausibly alleged consumer injury. The Complaint does not reference a single harm to a Florida consumer based on Brooksville's alleged conduct (as opposed to a 2012 event in New England (*see* Compl. ¶ 13)). In fact, the Complaint does not even mention a Florida consumer. To the extent that consumer confusion qualifies as consumer harm

19

under FDUTPA, there is no allegation of consumer confusion either. Again, not one consumer is mentioned in the Complaint, nor is there a factual example of a consumer that was confused. In addition, there are no allegations about how the unapproved product that Brooksville sells is unlawful – section 503A of the FDCA explicitly permits compounded drugs and does not require FDA approval. *See Nexus Pharms.,* 48 F.4th at 1042 ("Congress does not subject compounded drugs to an approval process it uses for new drugs because valid compounding has traditionally been seen as an appropriate means of customizing existing drugs to the needs of individual patients.").[10]

Accordingly, Plaintiff's FDUTPA claim must be dismissed.

## IV.   Brooksville's Conduct Falls Within the FDUTPA's Safe Harbor Provision[11]

The "FDUPTA does not apply to "[a]n act or practice required or specifically permitted by federal or state law." *Snyder v. Green Roads of*

---

[10] It bears noting that Brooksville is helping consumers, not hurting them. Brooksville provides compounded products to diabetics and doctors based on valid medically necessary prescriptions because of a drug shortage and the lack of supply for Plaintiff's drugs. *See* Declaration of Terry Myers attached hereto at ¶¶ 3-6.

[11] The Court need not reach this point because Plaintiff's Complaint should be dismissed for lack of standing, preemption, and failure to state a plausible claim based on the four corners of the Complaint. However, given the lack of factual allegations in the Complaint and that Brooksville's conduct is in compliance with the FDCA, the Court may consider the attached Declaration. *See* Fed. R. Civ. P. 12(d) (noting that on a motion under Rule 12(b)(6) the Court may consider "matters outside the pleadings" and treat the motion as one for summary judgment); *Trustmark Ins. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1267 (11th Cir. 2002) (citations omitted) (stating when a judge considers matters outside the pleadings, a Rule 12(b)(6) motion to dismiss is converted to a Rule 56 motion for summary judgment).

*Florida, LLC*, 430 F. Supp. 3d 1297, 1304-1305 (S.D. Fla. 2020); Fla. Stat. § 501.212(1).

Brooksville is in compliance with the compounding rules set forth in the federal and state FDCA. *See* Declaration, at ¶¶ 4-6 (explaining proper compounding of semaglutide as explicitly approved by the FDA). Accordingly, the FDUTPA's safe harbor should be applied here. *See Prohias v. AstraZeneca Pharms., L.P.*, 958 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2007) (finding that FDUTPA's safe harbor applied where a drug's labeling was approved by the FDA and thus "specifically permitted" by federal law).

## CONCLUSION

For the reasons set forth herein, Brooksville respectfully requests that the Court dismiss this matter with prejudice and deny Plaintiff any opportunity to amend its Complaint.

Dated: August 14, 2023                    Respectfully Submitted,

By: */s/Matthew J. Modafferi*
Matthew J. Modafferi
Frier & Levitt, LLC
*Attorneys for Defendant*
101 Greenwich Street, Ste 8B
New York, NY 10006
Tel: (646) 970-6882
Fax: (646) 524-5027
mmodafferi@frierlevitt.com

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Counsel for the parties have conferred via email and telephone and Plaintiff opposes this motion.