## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NOVO NORDISK INC.

       Plaintiff,

   v.

BROOKSVILLE
PHARMACEUTICALS INC.,

       Defendant.

Case No. 8:23-cv-1503-WFJ-TGW

## PLAINTIFF NOVO NORDISK INC.'S OPPOSITION TO
## <u>DEFENDANT'S MOTION TO DISMISS</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ............................................................................... 1

BACKGROUND ................................................................................. 2

LAW AND ARGUMENT ......................................................................... 3

I.    Novo's Complaint Is Not Preempted by Federal Law ............................. 3

II.   Novo Stated a Claim for FDUTPA Violations and Sufficiently
      Alleged Future Injury .................................................................. 10

III.  Brooksville's Safe Harbor Argument Is Premature and Incorrect ....... 15

IV.   In the Alternative, Novo Seeks Leave to Replead ............................... 17

CONCLUSION ................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
   738 F.3d 1350 (Fed. Cir. 2013) ....................................................................... 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 3

*Athena Cosmetics, Inc. v. Allergan, Inc.*
   576 U.S. 1054 (2015) ...................................................................................... 8

*Baker v. City of Madison*,
   67 F.4th 1268 (11th Cir. 2023) ..................................................................... 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 3, 10

*Brown v. Budget Rent-A-Car Sys., Inc.*,
   119 F.3d 922 (11th Cir. 1997) ..................................................................... 12

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) ........................................................................................ 9

*Crmsuite Corp. v. Gen. Motors Co.*,
   2021 WL 914170 (M.D. Fla. Mar. 10, 2021) ............................................... 10

*Debernardis v. IQ Formulations, LLC*,
   942 F.3d 1076 (11th Cir. 2019) .............................................................. 11, 13

*Diamond Resorts U.S. Collection Dev., LLC v. Neally*,
   2021 WL 8773523 (M.D. Fla. Oct. 15, 2021) ........................................... 5, 17

*Godelia v. Doe 1*,
   881 F.3d 1309 (11th Cir. 2018) ..................................................................... 9

*Hill v. Celebrity Cruises, Inc.*,
   2010 WL 11442595 (S.D. Fla. Sept. 14, 2010) ........................................... 16

*Hope Med. Enters. Inc. v. Fagron Compounding Servs., LLC*,
   2021 WL 4963516 (C.D. Cal. Oct. 26, 2021) ..................................... 11, 13, 14

*Hope Medical Enters., Inc. v. Fagron Compounding Services, LLC,*
   2023 WL 4758454 (9th Cir. July 26, 2023)........................................... 8, 9, 11

*Jacob v. Mentor Worldwide, LLC,*
   40 F.4th 1329 (11th Cir. 2022) ........................................................................ 9

*Kia Motors Am. Corp. v. Butler,*
   985 So. 2d 1133 (Fla. 3d DCA 2008) ............................................................ 10

*Lay v. Hixon,*
   2009 WL 825814 (S.D. Ala. Mar. 26, 2009) .................................................. 16

*Mink v. Smith & Nephew, Inc.,*
   860 F.3d 1319 (11th Cir. 2017).......................................................................... 9

*Morales v. Advantage One Mortg. Corp.,*
   2008 WL 111303 (S.D. Fla. Jan. 8, 2008) ...................................................... 16

*Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs., Inc.,*
   48 F.4th 1040 (9th Cir. 2022) .......................................................................... 8

*Okavage Grp., LLC v. United Wholesale Mortg., LLC,*
   2022 WL 17478298 (M.D. Fla. July 27, 2022) .............................................. 14

*Orkin Exterminating Co. v. FTC,*
   849 F.2d 1354 (11th Cir. 1988)........................................................................ 12

*Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv.,*
   493 F. App'x 994 (11th Cir. 2012) ................................................................... 4

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.,*
   842 So. 2d 773 (Fla. 2003) ....................................................................... 12, 13

*Sennheiser Elec. Corp. v. Eichler,*
   2013 WL 3811775 (C.D. Cal. July 19, 2013)................................................. 14

*Speaker v. HHS,*
   623 F.3d 1371 (11th Cir. 2010)........................................................................ 10

*Spiral Direct, Inc. v. Basic Sports Apparel, Inc.,*
   151 F. Supp. 3d 1268 (M.D. Fla. 2015) .......................................................... 10

*Strong Current Enters. Ltd. v. Affiliati Network, Inc.,*
   2021 WL 1383369 (S.D. Fla. Jan. 26, 2021) ................................................. 14

*Thompson v. W. States Med. Ctr.*,
   535 U.S. 357 (2002) ................................................................ 6

*United States v. $4096.00 in U.S. Currency, More or Less*,
   2005 WL 1127138 (M.D. Ga. May 6, 2005) .................................. 17

*United States v. Alabama*,
   691 F.3d 1269 (11th Cir. 2012) ................................................ 6

*Vision Constr. Ent Inc. v. Argos Ready Mix LLC*,
   2019 WL 11075886 (N.D. Fla. Nov. 7, 2019) .............................. 12

*Woldeab v. Dekalb Cnty. Bd. of Educ.*,
   885 F.3d 1289 (11th Cir. 2018) ................................................ 18

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ............................................................. 4, 6

**Statutes & Regulations**

21 U.S.C. § 337 ..................................................................... 5

21 U.S.C. § 353a ............................................................ 4, 15, 16

21 U.S.C. § 360bbb-3 .............................................................. 2

§ 499.002, Fla. Stat. ............................................................... 8

§ 499.023, Fla. Stat. ......................................................... 2, 4, 11

§ 501.202, Fla. Stat. ............................................................... 3

§ 501.203, Fla. Stat. ............................................................... 3

§ 501.204, Fla. Stat. ........................................................... 3, 11

§ 501.211, Fla. Stat. ........................................................... 10, 14

§ 501.212, Fla. Stat. ............................................................... 4

FDA,
   *Memorandum of Understanding Addressing*
   *Certain Distributions of Compounded Drug Products*
   *Between the States and the Food and Drug Administration;*
   *Revised Draft; Availability,* 83 Fed. Reg. 45,631 (Sept. 10, 2018) ............ 6

**Other Authorities**

*Compounding Information for States*,
   FDA.gov (*current as of* Mar. 22, 2023), https://www.fda.gov/drugs/
   human-drug-compounding/compounding-information-states ........................ 6

FDA,
   Guidance for Industry,
   Prescription Requirement Under Section 503A of the Federal Food,
   Drug, and Cosmetic Act (Dec. 2016) ............................................................. 16

H.R. Rep. No. 105-399 (1997) ........................................................................... 6

U.S. Br. as Amicus Curiae,
   *Athena Cosmetics, Inc. v. Allergan, Inc.*,
   No. 13-1379 (U.S. May 26, 2015), 2015 WL 2457643 ................................... 7

## INTRODUCTION

Brooksville Pharmaceuticals, Inc. ("Brooksville") sells non-FDA-approved "compounded" drug products that purport to contain semaglutide ("Unapproved Drugs"), the active ingredient in Novo Nordisk Inc.'s ("Novo's") FDA-approved medications, in violation of Florida's drug approval and unfair competition laws. The purpose of these laws is to protect patient health and safety by permitting private causes of action to halt violations.

Brooksville seeks a free pass to continue unlawfully selling its Unapproved Drugs on the ground that federal law supposedly preempts Novo from enforcing Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Federal preemption plays a critical role in safeguarding pharmaceutical innovation, ensuring that FDA's scientific judgment that a medicine's design is safe and that its warnings are correctly calibrated is not undone by the 20/20 hindsight of juries in the context of an injured individual plaintiff. But federal preemption provides no shield from state-law claims to enforce state-law requirements that medicine be sold in the state only with FDA's permission or approval. Indeed, because Florida law provides a safe harbor for activities "specifically permitted" by federal law, there can be no conflict between the two. And without a conflict between state and federal law, there can of course be no conflict preemption.

Brooksville's remaining arguments also fail. Novo adequately pled all of the required elements under Florida law, as well as injury sufficient for standing. Brooksville's argument that its conduct falls within the safe harbor will ultimately fail because Brooksville ignores federal law's requirements for compounding, including its prescription requirement; but in all events, the Court cannot simply credit Brooksville's unsupported contention of compliance with federal law at the motion to dismiss stage.

For all these reasons, the Court should deny Brooksville's motion.

## BACKGROUND

Novo sells Wegovy®, Ozempic®, and Rybelsus®, the only FDA-approved medicines containing semaglutide. Compl. ¶¶ 2–3. Brooksville sells competing "compounded" drug products that purport to contain semaglutide but are not FDA-approved. *Id.* ¶ 9. Florida's health and safety statute prohibits the sale of new drugs "unless an approved application has become effective under s. 505 of the [the Federal Food Drug and Cosmetic Act ("FDCA")] or unless otherwise permitted by the Secretary of the United States Department of Health & Human Services for shipment in interstate commerce." § 499.023, Fla. Stat.[1]

---

[1] The "otherwise permitted by the Secretary" language would presumably apply if, for example, FDA granted a drug Emergency Use Authorization, which is not technically approval under section 505 of the FDCA but is nonetheless a form of affirmative permission by the Secretary. *See* 21 U.S.C. § 360bbb-3(a)(1) (providing that the Secretary may authorize certain drugs and devices for emergency use).

(footnote omitted). And FDUTPA protects the public from unfair competition and deceptive trade practices, allowing private parties to sue for violations of state laws that proscribe such practices. *Id.* §§ 501.202(2), 501.203(3)(c), 501.204(1). Accordingly, Novo brought this action under FDUTPA to stop Brooksville from engaging in unfair business and trade practices by unlawfully manufacturing, selling, and distributing Unapproved Drugs in Florida in violation of Florida's drug approval statute.

## LAW AND ARGUMENT

Novo's complaint should proceed because its allegations, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). As set forth below, Novo's complaint readily satisfies this standard.

## I.    Novo's Complaint Is Not Preempted by Federal Law.

This FDUTPA case alleges unfair trade practices in violation of Florida law prohibiting the sale of drugs that are not approved under section 505 of the FDCA or otherwise permitted to be distributed by the Health & Human Services Secretary. Compl. ¶ 32. Importantly, FDUTPA contains a safe harbor providing that the Act does not prohibit "[a]n act or practice required or

specifically permitted by federal or state law." § 501.212(1), Fla. Stat. That state-law safe harbor ensures that there cannot be a conflict between state and federal law in this case. And it is clear that the other kinds of preemption, express preemption and implied field preemption, do not apply here. *Wyeth v. Levine*, 555 U.S. 555, 573–75 (2009).

Brooksville does not argue that its products are approved by FDA or "otherwise permitted by the Secretary of the United States Department of Health & Human Services for shipment in interstate commerce" under § 499.023. Instead, Brooksville argues that its Unapproved Drugs satisfy the requirements of section 503A of the FDCA[2] and therefore their sale falls in the FDUTPA safe harbor. Discovery will show that Brooksville is incorrect, as its Unapproved Drugs do not satisfy section 503A's requirements, including the prescription requirement. *See infra* pp. 15–17. But "[i]n adjudicating a motion to dismiss, the district court may not resolve factual disputes," the existence of which "precludes the district court from granting a motion to dismiss." *Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv.*, 493 F. App'x 994, 995–96 (11th Cir. 2012) (per curiam). At the motion to dismiss phase, it is only the well pleaded allegations in Novo's complaint that matter, and the Court cannot just accept Brooksville's word that its Unapproved Drug product

---

[2] *Codified at* 21 U.S.C. § 353a.

complies with section 503A and that Brooksville is therefore entitled to an affirmative defense[3] against Novo's FDUTPA claim.

While adjudication of Novo's well-pleaded factual allegations—and Brooksville's affirmative defense—must await a later stage of this case, the existence of that safe harbor means that there can be no conflict preemption. If Brooksville can show after discovery that its drugs comply with section 503A and thus their sale falls within the FDUTPA safe harbor, neither federal nor state law would prohibit their sale on the ground that the drugs are not FDA-approved. Conversely, if Brooksville's drugs do not comply with section 503A, *both* federal and state law would prohibit their sale. Either way, the safe harbor built into FDUTPA means there can be no conflict. And there can be no conflict preemption without a conflict.

In arguing otherwise, Brooksville over-reads 21 U.S.C. § 337(a). While section 337(a) makes clear that there is no private right of action to enforce the FDCA, Novo seeks to enforce Florida's prohibition on unfair trade practices, not the FDCA. That FDUTPA provides a safe harbor for activities "specifically permitted" by federal law does not turn Novo's state-law action into an action to enforce federal law. Of course, under the Supremacy Clause, states cannot

---

[3] *See Diamond Resorts U.S. Collection Dev., LLC v. Neally*, 2021 WL 8773523, at *5 (M.D. Fla. Oct. 15, 2021) (describing compliance with the FDUTPA safe harbor as an affirmative defense).

enact laws that require what federal law forbids or forbid what federal law requires. But absent a conflict, the Eleventh Circuit "assume[s] 'that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *United States v. Alabama*, 691 F.3d 1269, 1281–82 (11th Cir. 2012) (quoting *Wyeth*, 555 U.S. at 565).

Regulation of pharmacy compounding has historically been left to the states, and it remains largely a state function. *See* H.R. Rep. No. 105-399, at 94 (1997) ("The conditions set forth in Section 503A should be used by the state boards of pharmacy and medicine for proper regulation of pharmacy compounding in addition to existing state-specific regulations."); *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 362 (2002) ("For approximately the first 50 years after the enactment of the FDCA, the FDA generally left regulation of compounding to the States.").[4] Accordingly, section 337(a)—which says nothing

---

[4] *See also* FDA, *Memorandum of Understanding Addressing Certain Distributions of Compounded Drug Products Between the States and the Food and Drug Administration; Revised Draft; Availability,* 83 Fed. Reg. 45,631, 45,634 (Sept. 10, 2018) ("Congress did not intend for compounders operating under these statutory provisions [section 503A] to grow into conventional manufacturing operations making unapproved drugs, operating a substantial proportion of their business interstate, without adequate oversight. . . . Congress recognized that these compounders are primarily overseen by the States."); *Compounding Information for States*, FDA.gov (*current as of* Mar. 22, 2023), https://www.fda.gov/drugs/human-drug-compounding/compounding-information-states ("States are primarily responsible for day-to-day oversight

about states' authority to regulate public health and safety, much less pharmacy compounding—should not be read to preempt Novo's FDUTPA claim.

The United States has itself expressed that claims under state unfair trade practices statutes for violations of state drug-approval statutes are not preempted absent an actual conflict with federal law, as states have lawfully "act[ed] within [their] historic purview to regulate health and safety" by "authorizing private suits to enjoin the intrastate distribution, sale, and marketing of an unapproved drug." U.S. Br. as Amicus Curiae at 17, *Athena Cosmetics, Inc. v. Allergan, Inc.*, No. 13-1379 (U.S. May 26, 2015), 2015 WL 2457643 ("U.S. *Athena* Br."). In that case, the Federal Circuit had held that section 337(a) does not bar private plaintiffs from suing under state laws that "incorporate[]" the FDCA's drug-approval requirements. *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1355–56 (Fed. Cir. 2013). The United States agreed, explaining that such state-law claims remain state-law claims—rather than improper attempts to directly enforce the FDCA. U.S. *Athena* Br. at 9–17 ("California may authorize courts to restrain the distribution, sale, and

---

over the vast majority of the thousands of compounders in the United States, most of which do not register with FDA. State officials are often the first to identify compounders that are operating like conventional manufacturers or that engage in poor drug production practices that could lead to patient harm.").

marketing of unapproved new drugs in California through respondent's private UCL suit."). The Supreme Court denied certiorari. 576 U.S. 1054 (2015).

As in *Athena*, Novo does not seek to enforce the FDCA itself, but rather to enforce a separate statute: FDUTPA. And by enacting that law, Florida has given private parties a right of action to enforce the state drug-approval statute prohibiting the in-state sale of a drug that has not received approval or permission from FDA—just as the United States in *Athena* explained was properly within states' authority notwithstanding section 337(a). *See* § 499.002(1)(a)–(b) (legislative purpose of Florida Drug and Cosmetic Act is to "[s]afeguard the public health and promote the public welfare by protecting the public from injury by product use" by "[p]rovid[ing] uniform legislation to be administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the Federal Food, Drug, and Cosmetic Act"). Enforcing state drug-approval laws that incorporate the FDCA's drug-approval requirement does not interfere with FDA's exclusive authority to enforce the FDCA.

Brooksville places central reliance on the Ninth Circuit's decisions in *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040 (9th Cir. 2022), and *Hope Medical Enterprises, Inc. v. Fagron Compounding Services, LLC*, 2023 WL 4758454 (9th Cir. July 26, 2023)—the latter of which offered little reasoning, concluding merely that "*Nexus* controls

8

here." 2023 WL 4758454, at *1. *Nexus* and *Hope* are not only nonbinding, they are contrary to this Circuit's precedent. The Eleventh Circuit has again and again read section 337(a) and *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), to prohibit only "private[] enforce[ment of] a duty owed *to the FDA*." *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1327 (11th Cir. 2017) (emphasis added) (for example, in *Buckman*, the duty to submit truthful and accurate information to the FDA); *see also Godelia v. Doe 1*, 881 F.3d 1309, 1317 (11th Cir. 2018) ("The Supreme Court has interpreted [section 337(a)] to bar claims that merely attempt to enforce duties owed to the FDA . . . ."); *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1336 (11th Cir. 2022) ("Put another way: a plaintiff cannot seek to privately enforce a duty that is owed to the FDA."). By bringing its claim under FDUTPA, Novo seeks to enforce a duty Brooksville owes to Florida consumers to forgo unfair trade practices—not any duty owed to the FDA. *See Jacob*, 40 F.4th at 1339 (explaining that claims avoid preemption under *Buckman* when they involve "a duty that a manufacturer owes the consumer, not the FDA"). This Court must follow *Mink*, *Godelia*, and *Jacob*, not *Nexus* or *Hope*.[5]

---

[5] Notably, Brooksville's motion does not even mention *Jacob* or *Godelia*, and it cites *Mink* only in passing. Mot. 11.

## II.    Novo Stated a Claim for FDUTPA Violations and Sufficiently Alleged Future Injury.

To survive a motion to dismiss, Novo must allege "enough [facts] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. But Novo is not required to "prove [its] case on the pleadings." *Speaker v. HHS*, 623 F.3d 1371, 1386 (11th Cir. 2010). Instead, Novo "must merely provide enough factual material to raise a reasonable inference, and thus a plausible claim," that Brooksville's conduct is "unfair" under FDUTPA. *See id.* And, "[a]t the motion to dismiss stage, a court must evaluate all plausible inferences derived from the facts of the complaint in favor of the plaintiff." *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F. Supp. 3d 1268, 1274 (M.D. Fla. 2015).

The elements of a FDUTPA claim are: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *See, e.g.*, *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008); *see also* § 501.211(2), Fla. Stat. As this Court has explained, "courts are to construe" the statute's terms "liberally." *Crmsuite Corp. v. Gen. Motors Co.*, 2021 WL 914170, at *6 (M.D. Fla. Mar. 10, 2021) (Jung, J.).

Novo has exceeded what is required. Novo pleads that Brooksville's practices are "unfair" under FDUTPA by alleging that Brooksville sells Unapproved Drugs in violation of Florida's Drug and Cosmetic Act. The sale of an unlawful product is "unfair" conduct under FDUTPA, *Debernardis v. IQ*

10

*Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019), and the Florida Drug and Cosmetic Act makes unlawful the sale of a new drug without federal approval, § 499.023, Fla. Stat. *See Hope Med. Enters. Inc. v. Fagron Compounding Servs., LLC*, 2021 WL 4963516, at *15 (C.D. Cal. Oct. 26, 2021) (holding that compounding pharmacy's sale of unapproved drugs was "unfair" under FDUTPA because "a business practice is unfair if it offends Florida's established public policy" as outlined in the Florida Drug and Cosmetic Act (cleaned up)), *rev'd on other grounds*, 2023 WL 4758454 (9th Cir. July 26, 2023). By pleading that Brooksville violates the Florida Drug and Cosmetic Act by selling Unapproved Drugs, Novo pleads that Brooksville commits an unfair business practice in violation of FDUTPA. And Brooksville admits that it does what Novo alleges. Mot. 2 (Brooksville "provides drugs containing semaglutide that are not FDA approved").

Brooksville insists that Novo has failed to state a claim because (1) it "does not allege deception" and (2) it "has not plausibly alleged consumer injury." Mot. 18–19. Brooksville is wrong on both counts. *First*, Novo is not required to allege deception because it has alleged that Brooksville's conduct was unfair. FDUTPA proscribes "[u]nfair methods of competition, unconscionable acts or practices, and unfair *or* deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat. (emphasis added). "A practice . . . may be unfair without being deceptive; for this reason, courts

consider unfair practices and deceptive acts as presenting 'distinct lines of inquiry.'" *Vision Constr. Ent Inc. v. Argos Ready Mix LLC*, 2019 WL 11075886, at *7 n.19 (N.D. Fla. Nov. 7, 2019) (quoting *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1367 (11th Cir. 1988)); *Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir. 1997) (per curiam) ("[T]he use of a disjunctive . . . requires that those alternatives be treated separately.").

Novo more than adequately alleges an unfair practice. An unfair practice is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (cleaned up). To that end, Novo alleges that (1) Brooksville "markets and sells to patients certain drug products that purport to contain 'semaglutide' and are not FDA approved"; (2) Brooksville "ignor[es] drug-approval requirements provid[ing it with] an unfair competitive advantage over" Novo, which spent substantial time and money to obtain FDA approval for its semaglutide-based drugs; (3) Brooksville's "unfair competition jeopardizes public health" because Brooksville's Unapproved Drugs "have not undergone FDA premarket review for safety," unlike Novo's drugs; (4) Brooksville's "Unapproved New Drugs pose potential harm to consumers, [and] Defendant's manufacture and sale of its drugs is a practice that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers and to Plaintiff"; and (5) Brooksville's

12

practices "also offend established public policy regarding the protection of consumers against companies, like Defendant, that engage in unfair methods of competition." Compl. ¶¶ 9, 12, 33, 44, 45. These well-pleaded allegations more than sufficiently plead an "unfair practice." *PNR, Inc.*, 842 So. 2d at 777.

*Second*, Novo adequately alleges that Brooksville injures consumers through the sale of unlawful, potentially unsafe Unapproved Drugs. The Eleventh Circuit recognizes such conduct as injurious to consumers. *See Debernardis*, 942 F.3d at 1085 (finding injury from unlawful sale of dietary supplements); *Hope*, 2021 WL 4963516, at *15 ("[T]he sale of a product that is unlawfully on the market qualifies as consumer harm under FDUTPA."). Novo alleged that Brooksville's "unfair competition jeopardizes public health" because Brooksville's Unapproved Drugs "have not undergone FDA premarket review for safety," unlike Novo's drugs. Compl. ¶ 33. Further, Novo explains that "manufacturing and distribution of unapproved new drugs of unknown quality has endangered or adversely impacted public health." Compl. ¶ 13. Novo's pleading is sufficient.

Finally, Brooksville contends that Novo did not allege future injury for standing purposes. Mot. 8. That too is incorrect. A reasonable inference from Novo's allegations is that it has lost and is losing goodwill and/or sales because of Brooksville's conduct, which is sufficient for standing purposes. *Okavage Grp., LLC v. United Wholesale Mortg., LLC*, 2022 WL 17478298, at *6 (M.D.

Fla. July 27, 2022). Specifically, Novo alleged that "Novo is the only company in the United States with FDA-approved products containing semaglutide," and that as a result of this "unlawful and unfair competition," Novo "has suffered harm." Compl. ¶¶ 34–37 (emphasis added). That injury is redressable because an injunction against Brooksville would prevent it from causing Novo to lose future sales or goodwill, in addition to preventing potential harm and injury to consumers and the public health.

Under FDUTPA, "anyone aggrieved by a violation of this part may bring an action …. To enjoin a person who has violated, is violating, or is otherwise likely to violate this part." § 501.211(1), Fla. Stat. Injunctive relief is proper to prevent future lost sales. *Strong Current Enters. Ltd. v. Affiliati Network, Inc.*, 2021 WL 1383369, at *6 (S.D. Fla. Jan. 26, 2021) (plaintiff alleging "diverted sales" could proceed with claim for injunctive relief under FDUTPA); *see also Hope*, 2021 WL 4963516, at *21 (granting injunction against compounding pharmacy, in part, because "lost profits and customers" constitute "irreparable injury" (quoting *Sennheiser Elec. Corp. v. Eichler*, 2013 WL 3811775, at *10 (C.D. Cal. July 19, 2013)). And Novo alleges harm by Brooksville to both Novo and consumers that is ongoing—it is not seeking relief merely for past injury. *See, e.g.*, Compl. ¶ 9 (alleging that Brooksville "markets and sells" Unapproved Drugs).

14

## III.    Brooksville's Safe Harbor Argument Is Premature and Incorrect.

Brooksville asserts that its Unapproved Drugs comply with section 503A, which exempts compounded drugs from the FDCA's approval requirement in certain circumstances, and this compliance shields it from liability under the FDUTPA's safe harbor. Mot. 20–21. This argument is factually wrong and procedurally premature.

To demonstrate its supposed compliance with section 503A, Brooksville points to a self-serving declaration tacked on to its motion. *See* Myers Decl. ISO Mot. But at the motion to dismiss stage, the Court cannot credit Brooksville's declaration and simply take Brooksville's word for it on this factual issue. *See Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023) ("Generally, when considering a motion to dismiss, the district court must limit its consideration to the pleadings and any exhibits attached to it.").

Discovery will confirm that Brooksville's Unapproved Drugs do *not* comply with section 503A. Brooksville itself acknowledges that compounded drugs must meet certain conditions to be entitled to section 503A's exemptions. Mot. 3; *see* Decl. ISO Mot. ¶ 6. Among other things, the drug must be "compounded for an identified individual patient based on the receipt of a valid prescription order or a notation, approved by the prescribing practitioner, on the prescription order that a compounded product is necessary for the identified patient." 21 U.S.C. § 353a. In other words, the drug must be

15

compounded pursuant to a prescription *specifying the individual patient's particular medical need for a compounded version of the drug*.[6] But Brooksville does not satisfy this requirement. And nothing in section 503A relaxes the prescription requirement for drugs on the FDA shortage list. *See* 21 U.S.C. § 353a.

The Court should reject Brooksville's improper invitation to convert this motion to a summary judgment proceeding. *See* Mot. 20 n.11. To do so would require the Court to "adjudicate the fact-intensive issue of" Brooksville's affirmative defense of FDCA compliance "on an incomplete record, based on [its declarant's] bare say-so, without affording [Novo] a full and fair opportunity to conduct discovery on that question." *Lay v. Hixon*, 2009 WL 825814, at *2 (S.D. Ala. Mar. 26, 2009). That "would be unfair and inefficient." *Id.*; *Hill v. Celebrity Cruises, Inc.*, 2010 WL 11442595, at *8 (S.D. Fla. Sept. 14, 2010) (similar); *Morales v. Advantage One Mortg. Corp.*, 2008 WL 111303, at *2 (S.D. Fla. Jan. 8, 2008). Myers's declaration—a mere three pages and seven

---

[6] The prescription requirement is "meant to help ensure that compounding under section 503A is based on individual patient needs, and that entities purportedly operating under section 503A are not actually operating as conventional manufacturers" making non-FDA-approved drugs without good manufacturing practices and adequate labeling. FDA, Guidance for Industry, Prescription Requirement Under Section 503A of the Federal Food, Drug, and Cosmetic Act, at 5 (Dec. 2016), *available at* https://www.fda.gov/files/drugs/published/Prescription-Requirement-Under-Section-503A-of-the-Federal-Food--Drug--and-Cosmetic-Act-Guidance-for-Industry.pdf.

paragraphs—is not remotely sufficient to resolve the factual issue of whether Brooksville's sales of its Unapproved Drugs comply with all of the requirements of section 503A. *United States v. $4096.00 in U.S. Currency, More or Less*, 2005 WL 1127138, at *5 (M.D. Ga. May 6, 2005) ("At this early stage in the proceedings, and given the limited nature of the supporting materials Claimant provided, this Court finds that it would be premature to convert Claimant's motion at this time."); *see also Diamond Resorts*, 2021 WL 8773523, at *5 (dismissing a FDUTPA safe harbor defense, explaining that "[a]ffirmative defenses must be plead with enough specificity or factual support to give the plaintiff fair notice of the defense that is being asserted" (cleaned up)). Novo was not required to anticipate this affirmative defense in its complaint, and the Court cannot simply take Brooksville's word for it that Brooksville complies with federal law.

## IV.    In the Alternative, Novo Seeks Leave to Replead.

If, in spite of the above arguments and authorities, the Court is inclined to dismiss Novo's claims, it should grant Novo leave to amend its complaint. "A district court's discretion to deny leave to amend a complaint is severely restricted by Fed. R. Civ. P. 15, which stresses that courts should freely give leave to amend when justice so requires. Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with

17

prejudice." *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quotation marks and citations omitted). Therefore, if the Court were to decide, for example, that Novo did not adequately plead standing, the Court should allow Novo to amend its complaint to plead additional allegations.

## CONCLUSION

The Court should deny Brooksville's motion to dismiss. In the alternative, the Court should grant Novo leave to file an amended complaint.

Dated: September 15, 2023  Respectfully submitted,

By: */s/ Samantha J. Kavanaugh*
  **King & Spalding LLP**
  Samantha J. Kavanaugh
  Florida Bar No. 0194662
  Southeast Financial Center
  200 S Biscayne Boulevard, Suite 4700
  Miami, FL 33131
  (305) 462-6027
  skavanaugh@kslaw.com

  Patrick Price
  Florida Bar No. 120284
  **King & Spalding LLP**
  500 W 2nd Street, Suite 1800
  Austin, TX 78701
  (512) 457-2037
  pprice@kslaw.com

  Joseph N. Akrotirianakis
  *(Pro hac vice pending)*
  Aaron S. Craig
  *(Pro hac vice pending)*
  **King & Spalding LLP**
  633 West Fifth Street, Suite 1600
  Los Angeles, CA 90071
  (213) 443-4355
  jakro@kslaw.com
  acraig@kslaw.com

  Jeffrey S. Bucholtz
  *(Pro hac vice pending)*
  **King & Spalding LLP**
  1700 Pennsylvania Avenue NW
  Washington, DC 20006
  (202) 737-0500
  jbucholtz@kslaw.com

  ***Attorneys for Novo Nordisk Inc.***

19