UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISON

| | |
|---|---|
| NOVO NORDISK, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BROOKSVILLE PHARMACEUTICALS INC., <br><br> Defendant. | Case No.  8:23-cv-1503- WFJ-TGW |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS**

In accordance with Your Honor's Preferences for Replies, Defendant Brooksville Pharmaceuticals Inc. ("Brooksville") respectfully submits this Reply Memorandum of Law in Response to Plaintiff's Opposition to Brooksville's Motion to Dismiss (Dkt. Entry 19).

### I.    Plaintiff Cannot Enforce the Food Drug and Cosmetic Act ("FDCA") Through Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")

Plaintiff argues that it can proceed with its FDUTPA claim because the laws parallel or incorporate—rather than conflict with—FDCA requirements. *See* Opposition ("Opp.") at 3-8.  However, Plaintiff's claim does conflict with FDCA requirements.  The basis of Plaintiff's claim is that the FDUTPA

prohibits the sale of drugs that are not FDA approved. This application of state law conflicts with the FDCA, which specifically authorizes a compounding pharmacy (like Brooksville) to sell non-FDA-approved drugs, and is therefore preempted. *See* FDA Guidance;[1] *see also* Brooksville's Memo of law p. 2 n.2 (citing *Hernandez v. Aurobindo Pharma USA, Inc.*, 582 F. Supp. 3d 1192, 1200 (M.D. Fla. Jan. 24, 2022) (collecting cases)).[2]

Even assuming Florida law "incorporates" or "parallels" the FDCA, Plaintiff's claim still would not exist "but for" the FDCA and is therefore preempted. The FDUTPA claim explicitly incorporates FDCA drug approval requirements, and therefore would not exist in the FDCA's absence. Such a claim is preempted if it exists solely by virtue of FDCA requirements. *See Buckman co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (requiring preclusion where the FDCA "is a critical element of the[] case"). Plaintiff's claim is based wholly on and exists solely by virtue of the FDCA. *See* Compl. ¶ 9 (asserting that claim is premised on FDA approval); ¶¶ 11, 29 (basing claim on whether drug is approved by the FDA). Indeed, Plaintiff agrees that its

---

[1] https://www.fda.gov/drugs/human-drug-compounding/drug-compounding-and-drug-shortages; https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss ("when a drug is in shortage, compounding pharmacies may prepare a compounded version of that drug"); https://www.accessdata.fda.gov/scripts/drugshortages/default.cfm (last searched September 20, 2023) (listing semaglutide on the FDA's Drug Shortages list).

[2] Plaintiff did not oppose, and appears to concede, that it is permissible for the Court to take judicial notice of FDA records located on the FDA's website.

claim necessitates litigating the requirements of the FDCA, which further supports a finding of preemption. *See* Opp. pp. 4, 5, 15 (noting discovery will focus on FDCA requirements); *Nexus Pharms. Inc. v. Cent. Admixture Pharm. Servs.*, 48 F4th 1040, 1048 (9th Cir. 2022) (preempting claim that requires litigation of whether defendant meets FDCA requirements).

Plaintiff's claim also conflicts with the FDCA's private enforcement section which states that there shall be no private claims to enforce the Act. *See* 21 U.S.C. § 337(a).[3] The FDA has the sole authority to enforce the FDCA and the FDCA has preemptive effect over state law claims that "exert an extraneous pull on the scheme established by Congress" by imposing requirements that are "different from and, indeed, conflict with" the FDCA. *Buckman*, 531 U.S. at 353. "Because [Plaintiff] seeks to 'enforce its interpretation' of the FDCA's rules for manufacturing compounded drugs against a competitor, the FDCA's prohibition on private enforcement and the doctrine of implied preemption bar the suit." *Hope Med. Enter. Inc. v. Fagron Compounding Servs., LLC.*, 2023 WL 4758454, at *1 (9th Cir. Jul. 26, 2023); *see Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1329 (11th Cir. 2017)

---

[3] In its Opposition, Plaintiff often steps into the enforcement shoes of the FDA. *See* Opp. p. 1 (trying to enforce the FDCA and noting that "Brooksville seeks a free pass to continue selling" non-FDA approved drugs); p. 3 (Plaintiff "brought this action under the FDUTPA to stop Brooksville from … selling and distributing" non-FDA approved drugs).

(permitting Florida common law claims, "<u>not</u> private rights of action enforcing the violation of [the FDCA]") (emphasis in original).

Plaintiff does not rely on any cases analyzing the preemptive effect of the FDCA's regulations relating to compounding pharmacies, such as *Hope* and *Nexus*. Indeed, the cases that address the FDCA's exemption to drug approval requirements for registered compounding pharmacies reject Plaintiff's arguments. *See, e.g., Hope*, 2023 WL 4758454, at *1 (preempting FDUTPA claim premised on selling drug not FDA-approved); *Nexus*, 48 F.4th at 1048 (same).[4]

Contrary to Plaintiff's contention, Eleventh Circuit law (*Mink*, *Godelia*, and *Jacob*) follows *Buckman* – as it should because *Buckman* is binding Supreme Court precedent – and requires dismissal. "State-law claims based on conduct that violates the [FDCA] can escape implied preemption only if the alleged wrongdoing would give rise to liability under state law even if the Act did not exist." *Jacob v. Mantor Worldwide, LLC*, 40 F.4th 1329, 1336 (11th Cir. 2022) (citing *Godelia v. John Doe 1*, 881 F.3d 1309, 1320 (11th Cir. 2018) and *Mink*, 860 F.3d at 1330)). As set forth in *Buckman*, claims that exist solely by virtue of FDCA requirements or where the FDCA is a critical element of the

---

[4] Plaintiff's reliance on *Allergan v. Athena Cosmetics*, 738 F.3d 1350 (Fed. Cir. 2013), a non-binding decision from the Federal Circuit, is misplaced. There, the court found that the California unfair competition law claim was not preempted by the FDCA, but remarkably "[t]he court did not address the FDCA's prohibition on private enforcement." *Nexus*, 48 F.4th at 1050. "Had it done so, [it] would have [reached] a contrary result." *Id.*

case (*i.e.,* claims that say in substance "comply with the FDCA") are preempted, whereas claims that rely on traditional state tort law are not. *Buckman*, 531 U.S. at 353 (requiring reliance on "traditional state tort law" that predates the FDC). *Mink*, *Godelia*, and *Jacob* are consistent, and hold that "comply with the FDCA claims" are preempted while the common law tort claims are not. Plaintiff's claim is not a traditional tort claim. *See* Brooksville Memo of law pp.14-15 (explaining that a FDUTPA claim is not a traditional common law claim).[5] It is predicated on an alleged violation of the Florida Drug and Cosmetic Act and the FDCA, and as such, is barred by the FDCA's exclusive enforcement provision.

Plaintiff also argues that Florida law gives "private parties a right of action to enforce the state drug-approval statute." Opp. p. 8. But that too is a dead end. The Florida Drug and Cosmetic Act provides that the Florida Department of Health "<u>shall</u> administer and enforce" the requirements of the statute. Fla. Stat. § 499.002(2) (emphasis added). "Nowhere does the [Florida Drug and Cosmetic] Act state that it provides for a private cause of action … ." *Fields v. Mylan Pharmaceuticals, Inc.*, 751 F. Supp. 2d 1257, 1259 (N.D. Fla. 2009). "Under Florida law, a statutory violation does not give rise to a private cause of action absent a clear legislative intent to do so" (*Wolicki-Gables v.*

---

[5] Significantly, Plaintiff did not address this point in its Opposition.

*Doctors Same Day Surgery Ctr., Ltd.*, 216 So.3d 665, 673 (Fla. 2d DCA 2017)), and "legislative intent … does not support the conclusion that the Florida Drug and Cosmetic Act impliedly provides a private cause of action." *T.W.M. v. Am. Med. Systems, Inc.*, 886 F. Supp. 842, 845 (N.D. Fla. 1995).[6]

Regardless of whether Plaintiff attempts to disguise its claim as one to enforce the FDCA or one to enforce Florida's Drug and Cosmetic Act (which incorporates the FDCA), it is barred as a matter of law.

## II. Plaintiff Failed to Demonstrate Article III Standing for Injunctive and/or Declaratory Relief

Plaintiff contends that it has established Article III standing for prospective relief based on one phrase in the Complaint (*see* Compl. ¶ 46 ("if not enjoined, will continue to cause harm and injury") because a "reasonable inference" can allegedly be drawn from those few words. *See* Opp. p. 13. Plaintiff's citation to the *Okavage Grp., LLC* decision does not support its contention, nor could it. Plaintiff sets forth no *facts* concerning lost sales – because it cannot. Any lost sales are not the result of compounding pharmacies (let alone one compounding pharmacy, Brooksville), but rather Plaintiff's supply shortage. Additionally, an injunction for simply selling drugs that are not approved by the FDA is contrary to the compounding laws because

---

[6] Consistent with federal preemption jurisprudence, "Florida law does not allow [a] [p]laintiff to bring a private cause of action to enforce FDA regulations." *Kaiser v. DePuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1192-93 (M.D. Fla. 2013) (collecting cases).

compounded drugs are not subject to FDA approval. In particular, when a drug is in shortage, compounding pharmacies can create a copy of a commercially available drug.[7] Plaintiff cannot show (1) a real and immediate future injury that is not speculative, (2) that the injury is traceable to Brooksville, and (3) that the injury can be legally addressed when the FDCA permits compounding of semaglutide. Accordingly, the Court should dismiss Plaintiff's Complaint.

### III.   Plaintiff Failed to Plausibly Plead a FDUTPA Claim

Plaintiff's argument rests on a conclusion that is not supported by fact or law – that it is unlawful to sell drugs that are not FDA-approved. However, as explained, compounded drugs are not FDA-approved. *Nexus Pharms., Inc.*, 48 F.4th at 1042 ("Congress does not subject compounded drugs to an approval process it uses for new drugs"). Pharmacies like Brooksville can compound drugs (*see* 21 U.S.C. § 353a), and as per FDA guidance, they are specifically permitted to compound semaglutide. *See* n.1, *supra*. This does not make Brooksville's actions "unfair." Plaintiff wants a monopoly over semaglutide because it has the only FDA-approved semaglutide products. While Plaintiff might feel that the FDA rules and regulations are unfair, that does not make it unfair to sell a compounded drug.

---

[7] *See* https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss (explicitly noting that the FDA permits compounding of semaglutide).

Not only does Plaintiff fail to adequately assert "unfairness," it also does not allege any injury to consumers. Again, the assertion that compounded drugs are not FDA approved does not make their sale unlawful, nor does it mean that compounded drugs injure consumers. These assumptions are the sole basis of pleading injury to consumers, which without more, does not set forth a plausible allegation of consumer harm. The Complaint is devoid of any facts concerning injury to any consumers and Plaintiff's conclusory allegations (*see* Opp. p. 13, citing to Compl. ¶¶ 13, 33) fall short of the mark.

## **CONCLUSION**

The Court should dismiss Plaintiff's Complaint with prejudice because it is barred by the prohibition on private enforcement and the doctrine of implied preemption,[8] as well as the lack of Article III standing. The Court need not convert this Fed. R. Civ. P. 12 motion.

Dated: September 22, 2023                       Respectfully Submitted,

                                           By: /s/*Matthew J. Modafferi*
                                                 Matthew J. Modafferi
                                                 Frier & Levitt, LLC
                                                 *Attorneys for Brooksville*
                                                 101 Greenwich Street, Suite 8B
                                                 New York, New York 10006
                                                 (646) 970-2711
                                                 mmodafferi@frierlevitt.com

---

[8] An amendment would not cure the dismissal, which is required as a matter of law.