# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISON

NOVO NORDISK, INC.,

                    Plaintiff,

    v.

BROOKSVILLE
PHARMACEUTICALS INC.,

                    Defendants.

Case No. 8:23-cv-1503-WFJ-TGW

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................1

ALLEGATIONS ......................................................................................1

PROCEDURAL HISTORY.......................................................................3

STATUTORY BACKGROUND................................................................4

STANDARD OF REVIEW.......................................................................6

ARGUMENT ..........................................................................................8

   I.  Plaintiff Cannot Enforce the FDCA or the Florida FDCA
      Through a FDUPTA Claim................................................................8

   II. Plaintiff Also Fails to Plausibly Plead a FDUPTA Claim .................12

   III.The Court Should Grant Brooksville Attorneys' Fees........................16

CONCLUSION.......................................................................................18

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amara v. Publix Supermarkets, Inc.*,
8:22-cv-367-VMC-JSS,
2022 U.S. Dist. LEXIS 145598 (M.D. Fla. Aug. 12, 2022) .............................. 11

*Am. Registry, LLC v. Hanaw*,
No. 2:13-CV-352-FTM-29CM,
2015 U.S. Dist. LEXIS 129194 (M.D. Fla. Sept. 25, 2015) ............................. 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................. 6, 7, 8, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................... 6-7, 7

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ............................................................... 8, 9, 10, 15

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*,
169 So. 3d 164 (Fla. 4th DCA 2015) .................................................. 13

CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.,
No. 3:16-CV-186-J-34JRK,
2018 U.S. Dist. LEXIS 24920 (M.D. Fla. Feb. 15, 2018) ......................... 13, 14

*City First Mortg. Corp. v. Barton*,
988 So. 2d 82 (Fla. Dist. Ct. App. 2008) ............................................. 13

*Diamond Aircraft Indus., Inc. v. Horowitch*,
107 So. 3d 362 (Fla. 2013) .............................................................. 16

*Erickson v. Pardus*,
551 U.S. 89 (2007) ......................................................................... 6

*Fields v. Mylan Pharmaceuticals, Inc.*,
751 F. Supp. 2d 1257 (N.D. Fla. 2009) ................................................ 12

*Godelia v. John Doe 1*,
881 F.3d 1309 (11th Cir. 2018)............................................................... 9

*Hope Med. Enter., Inc. v. Fagron Compounding Servs., LLC*,
2023 U.S. App. LEXIS 19072 (9th Cir. Jul. 26, 2023) ...................... 11

*Jackson v. BellSouth Telecomms.*,
372 F.3d 1250 (11th Cir. 2004)............................................................... 7

*Jacob v. Mantor Worldwide, LLC*,
40 F.4th 1329 (11th Cir. 2022) ............................................................. 9

*Kaiser v. DePuy Spine, Inc.*,
 944 F. Supp. 2d 1187 (M.D. Fla. 2013) ........................................... 12

*Lanard Toys Ltd. v. Dolgencorp, LLC*,
No. 3:15-CV-849-MMH-PDB,
2021 U.S. Dist. LEXIS 257355 (M.D. Fla. Aug. 20, 2021),
as corrected (Oct. 19, 2021) ............................................................... 16

*Lankhorst v. Indep. Sav. Plan Co.*,
No. 3:11-cv-390-J-34JRK,
2012 U.S. Dist. LEXIS 204347 (M.D. Fla. Feb. 23, 2012) .............. 11

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021) ......................................................... 13

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*,
30 F.3d 113 (11th Cir.1994)............................................................... 17

*Mink v. Smith & Nephew, Inc.*,
860 F.3d 1319 (11th Cir. 2017)................................................... 9-10, 10

*Nelson v. Mead Johnson Nutrition Co.*,
270 F.R.D. 689 (S.D. Fla. 2010)......................................................... 11

*Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs.*,
48 F.4th 1040 (9th Cir. 2022), *reh'g denied en banc* 2022 U.S. App. LEXIS
30561 (9th Cir. Nov. 3, 2022) ...................................... 8, 9, 10-11, 15

*Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs.*,
No. SACV 20-01506-CJC(JDEx),
2020 U.S. Dist. LEXIS 220759 (C.D. Cal. Nov. 18, 2020).................. 8

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002) ............................................................................. 4

*Tropical Paradise Resorts, LLC v. JBSHBM, LLC*,
No. 18-CV-60912,
2021 U.S. Dist. LEXIS 84584 (S.D. Fla. Apr. 30, 2021) ....................... 16-17, 17

*T.W.M. v. Am. Med. Systems, Inc.*,
886 F. Supp. 842 (N.D. Fla. 1995) ........................................................ 12

*Wolicki-Gables v. Doctors Same Day Surgery Ctr., Ltd.*,
216 So.3d 665 (Fla. 2d DCA 2017) ...................................................... 12

## STATUTES, REGULATIONS, AND RULES

21 C.F.R. § 10.25(a) ............................................................................... 8
21 C.F.R. § 10.30 ................................................................................... 8
21 C.F.R. § 211.165 .............................................................................. 15
21 U.S.C. §§ 332-34 .............................................................................. 5
21 U.S.C. § 337(a) .............................................................................. 5, 8
21 U.S.C. § 351(a)(1)(2A) ...................................................................... 5
21 U.S.C. § 351(c) ................................................................................. 5
21 U.S.C. § 352(a)(1) ............................................................................ 6
21 U.S.C. § 353a ................................................................................... 4
21 U.S.C. § 372 ..................................................................................... 5
21 U.S.C. §§ 393(a) .............................................................................. 4
21 U.S.C. §§ 393(b)(2)(B) ..................................................................... 4
Fed. R. Civ. P. 8(a)(2) ........................................................................... 8
Fl. Stat. § 499.002(1)(b) ........................................................................ 6
Fl. Stat. § 499.002(c) ............................................................................. 6
Fl. Stat. § 499.002(2) ......................................................................... 5, 12
Fl. Stat. § 499.006(2) ............................................................................. 5
Fl. Stat. § 499.006(7) ............................................................................. 5
Fl. Stat. § 499.007(1) ............................................................................. 6
Fla. Stat. § 501.204(2) .......................................................................... 11
Fla. Stat. § 501.2105(1) ........................................................................ 16

## OTHER AUTHORITIES

*Drug Compounding and Drug Shortages*, FDA Guidance (March 24, 2023)
    https://www.fda.gov/drugs/human-drug-compounding/drug-compounding-
    and-drug-shortages ........................................................................................... 1-2

Drug Quality and Security Act, Pub. L. No. 113-54 (2013) .............................. 5

*FDA Drug Shortages*, FDA,
    https://www.accessdata.fda.gov/scripts/drugshortages/default.cfm (last
    accessed December 7, 2023) ............................................................................ 2

FDA FAERS Public Dashboard, https://fis.fda.gov/sense/app/95239e26-e0be-
    42d9-a960-9a5f7f1c25ee/sheet/45beeb74-30ab-46be-8267-
    5756582633b4/state/analysis .......................................................................... 3

Food and Drug Administration Modernization Act of 1997, Pub. L. No. 105-
    115, 111 Stat. 2296 (1997) (amended 2013) ............................................... 4-5

https://www.nbcnews.com/health/health-news/novo-nordisk-sues-two-
    pharmacies-allegedly-offering-contaminated-copyc-rcna127383 .................. 3

Medications Containing Semaglutide Marketed for Type 2 Diabetes or
    Weight Loss, FDA Guidance (October 31, 2023)
    https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-
    and-providers/medications-containing-semaglutide-marketed-type-2-
    diabetes-or-weight-loss ................................................................................... 2

## PRELIMINARY STATEMENT

Plaintiff's first complaint alleged a violation of the Florida Drug and Cosmetic Act, which as this Court noted "is itself a law that says in substance comply with the [federal] Food Drug and Cosmetic Act (FDCA)." Order, Dkt. No. 33, pp. 6-7. Such a claim, as this Court held, is impliedly preempted by the FDCA. *See id.* pp. 5-7. Plaintiff's second bite-at-the-apple complaint fails for the same reason – it also alleges a violation of the Florida Drug and Cosmetic Act (and a corresponding alleged violation of the FDCA).[1] As with the first complaint, Plaintiff's FDUPTA claim also is not properly pled. Because Plaintiff's claim is preempted by both the federal FDCA and Florida Drug and Cosmetic Act, the Court should dismiss this case with prejudice.

## ALLEGATIONS

Plaintiff is a healthcare company that provides three medicines containing semaglutide for weight management and diabetes and is the only company in the United States with products containing semaglutide that are approved by the Food and Drug Administration (FDA). FAC ¶¶ 1-4, 8, 24. Because semaglutide is on the FDA Drug Shortages list, the FDA explicitly permits state-licensed pharmacies to compound semaglutide.[2] Brooksville is a

---

[1] Like the original complaint, the sole claim in the First Amended Complaint (FAC) is an alleged violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

[2] *See Drug Compounding and Drug Shortages*, FDA Guidance (March 24, 2023), https://www.fda.gov/drugs/human-drug-compounding/drug-compounding-and-drug-

pharmacy that sells compounded drugs containing semaglutide. *Id.* ¶¶ 26-27. Plaintiff alleges that unspecified and unknown testing showed impurities in Brooksville's compounded product and 19% less semaglutide than what is reported on the label. *Id.* ¶¶ 31-36. Plaintiff further alleges that the sale of Brooksville's compounded semaglutide violates the Florida Drug and Cosmetic Act ("DCA"), amounts to unfair competition that has resulted in lost sales, and damages its goodwill and reputation. *Id.* ¶¶ 39, 52.

The remainder of the allegations set forth in the FAC are irrelevant to Brooksville and are merely an attempt to imply that compounding is not safe. FAC ¶¶ 9-11 (warning generally of risks of counterfeiting, poor practices, and foreign manufactured semagutide not specific to Brooksville); ¶¶ 12-15 (listing examples of health risks unrelated to Brooksville or semaglutide, but rather a meningitis outbreak from over a decade ago that involved a New England Compounding Center and unrelated drugs such as methylprednisolone, Avastin, Curcumin, and Remdesivir); ¶¶ 16-17 (listing adverse health events for compounded semaglutide that are likely from illegal spas and unregulated weight loss clinics and not compounds prepared by 503A compounding

---

shortages; *Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss*, FDA Guidance (October 31, 2023), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss (same); *FDA Drug Shortages*, FDA, https://www.accessdata.fda.gov/scripts/drugshortages/default.cfm (last accessed December 7, 2023).

pharmacies like Brooksville).[3] Plaintiff does not allege any health event related to a Brooksville compound and "Jamie Bennett, a spokesperson for Novo Nordisk, said that the company has not been able to confirm any adverse events related to … Brooksville [] products."[4]

## PROCEDURAL HISTORY

In its original complaint, Plaintiff alleged that Brooksville violated section 499.023 of the Florida DCA by selling non-FDA approved drugs. *See* Dkt. No. 1. Brooksville filed a motion to dismiss arguing, *inter alia*, that Plaintiff's failure to comply with the FDCA and Florida DCA are impliedly preempted. Dkt. Nos. 17, 19, 27. On October 5, 2023, the Court held oral argument. *See* Dkt. No. 31. There, the Court explained to Plaintiff:

> you have no private right of action under the Florida FDA enforcement regimen, nor do you have any private cause of action under the Florida Drug and Cosmetic Act. <u>Either federal or Florida acts don't afford you a private cause of action</u>, as I understand it. [Transcript Dkt. No. 32, pp. 9-10]
>
> <u>you may not bring an action to enforce FDA -- a private cause of action under the federal Drug and Cosmetic Act. You may not bring a private cause of action under the Florida Drug and Cosmetic Act</u>. But here on FDUTPA, you're asking me to enforce

---

[3] Plaintiff alleges that there are 281 reported reactions from compounded semaglutide. However, as of December 6, 2023, there were a total of 23,845 adverse events listed for semaglutide in FDA's Adverse Events Reporting System (FAERS) and thus, if 281 were due to compounds, that means that overwhelmingly majority of ADRs reported were due to Novo Nordisk's product and not compounded semaglutide.  *See* FDA FAERS Public Dashboard, https://fis.fda.gov/sense/app/95239e26-e0be-42d9-a960-9a5f7f1c25ee/sheet/45beeb74-30ab-46be-8267-5756582633b4/state/analysis.

[4] *See* https://www.nbcnews.com/health/health-news/novo-nordisk-sues-two-pharmacies-allegedly-offering-contaminated-copyc-rcna127383.

for your benefit the Florida Drug and Cosmetic Act which incorporates, I guess by reference, the federal. [Transcript p. 23].

The Court acknowledged that it could not act as "FDA commissioner here adjudicating an administrative complaint" (Transcript p. 10) and granted the motion from the bench. *See* Dkt. No. 31. On November 8, 2023, the Court issued a written Order finding Plaintiff's claim not properly pleaded and preempted by the FDCA. *See* Dkt. No. 33.

Nevertheless, on November 29, 2023, Plaintiff filed the FAC alleging a new legal theory premised on and derived exclusively from FDCA regulations – that Brooksville is selling adulterated and misbranded drugs in violation of the FDCA and Florida DCA. *See* FAC ¶¶ 18-21, 31-36. Plaintiff again seeks to privately enforce the FDCA and the Florida DCA in contravention of the private enforcement bar set forth in both statutes.

## STATUTORY BACKGROUND

Congress passed the FDCA in 1938 to, among other things, create the FDA and charge that agency with ensuring that "drugs are safe and effective." 21 U.S.C. §§ 393(a), (b)(2)(B). Compounding by pharmacists and physicians is regulated under section 503A of the FDCA, codified at 21 U.S.C. § 353a. Congress passed two significant amendments to the FDCA to ensure the safety of compounded drugs (*Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 362-63 (2002)), the Food and Drug Administration Modernization Act of 1997, Pub. L.

No. 105-115, 111 Stat. 2296 (1997) (amended 2013) and the Drug Quality and Security Act, Pub. L. No. 113-54 (2013).

Congress made the FDA responsible for investigating potential violations of the FDCA, and provided it enforcement mechanisms, including injunction proceedings, civil and criminal penalties, and seizure. 21 U.S.C. §§ 332-34, 372. The FDCA explicitly bars private claims to enforce the statute. *See* 21 U.S.C. § 337(a) ("all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States").

The Florida DCA also has a private enforcement bar. *See* Fl. Stat. § 499.002(2) (The Florida Department of Health "shall administer and enforce this part to prevent fraud, *adulteration*, *misbranding*, or false advertising in the preparation, manufacture, repackaging, or distribution of drugs …") (emphasis added). A drug is adulterated if "it has been produced, prepared, packed, or held under conditions whereby it could have been contaminated with filth or rendered injurious to health" or "its strength differs from, or its purity or quality falls below the standard of, that which it purports or is represented to possess." Fl. Stat. § 499.006(2), (7). These provisions are taken directly from the FDCA. *See* 21 U.S.C. § 351(a)(1)(2A), § 351(c) (a drug is adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health" or "its strength differs from, or its

5

purity or quality falls below, that which it purports or is represented to possess"). A drug is misbranded if "its labeling is in any way false or misleading." Fl. Stat. § 499.007(1). This provision also mirrors the FDCA. *See* 21 U.S.C. § 352(a)(1) (a drug is misbranded "[i]f its labeling is false or misleading in any particular").

In fact, the purpose of the Florida DCA is conformity and uniformity with the federal FDCA. *See* Fl. Stat. § 499.002(1)(b),(c) (stating its purpose to "[p]rovide uniform legislation to be administered so far as practicable <u>in conformity with the provisions of, and regulations issued under the authority of, the Federal FDCA</u> and that portion of the Federal Trade Commission Act which expressly prohibits the false advertisement of drugs, devices, and cosmetics" and "[p]romote thereby uniformity of such state and federal laws, and their administration and enforcement, throughout the United States." (emphasis added)).

## STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nonetheless, the plaintiff must still meet pleading requirements by "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680. Thus, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Moreover, when the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not "show[n]"—
"that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

## I.    Plaintiff Cannot Enforce the FDCA or the Florida FDCA Through a FDUPTA Claim

Regardless of whether Plaintiff attempts to disguise its claim as one to
enforce the FDCA or one to enforce Florida's DCA (which incorporates the
federal FDCA), it is preempted as a matter of law. In other words, Plaintiff's
FDUPTA claim would not exist "but for" the FDCA and therefore is preempted.

As mentioned, the United States has sole enforcement authority under
the FDCA and Plaintiff's attempt at private enforcement is legally barred. *See*
21 U.S.C. § 337(a); *Nexus Pharms. Inc. v. Cent. Admixture Pharm. Servs.*, 48
F.4th 1040, 1044 (9th Cir. 2022); *see also Buckman Co. v. Plaintiffs' Legal
Comm.*, 531 U.S. 341, 352-53 (2001) (determining that, because FDCA
violations are prosecuted only by the United States, claims where violation of
the statute was a "critical element" are impliedly preempted); *Nexus Pharms.,
Inc. v. Cent. Admixture Pharm. Servs.*, No. SACV 20-01506-CJC(JDEx), 2020
U.S. Dist. LEXIS 220759, at *6 (C.D. Cal. Nov. 18, 2020) (citing 21 C.F.R. §§
10.25(a), 10.30) ("[I]f someone believes the FDCA is being violated, a private
lawsuit is generally not the way to address it" and "[w]hile citizens may

petition the FDA to take administrative action, private enforcement of the statute is barred.").

Claims to enforce or restrain violations of the FDCA (a task reserved to the FDA) or that require litigation of an alleged underlying FDCA violation must be brought by the United States. *Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs.*, 48 F.4th 1040, 1048 (9th Cir. 2022), *reh'g denied en banc* 2022 U.S. App. LEXIS 30561 (9th Cir. Nov. 3, 2022); *see also id.* at 1049 ("to permit Nexus to proceed with a claim that Defendants violated this law when the FDA did not so determine would, in effect, permit [Nexus] to assume enforcement power which the statute does not allow and require the finder of fact to make a decision that the FDA itself did not make."). As this Court aptly noted, "claims that 'rel[y] on a state statute which itself relies on the federal statute, not traditional state tort law theory,' *Nexus*, 48 F.4th at 1046, [and] 'exist solely by virtue of the FDCA . . . requirements' [are not cognizable]. *Buckman*, 531 U.S. at 353. Where 'the existence of [the FDCA] is a critical element' of a case, the claim is impliedly preempted. *Id.*" Order, Dkt. No. 33, p. 6.

"State-law claims based on conduct that violates the [FDCA] can escape implied preemption only if the alleged wrongdoing would give rise to liability under state law even if the Act did not exist." *Jacob v. Mantor Worldwide, LLC*, 40 F.4th 1329, 1336 (11th Cir. 2022) (citing *Godelia v. John Doe 1*, 881 F.3d 1309, 1320 (11th Cir. 2018) and *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319,

1330 (11th Cir. 2017)). Eleventh Circuit law holds, consistent with *Buckman*, that claims which exist solely by virtue of FDCA requirements or where the FDCA is a critical element of the case (*i.e.,* claims that say in substance "comply with the FDCA") are preempted, whereas claims that rely on traditional state tort law are not. *Buckman*, 531 U.S. at 353 (requiring reliance on "traditional state tort law" that predates the FDCA); *Mink*, 860 F.3d at 1327 ("the Supreme Court told us that traditional state-law tort claims survive implied preemption so long as they don't seek to privately enforce a duty owed to the FDA.").

Plaintiff's claim is based *<u>entirely</u>* on alleged violations of the Florida DCA – which as this Court noted "is itself 'a law that says in substance comply with the FDCA'"[5] because it requires compliance with the federal FDCA – as opposed to a claim sounding in traditional common law tort. *See* FAC ¶¶ 19-21, 31-36 (alleging Brooksville's product is adulterated and misbranded in violation of sections 499.006(2)(7) and 499.007(1) of the Florida DCA (and sections 351(a)(1)(2A), 351(c), and 352(a)(1) of the FDCA)). This claim is preempted. *See Buckman*, 531 U.S. at 353 (barring unfair competition claim because the FDCA rules are a "critical element" of the claim); *Nexus Pharms.*,

---

[5] *See* Order, Dkt. No. 33, p.6-7 (citing *Nexus*, 48 F.4th at 1050).

48 F.4th at 1050 (barring claim alleging unfair competition because defendant is not following the rules—and those rules are the FDCA rules).[6]

Indeed, Plaintiff's claim exists solely by virtue of the Florida DCA and the federal FDCA. The claim requires litigation of whether Brooksville's compound complies with sections 499.006(2),(7) and 499.007(1) of the Florida DCA and sections 351(a)(1)(2A), 351(c), and 352(a)(1) of the federal FDCA, when the FDA itself has not made such a finding.[7] Thus, in accordance with binding Supreme Court precedent in *Buckman*, Plaintiff's claim is preempted and "because federal preemption cannot be cured by amendment, the Court [should] dismiss[] this case with prejudice." *Amara v. Publix Supermarkets, Inc.*, 8:22-cv-367-VMC-JSS, 2022 U.S. Dist. LEXIS 145598, at *14 (M.D. Fla. Aug. 12, 2022).

---

[6] The FDUTPA is not a traditional common law claim (*see Lankhorst v. Indep. Sav. Plan Co.*, No. 3:11-cv-390-J-34JRK, 2012 U.S. Dist. LEXIS 204347, at *11 (M.D. Fla. Feb. 23, 2012) ("[T]he FDUTPA is a statutorily created cause of action, which did not exist at common law")), but rather the FDUTPA parallels section 5(a)(1) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a)(1). *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010) (courts interpreting the FDUTPA "must give 'due consideration and great weight' to FTC and federal court interpretations of section 5(a)(1) of the FTCA" (quoting Fla. Stat. § 501.204(2)).

[7] Brooksville disputes Plaintiff's allegations (*see* Declaration of Terry Myers attached hereto), but even accepting Plaintiff's allegations as true, preemption is required. *See Hope Med. Enter., Inc. v. Fagron Compounding Servs., LLC*, 2023 U.S. App. LEXIS 19072, *3 (9th Cir. Jul. 26, 2023) (reversing lower court's finding of **liability** and holding that the FDCA's prohibition on private enforcement and the doctrine of implied preemption barred the suit because it sought to "'enforce its interpretation' of the FDCA's rules for manufacturing compounded drugs against a competitor.").

Dismissal with prejudice is required under Florida law as well because it is consistent with federal preemption jurisprudence. "Florida law does not allow [a] [p]laintiff to bring a private cause of action to enforce FDA regulations" either. *Kaiser v. DePuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1192-93 (M.D. Fla. 2013) (collecting cases). Nor does the Florida DCA permit private enforcement. *See* Fla. Stat. § 499.002(2) (stating that the Florida Department of Health "*shall* administer and enforce" the requirements of the statute) (emphasis added); *Fields v. Mylan Pharmaceuticals, Inc.*, 751 F. Supp. 2d 1257, 1259 (N.D. Fla. 2009) ("Nowhere does the [Florida] Act state that it provides for a private cause of action"); *see also* Transcript, Dkt. No. 31, p. 23 (this Court stating to Plaintiff that "[y]ou may not bring a private cause of action under the Florida Drug and Cosmetic Act"). "Under Florida law, a statutory violation does not give rise to a private cause of action absent a clear legislative intent to do so" (*Wolicki-Gables v. Doctors Same Day Surgery Ctr., Ltd.*, 216 So.3d 665, 673 (Fla. 2d DCA 2017)), and "legislative intent … does not support the conclusion that the Florida Drug and Cosmetic Act impliedly provides a private cause of action." *T.W.M. v. Am. Med. Systems, Inc.*, 886 F. Supp. 842, 845 (N.D. Fla. 1995).

## II.    Plaintiff Also Fails to Plausibly Plead a FDUPTA Claim

It is axiomatic that a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. It is not enough to plead facts that are "merely consistent with a defendant's liability," if the complaint "stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). Here, the FAC must be dismissed because, even if the court accepts the allegations in the FAC as true, Brooksville would not be liable for violating the FDUTPA.

To state a claim under FDUTPA, the Plaintiff must allege three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus.*, Inc., No. 3:16-CV-186-J-34JRK, 2018 U.S. Dist. LEXIS 24920, at *41 (M.D. Fla. Feb. 15, 2018). A non-consumer such as Plaintiff may bring a FDUTPA claim but must nonetheless "prove that <u>there was injury or detriment to consumers</u> to satisfy all the elements of a FDUTPA claim." *Id.* at *45 (emphasis in original); *see also Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) (explaining that non-consumer claimant must "prove that there was an injury or detriment to consumers in order to satisfy all of the elements of a FDUTPA claim"). The FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) (quoting *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008)).

13

On the whole, Plaintiff's allegations are thread-bare and speculative. The FAC alleges that, pursuant to "testing performed of Defendant's drugs" (which are unspecified), it was revealed that Brooksville's products have certain impurities and a strength 19% lower than labeled. *See* FAC ¶¶ 31-37. The FAC thus concludes that Brooksville "sells its adulterated and misbranded drugs claiming to contain semaglutides to customers in Florida and other states." FAC ¶ 39. However, the FAC fails to allege that consumers suffered "injury or detriment" caused by Brooksville's products. Plaintiff cites historical public health incidents unrelated to Brooksville's products, *see* FAC ¶¶ 12-14, and an "increased number of adverse event reports" for drugs containing semaglutide, without asserting (because it cannot) that Brooksville's products caused those reports. FAC ¶¶ 16-17. The FAC does not assert that consumers were actually injured by Brooksville's products, or that such injury was caused by Brooksville's alleged violations of the FDCA. Hypothetical examples of "potential" injuries do not satisfy the actual damages element of a FDUTPA claim. *See CEMEX*, 2018 U.S. Dist. LEXIS 24920, at *48 (dismissing FDUPTA claim because there were no "facts supporting a plausible inference that any consumers have or are likely to have suffered damages"—no consumer was harmed by having purchased the products at issue).

Even if some concrete injury did exist (it does not), the FAC fails to causally link that injury to Brooksville's conduct. Because the API in any drug

degrades over time and based on its storage conditions and exposure to the environment, the presence of impurities and/or lower concentration of semaglutide in the test sample may be the result of numerous factors, not attributable to Brooksville. Importantly, the FAC does not allege that Brooksville or its API manufacturers deviated from stringent Current Good Manufacturing Practices (CGMP) and other FDA standards, including method development, method validation, and release testing requirements. *See, e.g.*, 21 C.F.R. § 211.165 (release testing requirements). Nor is it alleged that Brooksville's products were manufactured without compliance with FDA-approved specifications for purity and potency.[8]

Moreover, there will always be some level of impurities in any drug product because such impurities arise from the manufacturing process itself. The mere fact that compounded semaglutide contains impurities (or differences) not found in Plaintiff's semaglutide does not render Brooksville's product "adulterated." Instead, the relevant question under the FDCA is whether the impurity level is within FDA-approved release specifications.

---

[8] These points further demonstrate preemption and show that Plaintiff's FDUPTA claim (1) explicitly incorporates FDCA requirements and would not exist in the FDCA's absence (*see Buckman*, 531 U.S. at 353 (requiring preclusion where the FDCA "is a critical element of the[] case")), (2) requires litigating FDA standards (*see Nexus Pharms.*, 48 F4th at 1048 (preempting claim that requires litigation of whether defendant meets FDCA requirements)) and (3) requires this Court to act as FDA Commissioner.

Here, the impurities are well within the specifications, and the FAC contains no information to conclude otherwise. *See* Myers Decl. ¶ 6.

Despite Plaintiff's second bite at the apple, the FAC fails to properly plead the elements of a FDUTPA claim.

### III.    The Court Should Grant Brooksville Attorneys' Fees

In the event this _second_ motion to dismiss is granted and this suit is dismissed with prejudice, Brooksville respectfully requests an award of attorneys' fees as the prevailing party pursuant to the FDUTPA. Fla. Stat. § 501.2105(1). Under that statute, the trial court "has discretion to award attorney's fees to a prevailing plaintiff <u>or a prevailing defendant</u>." *Lanard Toys Ltd. v. Dolgencorp, LLC*, No. 3:15-CV-849-MMH-PDB, 2021 U.S. Dist. LEXIS 257355, at *37 (M.D. Fla. Aug. 20, 2021), as corrected (Oct. 19, 2021). The Florida Supreme Court has explained that "the purpose of FDUTPA's attorney's fees provision ... is to award attorney's fees to the party that prevailed in civil litigation that involved a violation of FDUTPA[.]" *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 371 (Fla. 2013). By invoking FDUTPA, Plaintiff "exposed [itself] to both the benefits and the possible consequences of that act's provisions." *Id.* at 369.

Courts routinely award attorneys' fees to a prevailing defendant even when it is determined that FDUTPA does not apply or is even preempted. *See Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2021 U.S.

16

Dist. LEXIS 84584, at *13, *15 (S.D. Fla. Apr. 30, 2021), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 96719 (S.D. Fla. May 21, 2021) (awarding fees to defendant who "successfully defended against Point Conversions' FDUTPA counterclaims, which the District Court dismissed as *preempted* by patent law"); *Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-FTM-29CM, 2015 U.S. Dist. LEXIS 129194, at *10 (M.D. Fla. Sept. 25, 2015) (where FDUTPA claims were dismissed with prejudice, holding "defendants were prevailing parties. The Court further finds that the dismissal of the FDUTPA claim on the basis of preemption did not negate defendants' status as prevailing for purposes of attorney's fees"); *see also M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113, 115 (11th Cir.1994) (awarding attorney's fees to a prevailing defendant after finding that the FDUTPA does not apply, stating that if it were Florida law to deny attorney's fees under these circumstances then "no prevailing defendant would ever be entitled to attorney's fees under the DTPA, for by definition defendants prevail by demonstrating the inapplicability of the DTPA to their actions").

In exercising discretion to award fees, courts follow several non-exhaustive factors, among which are whether an award of fees would deter Plaintiff from continuing to pursue similar FDUTPA claims, and the merits of the parties' respective positions, including the degree of the opposing party's culpability or bad faith. *See Tropical*, 2021 U.S. Dist. LEXIS 84584, at *14.

17

Brooksville argued in connection with its first motion to dismiss that any amendment of the complaint would be futile and would result in Brooksville filing a "déjà vu" motion raising the identical preemption argument, which is exactly what occurred here.[9] Plaintiff's claims are without merit and have already been rejected by this Court, thus militating in favor of an award of fees.

## CONCLUSION

For the reasons set forth herein, Brooksville respectfully requests that the Court dismiss this matter with prejudice and deny Plaintiff any further opportunity to amend its Complaint.

Dated: December 13, 2023                          Respectfully Submitted,

By: /s/*Matthew J. Modafferi*
   Matthew J. Modafferi
   Frier & Levitt, LLC
   *Attorneys for Defendant*
   101 Greenwich Street, Ste 8B
   New York, NY 10006
   Tel: (646) 970-6882
   mmodafferi@frierlevitt.com

---

[9] *See* Transcript, Dkt. No. 31, p. 36 ("And to the extent that we're going to get an amended complaint, it's going to be déjà vu all over again because it will still be preempted no matter which way you slice it.").

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Counsel for the parties have conferred via email and Plaintiff opposes this motion.