**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| NOVO NORDISK INC.<br><br>    Plaintiff,<br><br>  v.<br><br>BROOKSVILLE<br>PHARMACEUTICALS INC.,<br><br>    Defendant. | Case No. 8:23-cv-01503-WFJ-TGW |

## <u>NOVO NORDISK INC.'S OPPOSITION TO</u>
## <u>DEFENDANT'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

BACKGROUND ................................................................................. 2

LEGAL STANDARD.......................................................................... 5

ARGUMENT ...................................................................................... 6

I.     Novo's Claim Against Brooksville Is Not Preempted. .................................. 6

II.    The Amended Complaint States a Claim Under FDUTPA.......................... 13

III.   Attorneys' Fees Against Novo Are Improper. ............................................ 16

CONCLUSION .................................................................................. 18

# TABLE OF AUTHORITIES

CASES                                                                    Page(s)

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    No. 15-CV-164, 2015 WL 12835689 (M.D. Fla. Sept. 10, 2015) ....................16

*Albertson's, Inc. v. Kanter*,
    555 U.S. 1097 (2008) No. 07-1327, 2008 WL 5151069 (U.S. Dec.
    5, 2008) ...........................................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................5

*Baker v. City of Madison*,
    67 F.4th 1268 (11th Cir. 2023) ....................................................................6, 16

*In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs.
    Litig.*,
    701 F. Supp. 2d 356 (E.D.N.Y. 2010) ........................................................8, 10

*Bubak v. GOLO, LLC*,
    No. 21-CV-00492, 2024 WL 86315 (E.D. Cal. Jan. 8, 2024)...........................12

*Car Body Lab Inc. v. Lithia Motors, Inc.*,
    No. 21-CV-21484, 2021 WL 2658693 (S.D. Fla. June 22, 2021)......................14

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach
    Cnty., Inc.*,
    169 So. 3d 164 (Fla. 4th Dist. Ct. App. 2015)...................................................14

*CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*,
    No. 16-CV-186, 2018 WL 905752 (M.D. Fla. Feb. 15, 2018)....................14, 15

*Chastain v. N.S.S. Acquisition Corp.*,
    No. 08-CV-81260, 2010 WL 5463859 (S.D. Fla. Dec. 29, 2010) ....................17

*CMR Constr. & Roofing, LLC v. UCMS, LLC*,
    No. 20-CV-867, 2023 WL 2930825 (M.D. Fla. Feb. 9, 2023)...........................17

*Day v. Sarasota Drs. Hosp., Inc.*,
    No. 19-CV-1522, 2021 WL 7450526 (M.D. Fla. Aug. 12, 2021)......................17

*Dayan v. Swiss-Am. Prods., Inc.*,
No. 15-CV-6895, 2017 WL 9485702 (E.D.N.Y. Jan. 3, 2017)...................10, 11

*Debernardis v. IQ Formulations, LLC*,
942 F.3d 1076 (11th Cir. 2019) ........................................................................15

*GSW, Inc. v. Long Cnty., Ga.*,
999 F.2d 1508 (11th Cir. 1993) ..........................................................................6

*Hope Med. Enters., Inc. v. Fagron Compounding Servs., LLC*,
No. 22-55173, 2023 WL 4758454 (9th Cir. July 26, 2023) ................................9

*Jackson v. Wal-Mart Stores, Inc.*,
753 F. App'x 866 (11th Cir. 2018) .....................................................................5

*Jacob v. Mentor Worldwide, LLC*,
40 F.4th 1329 (11th Cir. 2022) ....................................................................9, 10

*Jovel v. i-Health, Inc.*,
No. 12-CV-5614, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) .......................8

*Jovine v. Abbott Lab'ys, Inc.*,
795 F. Supp. 2d 1331 (S.D. Fla. 2011) ..............................................................8

*Mink v. Smith & Nephew, Inc.*,
860 F.3d 1319 (11th Cir. 2017) ........................................................................11

*Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*,
48 F.4th 1040 (9th Cir. 2022) .....................................................................9, 12

*Patane v. Nestlé Waters N. Am., Inc.*,
369 F. Supp. 3d 382 (D. Conn. 2019).............................................................13

*Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc.*,
No. 17-CV-686, 2018 WL 7351686 (N.D. Fla. Nov. 5, 2018) .........................14

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*,
278 F. Supp. 3d 1307 (S.D. Fla. 2017) ..............................................................7

*State v. Rodriguez*,
71 So. 3d 154 (Fla. 3d Dist. Ct. App. 2011) ....................................................12

iv

*Walker v. Super 8 Worldwide, Inc.*,
No. 08-CV-552, 2012 WL 13102080 (M.D. Fla. July 27, 2012) .......................17

*Yonan v. Walmart, Inc.*,
591 F. Supp. 3d 1291 (S.D. Fla. 2022) ................................................................8

**STATUTES**

21 C.F.R. § 820.30 ...........................................................................................10

21 U.S.C. § 337(a)(1)..........................................................................................12

Federal Food, Drug, and Cosmetic Act ...........................................................*passim*

Florida Drug and Cosmetic Act .......................................................................*passim*

Florida Deceptive and Unfair Trade Practices Act ..........................................*passim*

Fla. Stat. § 499.002(2)........................................................................................12

Fla. Stat. § 499.005(1)......................................................................................2, 9

Fla. Stat. § 499.006–07 .....................................................................................12

Fla. Stat. §§ 499.006(2), (7) .............................................................................2, 9

Fla. Stat. § 499.007(1).......................................................................................2, 9

**OTHER AUTHORITIES**

*Leading Obesity Expert Organizations Release Statement to Patients
on Compounded GLP-1 Alternatives*, Obesity Med. Ass'n (Jan. 8,
2024), https://obesitymedicine.org/blog/leading-obesity-expert-
organizations-release-statement-to-patients-on-glp-1-compounded-
alternatives/ ...........................................................................................................4

Brooksville's Motion to Dismiss targets a complaint that Novo Nordisk Inc. ("Novo") did not file, attacking legal claims that Novo did not plead and challenging supposed facts that Novo did not allege. Novo's First Amended Complaint ("FAC"), ECF No. 40, alleges that Brooksville manufactures and sells to Florida consumers compounded drugs that purport to contain semaglutide but actually contain concerning impurities not found in the pharmaceutical-grade semaglutide in Novo Nordisk's FDA-approved products—impurities that present a risk of "possibly serious and life-threatening reactions like anaphylaxis," FAC ¶ 21—and contain substantially less semaglutide than labeled—rendering them "potentially less effective," *id*. Taking those well-pleaded allegations as true—as the Court must at the motion-to-dismiss stage—Brooksville's drugs are adulterated and misbranded within the meaning of the Florida Drug and Cosmetic Act, and Brooksville's sales of those drugs are an unfair and deceptive trade practice under the Florida Deceptive and Unfair Trade Practices Act.

Federal law does not preempt Novo's claim. Consistent with Eleventh Circuit authority, this Court has already held that conduct that would "'give rise to liability under state law even if the [federal Food, Drug, and Cosmetic Act] did not exist'" is not preempted, even if that same conduct would also "violate[] the FDCA." Mot. to Dismiss Order 5, ECF No. 33 (quoting *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1336 (11th Cir. 2022)). That is exactly the situation here. The Florida Drug

and Cosmetic Act ("Florida DCA") would render Brooksville's drugs adulterated and misbranded, and would prohibit their sale, even if the Federal Food, Drug, and Cosmetic Act ("Federal DCA") did not exist.  This is so because the Florida DCA prohibits and defines adulteration and misbranding without reference to ***any*** federal law.  *See* § 499.005(1), Fla. Stat. (prohibiting sale of "any drug . . . that is adulterated or misbranded"); *id.* § 499.006(2), (7) (defining adulterated drugs to include those "produced, prepared, packed, or held under conditions whereby it could have been contaminated with filth or rendered injurious to health" and those whose "strength differs from, or [their] purity or quality falls below the standard of, that which [they] purport[] or [are] represented to possess"); *id.* § 499.007(1) (defining misbranded drugs to include those whose labeling "is in any way false or misleading").

Nor does Brooksville's Motion to Dismiss seriously argue that Florida law somehow permits the sale of impure and under-strength drugs that puts patients at potential risk.  Instead, it seeks dismissal by "disput[ing] Plaintiff's allegations."  Def.'s Mot. to Dismiss FAC 11 n.7, ECF No. 42 (hereinafter, "Mot.").  This it cannot do.  Brooksville's Motion should be denied.

## BACKGROUND

Novo initiated this action against Brooksville in July 2023.  Compl., ECF No. 1.  Novo alleged that Brooksville's sales of unapproved drugs purporting to contain semaglutide violated the Florida DCA's prohibition on drug sales "unless an

approved application has become effective under s. 505 of the [Federal FDCA] or [unless] otherwise permitted by the Secretary of the United States Department of Health and Human Services for shipment in interstate commerce." *Id.* ¶ 9 (quoting § 499.023, Fla. Stat.). Following briefing, the Court granted Brooksville's first motion to dismiss with leave to amend, holding that Novo's claim was preempted because "[t]he Court can identify no alleged conduct that would 'give rise to liability under state law even if the [Federal FDCA] did not exist.'" Mot. to Dismiss Order 7, ECF No. 33.[1]

In response to the Court's ruling, Novo filed its First Amended Complaint, alleging that Brooksville's drugs are adulterated and misbranded within the meaning of the Florida DCA, and that Brooksville's sales of such drugs are an unfair and deceptive trade practice within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"). FAC, ECF No. 40. Novo's allegations stem from testing of Brooksville's drugs, which has revealed that (1) they "contain[] unknown impurities and impurities with amino acid additions and deletions not found in the pharmaceutical-grade semaglutide in Novo Nordisk's FDA-approved products," presenting a risk of "possibly serious and life-threatening reactions like anaphylaxis," *id.* ¶¶ 21, 31–32, and (2) their "strength is at least 19 percent less than

---

[1] Novo respectfully disagrees that its initial Complaint is preempted by federal law.

what is reported on its label, thus rendering [them] potentially less effective," *id.* ¶¶ 21, 33–37.

Novo's FAC meticulously sets forth allegations regarding how such conduct can injure patients. *See, e.g.*, *id.* ¶ 17 (noting 281 cases of adverse events associated with compounded semaglutide, include 68 hospitalizations and two deaths); *id.* ¶¶ 9–10 (FDA statements that compounded semaglutide can "contain too little . . . active ingredient" or "other harmful ingredients," and that compounded drugs that are "contaminat[ed]" or contain the incorrect amount of "active ingredient" can "lead to serious patient injury and death"); *id.* ¶ 11 (Mississippi State Board of Medical Licensure advisory that compounded semaglutide is "potentially unsafe" because it may not be "manufactured under sanitary conditions"); *see also id.* ¶¶ 12–14 (chronicling injuries caused by impure and improperly-formulated compounded drugs).[2]

As alleged, Brooksville's conduct violates FDUTPA in two ways. *First*, "[m]anufacturing compounded drugs claiming to contain semaglutide that contain

---

[2] Since the filing of the FAC, patient advocacy organizations have also recommended consumers avoid compounded GLP-1 drugs. The Obesity Society, Obesity Medicine Association, and Obesity Action Coalition recently issued a statement warning that compounded drugs "are not the same as the drug provided by the manufacturers," and "may pose serious health risks because of impurities or other non-pharmaceutical additives." *See Leading Obesity Expert Organizations Release Statement to Patients on Compounded GLP-1 Alternatives*, Obesity Med. Ass'n (Jan. 8, 2024), https://obesitymedicine.org/blog/leading-obesity-expert-organizations-release-statement-to-patients-on-glp-1-compounded-alternatives/.

potentially harmful impurities and lack the labeled strength" is inherently unfair and deceptive. *Id.* ¶ 44. *Second*, Brooksville has separately violated FDUTPA by violating a "statute . . . which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." *Id.* ¶ 52 (quoting § 501.203(3)(c), Fla. Stat.). Specifically, the Florida DCA prohibits the "manufacture, repackaging, sale, delivery, or holding or offering for sale of any drug . . . that is adulterated or misbranded." *Id.* ¶¶ 18, 48–52 (citing § 499.005(1), Fla. Stat.). The Florida DCA renders a drug adulterated if either (a) it has been produced, prepared, or held under conditions "whereby it could have been . . . rendered injurious to health," or (b) "its strength differs from . . . that which it purports or is represented to possess." *Id.* ¶¶ 19, 50 (quoting §§ 499.006(2), (7) Fla. Stat.). And a drug is misbranded within the meaning of the Florida DCA if "its labeling is in any way false or misleading." *Id.* ¶¶ 20, 51 (quoting § 499.007(1), Fla. Stat.).

Novo's FAC seeks an injunction to prevent Brooksville from continuing to put patients at potential risk by selling compounded drugs to patients that are impure, are sub-standard, and thus pose safety and effectiveness risks to patients.

## LEGAL STANDARD

When evaluating a motion to dismiss, a court "must assume the truth of well-pleaded factual allegations, construe them in the light most favorable to the plaintiff, and only then analyze whether they plausibly support an entitlement to relief."

*Jackson v. Wal-Mart Stores, Inc.*, 753 F. App'x 866, 868 (11th Cir. 2018); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Evidence outside of the pleadings is not properly considered at the motion to dismiss stage.  *See Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023); *GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993) (on a motion to dismiss, "[a]ll facts set forth in the complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto").

## **ARGUMENT**

### I.    **Novo's Claim Against Brooksville Is Not Preempted.**

While Brooksville hopes to avoid engagement on the merits by resort to clever phrase, Novo's FAC is hardly "déjà vu all over again."  Mot. at 18 n.9.  To the contrary, the FAC directly addresses the Court's prior ruling, pleading a violation of Florida law that cannot fairly be read to "say[] in substance comply with the FDCA." Mot. to Dismiss Order 7, ECF No. 33.  Taking the allegations actually pled in the FAC—as opposed to phantom allegations that Brooksville attacks as preempted— Novo's claim for relief is not impliedly preempted by federal law.

In its November 8, 2023 Order, the Court set forth the test for implied preemption as follows: "To 'escape implied preemption,' the alleged conduct must 'give rise to liability under state law even if the [Federal FDCA] did not exist.'" *Id.* at 5 (quoting *Jacob*, 40 F.4th at 1336).  The Court further held that claims "rel[ying]

6

on a state statute which itself relies on the federal statute," that "exist solely by virtue of the [Federal] FDCA," or that have as a "critical element" the "existence of [the Federal FDCA]" are impliedly preempted.  *Id.* at 6 (alterations in original).

Consistent with that test, Novo's FAC does not rely on any provision of Florida law that "relies on," "exist[s] solely by virtue of," or has as a "critical element" the existence of the Federal FDCA.  Instead, Novo alleges that Brooksville's conduct violates FDUTPA in two ways, both of which rest on state-law duties independent of the Federal FDCA.

*First*, Novo alleges that manufacturing and selling drugs with impurities capable of causing serious and life-threatening reactions like anaphylaxis is an unfair practice, "insofar as it is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers and to Plaintiff," and that selling drugs with significantly less "semaglutide" than labeled is a deceptive practice, as it is likely to mislead.  FAC ¶ 44.  Brooksville's Motion to Dismiss does not address this theory at all, which is reason enough to deny the Motion.

Of course, this theory of liability is rooted in Florida state law and is completely untethered to ***any*** federal statute.  *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017) (FDUTPA claim need not be based on "the violation of a predicate statute," and can instead be based on "a traditional violation, alleging defendants

7

engaged in '[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce'" (quoting § 501.204(1), Fla. Stat.)).  And it is consistent with claims that courts have held state a FDUTPA claim.  *See, e.g.*, *Yonan v. Walmart, Inc.*, 591 F. Supp. 3d 1291, 1300–02 (S.D. Fla. 2022) (allegation that food product contained fewer servings than advertised stated a deceptiveness claim and was not preempted by the Federal FDCA, because "[t]here is no prohibition . . . on a state law claim based upon packaging that also violates the FDCA"); *Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331, 1343 (S.D. Fla. 2011) (complaint adequately stated an unfairness claim where baby formula manufacturer waited to "recall its defective Similac products for nearly a week after discovering that they were contaminated and unsafe for human consumption"); *see also Jovel v. i-Health, Inc.*, No. 12-CV-5614, 2013 WL 5437065, at *5 (E.D.N.Y. Sept. 27, 2013) ("[Plaintiff]'s claims that [defendant] misrepresented the effectiveness of its products is a traditional claim of consumer misrepresentation, not an attempt to enforce the FDCA's labeling requirements."); *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 375 (E.D.N.Y. 2010) (claim that dose only half the amount recommended by the FDA would "reduc[e] cholesterol and provid[e] cardiovascular benefits" was deceptive and not preempted by the Federal FDCA).

*Second*, Novo alleges that Brooksville's sales violate FDUTPA for the separate reason that they are in violation of the **Florida** DCA, "which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." FAC ¶ 52 (quoting § 501.203(3)(c), Fla. Stat.). This basis for liability, too, is independent of any federal law. The Florida DCA prohibits the sale of adulterated or misbranded drugs. § 499.005(1), Fla. Stat. And it defines adulteration and misbranding without reference to any federal law: a drug is adulterated if it was made under conditions whereby it could have been rendered "injurious to health" and if its "strength differs from . . . that which it purports or is represented to possess," § 499.006(2), (7), and a drug is misbranded if "its labeling is in any way false or misleading," § 499.007(1). The Florida DCA does not, as Brooksville asserts, incorporate into those definitions "FDA-approved specifications for purity and potency" or "FDA-approved" release specifications. Mot. at 15.[3] For that reason, Brooksville's conduct would "give rise to liability under state law even if the

---

[3] By contrast, Novo's original complaint—and the out-of-circuit cases on which Brooksville primarily relies—alleged violation of a provision of the Florida DCA that expressly referenced the Federal FDCA. Compl. ¶ 9, ECF No. 1 (quoting § 499.023, Fla. Stat.); *see also Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040, 1044 (9th Cir. 2022) (alleging violation of state statutes "prohibit[ing] the sale of drugs not approved by the FDA"); *Hope Med. Enters., Inc. v. Fagron Compounding Servs., LLC*, No. 22-55173, 2023 WL 4758454, at *1 (9th Cir. July 26, 2023) (suit "seek[ing] to 'enforce [plaintiff's] interpretation' of the FDCA's rules for manufacturing compounded drugs").

[Federal FDCA] did not exist," and Novo's claim is not preempted.  Mot. to Dismiss Order 5, ECF No. 33.[4]

Brooksville cannot avoid this result by noting that the Federal FDCA also bars the sale of adulterated and misbranded drugs.  A state-law claim is not preempted merely because the challenged conduct also violates federal law.  *Jacob*, 40 F.4th at 1339 (claim not preempted, even though defendant's alleged conduct "violat[ed] both state law and the device-specific regulatory controls the FDA approved under 21 C.F.R. § 820.30").  As this Court already held, if the conduct would give rise to liability under state law even if the Federal FDCA did not exist, the claim "will survive implied preemption, even if based on conduct that [also] violates the FDCA."  Mot. to Dismiss Order 5, ECF No. 33.

---

[4] That Novo's claim rests on a state statute, rather than on a "common law tort" is irrelevant.  As *Jacob* held, the central question is whether the "alleged wrongdoing would give rise to liability under state law"—whether sounding in common law or statute—"even if the [Federal FDCA] did not exist." 40 F.4th at 1336.  Courts since *Buckman* have considered, and rejected, preemption challenges to claims brought under consumer protection statutes.  *See, e.g.*, *Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d at 375 (claims brought under consumer protection laws of 47 states were not preempted because they constituted "a traditional claim of consumer misrepresentation" and there was no conflict between state and federal law); *Dayan v. Swiss-Am. Prods., Inc.*, No. 15-CV-6895, 2017 WL 9485702, at *7–8 (E.D.N.Y. Jan. 3, 2017) (plaintiff's claims under 43 states' consumer protection laws that that sunscreen had lower-than-labeled SPF were not impliedly preempted where there was no conflict between state and federal law), *R & R adopted*, 2017 WL 1214485 (E.D.N.Y. Mar. 31, 2017).

Indeed, notwithstanding Brooksville's misguided refrain, Novo does ***not*** allege a violation of the Federal FDCA or seek to enforce that violation.  *See, e.g.*, Mot. at 4 (misconstruing Novo's complaint as being "premised on and derived exclusively from FDCA regulations"); *id.* at 10–11 (falsely stating that the FAC alleges violation of "sections 351(a)(1)(2A), 351(c), and 352(a)(1) of the FDCA"— sections that are nowhere referenced in the FAC—and that the FAC therefore "requires litigation of whether Brooksville's compound complies with" the Federal FDCA).  Novo's claims are based on Brooksville's non-compliance with *Florida's* standards, not the FDA's.  *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1333 (11th Cir. 2017) ("Section 337(a) can prohibit only actions to enforce ***FDA requirements*** by private parties." (emphasis added)); *accord Dayan*, 2017 WL 9485702, at *8 (rejecting argument that "implied pre-emption applies because Plaintiff's claim is grounded in conduct that, if true, also violates the FDCA," because "Plaintiff bases his allegations not on the FDCA prohibition, but on the consumer-protection laws in many states"); *see also* U.S. Br. as Amicus Curiae at *12–13, *Albertson's, Inc. v. Kanter*, 555 U.S. 1097 (2008) (No. 07-1327), 2008 WL 5151069, at *8 ("Actions to enforce state laws that impose requirements identical to those under the FDCA are not actions to enforce the FDCA itself. . . . [E]ven when state-law claims are

11

predicated on violations of the FDCA, they remain state-law claims."). Novo's FAC leaves enforcement of any parallel violation of federal law to the FDA.[5]

That the Florida DCA does not create a private right of action is also of no moment. Unlike the Federal FDCA, the Florida DCA does not contain a "private enforcement bar," as Brooksville alleges. Mot. at 5. *Compare* 21 U.S.C. § 337(a)(1) ("all" enforcement proceedings "shall be by and in the name of the United States"), *with* § 499.002(2), Fla. Stat. (requiring Florida Department of Business and Professional Regulation to "enforce" the Florida DCA, but containing no express restriction on parallel private enforcement). The Florida DCA does not itself create

---

[5] Taken to its logical conclusion, Brooksville's argument that a claim based on a violation of the Florida DCA is merely a claim to enforce the Federal FDCA would render the Florida DCA a nullity, leaving even the Florida Attorney General powerless to pursue a FDUTPA claim for a violation of the Florida DCA against companies disseminating adulterated and misbranded drugs in Florida. *Cf. State v. Rodriguez*, 71 So. 3d 154 (Fla. 3d Dist. Ct. App. 2011) (upholding conviction in case brought by State for violation of § 499.006–07, Fla. Stat.). As Brooksville notes, the Florida Department of Business and Professional Regulation "shall . . . enforce" the Florida DCA to "prevent . . . adulteration [and] misbranding." § 499.002(2), Fla. Stat. But if prevention of adulteration and misbranding were synonymous with enforcement of the Federal FDCA, the State's obligation to enforce the FDCA would run headlong into the FDA's exclusive authority to enforce the Federal FDCA under 21 U.S.C. § 337(a)(1). Indeed, in disagreeing with the holding in *Nexus*, a recent California district court decision highlights this illogical outcome. *See Bubak v. GOLO, LLC*, No. 21-CV-00492, 2024 WL 86315, at *4 & n.3 (E.D. Cal. Jan. 8, 2024) ("[W]hat would be the point of a state legislature passing a state law that is identical to a federal law if there can be no private right of action under that state law? More specifically to this case, what would be the point of California's Sherman Law, which adopts FDCA regulations as its own, if any claims asserting a violation of *the Sherman Law* will be deemed preempted and barred by § 337's bar on private enforcement *of the FDCA*?" (emphasis in original)).

a private cause of action, but Novo brings this action under FDUTPA, not the Florida DCA. And nothing in the language of FDUTPA requires a law "which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" to contain a private right of action in order for violation of such law to serve as a FDUTPA predicate. Tellingly, Brooksville does not cite a single case holding that a violation of the Florida DCA cannot form the basis for a FDUTPA violation. Rather, courts addressing similar consumer protection statutes in other states suggest that these statutes can provide a vehicle for causes of action for violations of state laws like the Florida DCA. *See, e.g.*, *Patane v. Nestlé Waters N. Am., Inc.*, 369 F. Supp. 3d 382, 394 (D. Conn. 2019) (rejecting argument that Vermont Consumer Fraud Act claim failed because the predicate statute did not "give rise to a private cause of action," and noting that "[i]t is common . . . for consumer protection and unfair trade practices statutes to serve as a vehicle for a cause of action based on conduct that violates an independent state law standard that is not itself otherwise actionable"); *see also* Mot. to Dismiss Order 8, ECF No. 33 (inviting Novo to "plead factual content that allows the Court to draw a reasonable inference that Defendant's drugs violate the Florida Drug and Cosmetic Act").

Thus, Novo's FDUTPA claim is not preempted by federal law.

## II.    The Amended Complaint States a Claim Under FDUTPA.

The FAC adequately alleges both harm to consumers and causation.

Brooksville misstates Florida law in arguing that Novo must allege that "consumers were *actually* injured by Brooksville's products." Mot. at 14. In truth, Novo is required to plead only that Brooksville's actions are "***likely*** to cause consumer harm." *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 16-CV-186, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) (emphasis added); *see also, e.g.*, *Car Body Lab Inc. v. Lithia Motors, Inc.*, No. 21-CV-21484, 2021 WL 2658693, at *3 (S.D. Fla. June 22, 2021) ("A plaintiff alleging a violation of FDUTPA must allege that the conduct in question is likely to cause actual harm to the end consumer."), *R & R adopted*, 2021 WL 3403208 (S.D. Fla. Aug. 4, 2021); *Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc.*, No. 17-CV-686, 2018 WL 7351686, at *2 (N.D. Fla. Nov. 5, 2018) (dismissing complaint containing "no allegations clearly showing these actions resulted in, or were likely to result in, harm to consumers"). Harm to consumers can be shown by alleging that a deceptive practice is "likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment" or that an unfair practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th Dist. Ct. App. 2015).

The FAC clearly alleges that Brooksville's conduct is likely to cause harm to Florida consumers. It alleges that Brooksville's drugs contain "peptide-related

impurities that are not present in the pharmaceutical-grade semaglutide in Novo Nordisk's FDA-approved products" and that they "contain only 1.62 mg/mL of semaglutide, which is at least 19 percent less than its labeled strength" of 2.09 mg/mL.  FAC ¶¶ 31, 34–35.   It further alleges that these types of peptide-related impurities "have the potential to stimulate an immunological reaction upon repeated injections, which can lead to serious and life-threatening reactions like anaphylaxis," and that mislabeled, under-strength semaglutide is "less effective."  *Id.* ¶¶ 32, 37. And Novo bolsters its claims with statements from scientific bodies and real-world examples of improperly-compounded drugs (including compounded "semaglutide" drugs) causing harm.  *Id.* ¶¶ 9–17.   Together these allegations state a claim that Brooksville's conduct is "likely to cause consumer harm."  *Compare CEMEX*, 2018 WL 905752, at *15 (no likelihood of consumer harm where consumers received genuine product from a non-authorized distributor).[6]  Brooksville's assertion that Novo had to plead in the complaint—before any discovery has even been obtained— a specific "health event related to a Brooksville compound," Mot. at 3, finds no support in the law.

---

[6] Moreover, the Eleventh Circuit has held that a purchaser of a product that is "deemed adulterated and cannot lawfully be sold" has necessarily suffered *economic* harm from that purchase, regardless of the presence or absence of physical injury. *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084–85 (11th Cir. 2019).

15

Brooksville's argument that "the FAC fails to causally link [any] injury to Brooksville's conduct," Mot. at 14, relies entirely on a series of speculative assertions well outside the four corners of the FAC, *e.g.*, *id.* at 15 ("the presence of impurities and/or lower concentration of semaglutide in the test sample may be the result of numerous factors, not attributable to Brooksville"); *id.* ("there will always be some level of impurities in any drug product"); *id.* at 16 ("the impurities are well within the specifications"); *id.* at 2 (adverse event reports "are likely from illegal spas and unregulated weight loss clinics"). These types of merits responses cannot overcome properly-pled allegations at the motion to dismiss stage. *Baker*, 67 F.4th at 1276 ("Generally, when considering a motion to dismiss, the district court must limit its consideration to the pleadings and any exhibits attached to it.").[7]

## III. Attorneys' Fees Against Novo Are Improper.

Brooksville's assertion that it should be awarded attorneys' fees in the event its Motion is granted is frivolous. Brooksville cites no authority for such a remarkable proposition, and none of the cases cited are remotely similar to the situation here, where a court decided a close legal issue and invited the plaintiff to file an amended complaint to remedy the legal deficiency. And even on the merits

---

[7] For this reason, the December 13, 2023 declaration of Terry Myers should be disregarded in its entirety. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, No. 15-CV-164, 2015 WL 12835689, at *2 (M.D. Fla. Sept. 10, 2015) (disregarding facts "outside the four corners of the complaint" that were "supported by improperly incorporated declarations").

of the applicable test, of the six factors courts consider when assessing whether to award discretionary attorney's fees, Brooksville concedes that they can point to only two potentially-applicable factors: "whether an award of fees against the opposing party would deter others from acting in similar circumstances" and "the merits of the respective positions—including the degree of the opposing party's culpability or bad faith." *CMR Constr. & Roofing, LLC v. UCMS, LLC*, No. 20-CV-867, 2023 WL 2930825, at *5 (M.D. Fla. Feb. 9, 2023). Even these factors do not support Brooksville's position. As courts have recognized, even if this Court were to consider granting Brooksville's motion, dismissal itself is an adequate deterrent; routine awards of attorney's fees "could deter future plaintiffs from pursuing meritorious FDUTPA claims, an outcome the Court seeks to avoid." *Id.* at *6; *see also, e.g.*, *Day v. Sarasota Drs. Hosp., Inc.*, No. 19-CV-1522, 2021 WL 7450526, at *6 (M.D. Fla. Aug. 12, 2021) (similar), *R & R adopted*, 2021 WL 7450506 (M.D. Fla. Sept. 1, 2021). Nor does Brooksville present any evidence that Novo pursued this action—in which it elected to forego monetary damages—in bad faith, rather than based on a good-faith belief that Brooksville's unlawful conduct is harming patient safety. *See Walker v. Super 8 Worldwide, Inc.*, No. 08-CV-552, 2012 WL 13102080, at *3 (M.D. Fla. July 27, 2012) (finding no bad faith where defendant could "point to no meaningful evidence . . . other than reiterating the fact that Defendant ultimately prevailed at summary judgment"); *Chastain v. N.S.S.*

17

*Acquisition Corp.*, No. 08-CV-81260, 2010 WL 5463859, at *2 (S.D. Fla. Dec. 29, 2010) (declining to award attorneys' fees based on a finding that plaintiffs' claims brought under federal and state consumer protection laws were "reasonably grounded").

## **CONCLUSION**

For the foregoing reasons, the Court should deny Brooksville's Motion to Dismiss and allow this case with important implications for patient safety to proceed on the merits.

Dated: January 17, 2024                Respectfully submitted,

By:   /s/ Jordan S. Cohen
Jordan S. Cohen, Esquire
Florida Bar No. 551872
JCohen@wickersmith.com
WICKER SMITH O'HARA MCCOY
& FORD, P.A.
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
Ft. Lauderdale, FL 33301
Phone: (954) 847-4800
Fax: (954) 760-9353

Gregory L. Halperin (*admitted pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building,
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1166
ghalperin@cov.com

18

Michael X. Imbroscio (*admitted pro hac vice*)
Amee Frodle (*admitted pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
mimbroscio@cov.com
afrodle@cov.com

***Attorneys for Plaintiff***
***NOVO NORDISK INC.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of January, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will automatically send a notice of electronic filing to all counsel of record.

<i>/s/ Jordan S. Cohen</i>