UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISON

NOVO NORDISK, INC.,

    Plaintiff,

vs.

BROOKSVILLE PHARMACEUTICALS INC.,

    Defendant.

Case No.  8:23-cv-1503- WFJ-TGW

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE SECOND MOTION TO DISMISS**

Plaintiff invokes the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and the Florida Drug and Cosmetic Act (DCA) in a thinly veiled attempt to enforce the misbranding and adulteration provisions of the federal Food Drug and Cosmetic Act (FDCA). *See* First Am. Compl. (FAC) (Doc. 40) ¶¶ 18-22, 31-52 (claims for misbranding and adulteration). In a last-ditch effort to avoid preemption, Plaintiff tries to disguise its "enforce the FDCA claim" as a traditional tort claim brought by consumers – which Plaintiff is not. This Court was not deceived by Plaintiff's FDUTPA disguise the first time and should find Plaintiff's claims preempted again.

## I.      Plaintiff Cannot Enforce the FDCA or the DCA Through FDUTPA

Plaintiff's principal argument, that its FDUTPA claim seeks to enforce the state DCA, not the FDCA, elevates form over substance and should be rejected by the Court. As explained previously (*see* Doc. 42), the DCA mirrors the FDCA's adulteration and misbranding provisions (which Plaintiff does not dispute). *See* Doc. 51 (Opp.) at 12 (characterizing alleged DCA violation as "parallel [to] violation of federal law" under the FDCA). Not only are the relevant statutory definitions of adulteration and misbranding virtually identical,[1] but the Florida legislature has

---

[1] *Compare*, *e.g.*, 21 U.S.C. § 351(a)(1) (drug is adulterated if "it purports to be or is represented as a drug the name of which is recognized in an official compendium, and its strength differs from, or its quality or purity falls below, the standard set forth in such compendium"), with Fla. Stat. § 499.006 (drug is adulterated if "[i]t purports to be, or is represented as, a drug the name of which is recognized in the official compendium, and its strength differs from, or its quality or purity falls below, the standard set forth in such compendium."); and *compare*, *e.g.*, 21 U.S.C. § 352(b) (drug is misbranded "[i]f in package form unless it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor; and (2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count"), *with* Fla. Stat. § 499.007(2) (drug is misbranded "If in package form, it does not bear a label containing: (a) The name and place of business of the manufacturer, repackager, or distributor of the finished dosage form of the drug… and (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count").

1

declared that the purpose of the DCA is conformity and uniformity with the FDCA. Fla. Stat. § 499.002(1)(b),(c).

Plaintiff makes much of the fact that the text of Fla. Stat. §§ 499.005 and 499.006 does not expressly cite or refer to the FDCA. This is a semantic distinction without a difference. Indeed, the Florida Department of Business and Professional Regulation (DBPR), the agency tasked with administering and enforcing the DCA, *see* Fla. Stat. § 499.003(14), has adopted the FDCA, *see* Fla. Rule 61N-1.006(1), for "uniformity of such state and federal laws, and their administration and enforcement, throughout the United States." Fla. Stat. § 499.002(1). The FDCA generally prohibits two acts: "adulteration" and "misbranding" (*see* 21 U.S.C. § 331(a)-(c); *U.S. v. 1851 Cartons, Etc.*, 146 F.2d 760, 761 (10th Cir. 1945) (FDCA's purpose "is to prohibit the movement in interstate commerce of <u>adulterated</u> and <u>misbranded</u> foods, drugs, devices and cosmetics")) – precisely the claims alleged by Plaintiff.[2] Thus, the DCA's misbranding and adulteration provisions, which word-for-word mirror the FDCA's, are dependent upon, and would not exist separately from, the FDCA.

The FAC's adulteration and misbranding claims under the DCA are thus "of a law that says in substance 'comply with the FDCA.'" *Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs.*, 48 F.4th 1040, 1050 (9th Cir. 2022). By proving a violation of the DCA, Plaintiff would necessarily have to establish that Brooksville's semaglutide products were misbranded and adulterated under the FDCA as well, and thus the case

---

[2] Plaintiff's own characterization of its claims is that it seeks to enforce the adulteration and misbranding provisions of the DCA. *See* Case Management Report (Doc. 52) at ¶ 3.

2

"amount[s] to litigation of the alleged underlying FDCA violation even though the FDA has not itself concluded that there was a violation." *Id*. at 1049; *see also Buckman co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (requiring preemption where the FDCA "is a critical element of the[] case"). Accordingly, although Plaintiff has scrubbed the FAC of any mention of the FDCA, Plaintiff cannot avoid preemption. *See Wilson v. Colourpop Cosmetics, LLC*, No. 22-cv-05198-TLT, 2023 U.S. Dist. LEXIS 185688, at *23 (N.D. Cal. Sep. 6, 2023) (plaintiff's state law claims were preempted even though the "FDCA is not mentioned once" in the complaint).

Eleventh Circuit law requires this outcome. *See, e.g.*, *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1327-29 (11th Cir. 2017) (permitting Florida common law claims, "<u>not</u> private rights of action enforcing the violation of [the FDCA]"); *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1336 (11th Cir. 2022) ("State-law claims based on conduct that violates the [FDCA] can escape implied preemption only if the alleged wrongdoing would give rise to liability under state law even if the Act did not exist."). In *Nelson v. Wal-Mart Stores, Inc.*, the plaintiff brought an action alleging that Wal-Mart violated FDUTPA and the DCA by, *inter alia*, selling a medication deceptively advertised as effective for migraine headaches when the drug's formulation was identical to a medication that was labeled for regular headaches. *See* No. 4:14cv4-RH/CAS, 2014 U.S. Dist. LEXIS 190969 (N.D. Fla. Mar. 26, 2014). The court dismissed this claim relying in part on preemption grounds, even though the plaintiff specifically alleged a violation of the DCA. *Id*. at *2-4. Tellingly, the court would not

have relied on preemption at all, if, as Plaintiff argues, preemption does not bar claims for parallel violations of the DCA.³

The cases cited by Plaintiff are all inapposite. *See, e.g, In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356 (E.D.N.Y. 2010) (involving tort plaintiffs' false marketing/advertising that went beyond misbranding/adulteration violation); *Dayan v. Swiss-American Prods.*, No. 15-cv-6895, 2017 U.S. Dist. LEXIS 1121 (E.D.N.Y. Jan. 3, 2017) (same). In *Patane v. Nestlé Waters N. Am., Inc.*, 369 F. Supp. 3d 382 (D. Conn. 2019), the court held that state law claims based on an independent state law duty were not preempted, "even if the State has chosen to merely incorporate or otherwise track [the FDCA]." *Id*. at 390. However, *Patane* relies on California cases involving food labeling, which are questionable after the Ninth Circuit's ruling in *Nexus*. *Id*. at 390.⁴ Moreover, at least one district court has declined to follow *Patane* because the factors in favor of finding preemption in food labeling cases do not apply to drugs. *See Somers v. Beiersdorf, Inc.,* 467 F. Supp. 3d 934, 939 (S.D. Cal. 2020) ("[A]lthough food labeling is undoubtedly 'within the states'

---

³ The United States has sole enforcement authority of the FDCA and the DBPR has concurrent enforcement authority over intrastate violations of the DCA (*see, e.g., State v. Rodriguez*). The complimentary state and federal enforcement schemes promote uniformity, but do not allow a private right of action. The *Bubak v. GOLO LLC* court missed this distinction, even though it ultimately and properly found preemption. Plaintiff Novo Nordisk is neither a federal or state enforcement entity and cannot bring an action to enforce the FDCA or DCA. Indeed, 21 U.S.C. §337(a)'s private enforcement bar would be a nullity if litigants (Plaintiff) could argue that it is merely enforcing a parallel violation.

⁴ The *Patane* court relied heavily on *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008). However, the Ninth Circuit recently overturned a decision that also relied on *Farm Raised Salmon Cases*. *See Hope Med. Enters. v. Fagron Compounding Servs., LLC*, No. 2:19-cv-07748-CAS(PLAx), 2020 U.S. Dist. LEXIS 119100, at *41 (C.D. Cal. July 7, 2020) (district court opinion relying on *In re Farm Raised Salmon Cases*), *overturned by* No. 22-55173, 2023 U.S. App. LEXIS 19072, at *2 (9th Cir. July 26, 2023).

4

historic police powers,' the same cannot be said for new drug approval, a process that is uniquely federal."). Accordingly, Plaintiff fails to provide persuasive authority that its "Enforce the DCA" claims are not preempted.

Plaintiff's amorphous "unfair and likely to deceive" theory fares no better. In *Exela Pharma Sciences, LLC v. Sandoz, Inc.*, 486 F.Supp. 3d 1001 (W.D.N.C. 2020), plaintiff Excela, which sold an FDA-approved drug, sued a competitor for sale of an unapproved drug product under the North Carolina's unfair and deceptive trade practices act. Like the Plaintiff here, Excela claimed that the competitor's conduct was "unfair or deceptive." *Id*. at 1013. The court held that the North Carolina consumer protection law claim, brought by a competitor (not a consumer), was preempted because enforcement of the FDCA was exclusively within the FDA's purview. *Id*. The court further stated: "The FDCA's prohibition on private actions, however, would be thwarted if savvy plaintiffs can label as arising under a state law … a claim that in substance seeks to enforce the FDCA." *Id*. at 1012.

It is true that certain traditional state tort law claims can survive preemption if "there is a state duty that is owed <u>to the plaintiff</u> and the common law claim imposes only requirements that parallel the federal requirements." *Mink*, 860 F.3d at 1328 (emphasis added); *see also Markland v. Insys Therapeutics, Inc.*, 758 F. App'x 777, 779 (11th Cir. 2018) ("The key distinction was that a manufacturing defect claim involves a duty that both predates the FDCA and is owed to the individual patient [who brought

5

suit], not to the FDA.").[5] As such, courts have permitted claims brought by injured consumers, <u>not</u> competitors' claims to enforce the FDCA. *See Excela*, 486 F.Supp. 3d at 1012-13. This Court also recognized this "key distinction" in its prior order. *See* Doc. 33 at 4-6 (noting *Jacob/Godelia/Mink* involved "personal injury claims").

Plaintiff does not fall within this narrow exception because it is not bringing claims as an injured consumer or claims for violation of a duty owed to itself. Importantly, the FAC does not allege any conduct by Brooksville that might give rise to a traditional state law tort claim beyond the alleged FDCA adulteration and misbranding violations. Even assuming, *arguendo*, the existence of some traditional state law duty beyond the alleged adulteration and misbranding violations, such a duty is not owed to Plaintiff, but to the patients/consumers who use Brooksville's products. All of the cases cited by Plaintiff are inapposite for the above reasons. *Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331, 1343 (S.D. Fla. 2011) (mass tort case where plaintiffs' infant children were harmed from drug and manufacturer failed to warn); *Jovel v. I-Health, Inc.*, No. 12-CV-5614 (JG), 2013 U.S. Dist. LEXIS 139661, at *3 (E.D.N.Y. Sep. 27, 2013) (consumer class action for false marketing/advertising); *In re Bayer*, 701 F. Supp. 2d at 373 (same); *see also Yonan v. Walmart, Inc.*, 591 F. Supp. 3d 1291, 1300–02 (S.D. Fla. 2022) (same; relying on express, not implied preemption).

Accordingly, Plaintiff is merely trying to enforce the FDCA, rather than bring a bona fide common law tort claim. *See Gile v. Optical Radiation Corp.*, 22 F.3d 540, 544

---

[5] Another reason why the FDUTPA claim does not qualify for this exception to preemption is that the FDUTPA, enacted in 1973, post-dates the enactment of the FDCA in 1938.

6

(3d Cir. 1994) (common law products liability and negligence claims for "<u>adulterated</u>" device <u>preempted</u>); *see also Healthpoint, Ltd. v. Stratus Pharms.*, 273 F. Supp. 2d 769, 787 (W.D. Tex. 2001) (denying PI based on allegation that a drug was <u>misbranded</u> and <u>adulterated</u> due to allegedly low/varying levels of one pharmaceutical ingredient, <u>because such claims "should be resolved by the FDA"</u>). Plaintiff's FDUTPA claim, based solely on alleged misbranding and adulteration violations, encroaches on the FDA's sole authority to enforce the FDCA, and thus is preempted.

## II. Plaintiff Failed to Properly Plead a FDUTPA Claim

Plaintiff does not adequately plead consumer harm. Contrary to Plaintiff's argument that it need only plead "likely" harm, Florida courts have repeatedly held that actual consumer injury or detriment is an element of an FDUTPA claim. *See, e.g., Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) ("the claimant would have to prove that *there was an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim"); *Stewart Agency, Inc. v. Arrigo Enters.*, 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019) (plaintiff "still must prove the elements of the [FDUTPA] claim, including an injury to a consumer"); *Tutor Matching Serv., LLC v. Knack Techs., Inc.*, 01-2020-CA-3030, 2021 Fla. Cir. LEXIS 16350, at *13 (Fla. Cir. Ct. 2021) (same). It is well-established that, at the pleading stage, a complaint must "contain either direct or inferential allegations respecting all the material elements" of a claim, *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001), and "[c]onclusory

7

allegations of an actual injury are insufficient." *Arthur v. Comm'r, Ala. Dep't of Corr.*, 680 F. App'x 894, 908 (11th Cir. 2017).

Here, the allegations of harm are speculative, hypothetical, and refer to *potential* future injury that might occur from the use of compounded semaglutide products generally. "[U]ncorroborated, undefined, potential injury is insufficient to sustain plaintiff's claim." *Bowens v. Correct Health Med.*, No. CV419-175, 2019 U.S. Dist. LEXIS 228202, at *3 (S.D. Ga. Nov. 21, 2019). None of the allegations concerning alleged possible side-effects relate to Brooksville's product, and Plaintiff is required to plead "more than a sheer possibility" of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's pleading standard, if adoped, would lead to absurd results. Because most drugs have side effects, by merely referring to what "can" happen, any drug with side-effects would satisfy the consumer injury element of FDUTPA. By failing to adequately plead consumer harm, Plaintiff's FDUTPA claim must be dismissed.

## CONCLUSION

For the above reasons, the Court should dismiss the FAC with prejudice.[6]

Dated:  January 30, 2024                                   Respectfully Submitted,

By: /s/ *Matthew J. Modafferi*
Matthew J. Modafferi
Frier & Levitt, LLC
Attorneys for Defendant Brooksville

---

[6] This Court stated that Plaintiff could not bring an action to enforce the FDCA or DCA (Doc. 32 at 9-10, 23), and ultimately found Plaintiff's claim preempted. Contrary to the Court's instruction, Plaintiff filed the FAC to enforce the FDCA and DCA. Should the Court grant its second motion to dismiss, Brooksville (an independent, single-location pharmacy) seeks attorneys' fees to deter Plaintiff (a large, multinational pharmaceutical company) from dressing up the same claim in different clothes.

8