UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NOVO NORDISK INC., )
) 8:23-cv-1503-WFJ-TGW
PLAINTIFF, ) Tampa
) February 2, 2024
v. ) 9:28 a.m.
)
BROOKSVILLE PHARMACEUTICALS)
INC., )
)
DEFENDANT. )

TRANSCRIPT OF TELEPHONIC MOTION HEARING
BEFORE THE HONORABLE WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:
MR. GREGORY L. HALPERIN
Covington & Burling, LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

MR. MICHAEL X. IMBROSCIO
Covington & Burling, LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956

MR. JORDAN SCOTT COHEN
Wicker Smith O'Hara McCoy & Ford, PA
515 E Las Olas Boulevard, Suite 1400
Ft Lauderdale, FL 33301

Court Reporter: Tracey Aurelio, CRR, RMR, RDR
Federal Official Court Reporter
801 N. Florida Avenue, 15th Floor
Tampa, Florida 33602
(813) 301-5448

Proceedings recorded by mechanical stenography, transcript produced by computer.

For the Defendant:
MR. MATTHEW J. MODAFFERI
Frier Levitt, LLC
101 Greenwich Street
8th Floor, Suite 8B
New York, NY 10006

(Proceedings commenced at 9:28 a.m.)

THE COURT: Good morning. This is Judge Jung in 23-cv-1503, Novo Nordisk v. Brooksville Pharmaceuticals.

May I have appearances first for Novo?

MR. HALPERIN: Good morning, Your Honor. This is Greg Halperin from Covington & Burling on behalf of Novo.

THE COURT: Counsel.

MR. IMBROSCIO: Good morning, Your Honor. This is Michael Imbroscio from Covington & Burling on behalf of Novo.

THE COURT: All right. Thank you.

MR. COHEN: Good morning. Jordan Cohen with Wicker Smith also on behalf of Novo.

THE COURT: Thank you, Mr. Cohen.

How about for Brooksville?

MR. MODAFFERI: Good morning, Your Honor. Matthew Modafferi from Frier Levitt on behalf of Defendant Brooksville.

THE COURT: You broke up a little bit, Matt. Tell me your last name again.

MR. MODAFFERI: I apologize. The last name is Modafferi.

THE COURT: We're here on the motion to dismiss the first amended complaint. And just make a note I've read everything. The memo, the substance at the motion is at

Doc 42. There's a response at Doc 51 and a reply at Doc 53.

So why don't we -- and I have read everything. I'm quite familiar with the case. This is the second time through, but I want y'all to have your say, highlight anything.

So Mr. Halperin, are you going to be speaking for Novo?

MR. HALPERIN: I am, Your Honor.

THE COURT: Why don't you tell me what you want me to highlight. I'll try and hold you guys to 15 minutes a side since this is round two. So glad to hear from you, Mr. Halperin.

MR. HALPERIN: Sure, Your Honor. I'm happy to proceed, but it is Brooksville's motion. To the extent you want to --

THE COURT: No, no, no. You're absolutely right. We have that in reverse. Sorry about that.

We'll hear from movant, please. And as I said, the text of the document is at Doc 42. Sorry about that.

What says Brooksville?

MR. MODAFFERI: Good morning, Your Honor.

As you stated, we are here a second time in this case. The first time Your Honor had granted defendant's motion. And essentially defendant's arguments are similar to the first go-around. Plaintiff claims here that defendant has

allegedly misbranded and adulterated products.  And that's the

form of the claim that they are bringing.  Allegedly it's a

violation of the Florida Drug and Cosmetic Act, but in

substance really plaintiff claims to enforce the Federal Food,

Drug, and Cosmetic Act and the Florida Drug and Cosmetic Act.

And both statutes do not permit a private cause of action.

And the reason why I say it's really in substance to enforce

both statutes is because if you look at both statutes, both

the misbranding and the adulteration provisions in both

statutes, they're identical.

THE COURT:  Quick question, Counsel.  Is there a

direct State of Florida case that says -- I know there are

federally, on a federal statute, but a direct State of Florida

case that says there's no private action, private cause of

action under the Florida statute?

The text of the statute doesn't exactly say that.  I

think it says the department shall.  Is there any just

clear-as-day, you know, smack-me-in-the-face language that

says no private cause of action period in expressed terms in

the Florida Statutes?

MR. MODAFFERI:  Your Honor, there are several, as you

pointed out.  I believe there are actually three or four

federal causes in Florida that say that there's no private

cause of action under the Florida Drug and Cosmetic Act.  I do

believe there is some case law in the state courts as well

that give rise to that argument or that finding. I'm not quite sure if there is anything that is a head smacker, or I may be misquoting Your Honor. We could certainly provide that to the extent that that's critical to the Court.

THE COURT: Here's the other concern. I don't know, Mr. Modafferi, about this, whatever it is, this alleged contamination, but they are also saying, are they not, if you're selling a dozen eggs but when we open up the carton -- I have to accept their facts as true right now. You're selling a dozen eggs. And when we open up the carton of eggs, it's ten eggs or nine eggs. You're selling something -- another bad metaphor here -- you're telling everybody you're selling 100-proof whiskey and it's actually watered down. It's really 60-proof, 70-proof.

Putting aside the bar, that alone would be actionable under FDUTPA, wouldn't it?

MR. MODAFFERI: No, Your Honor. And that's a very good question. I think that goes to the heart of the dispute here.

So using your analogy to the allegations in the complaint and the liquor, they're saying instead of 100-proof, it's 81-proof. And really that's based on their own testing. So if we get down to the core of the case, discovery is essentially going to be about testing, testing to determine whether the products that my client sells are misbranded and

adulterated. But that testing, that's the FDA's testing that has to be done. It doesn't matter what their testing says. We don't know anything about their testing.

We submitted a declaration that you can -- there are all sorts of reasons why certain tests may not come out exactly on point, but the core of it is, this is testing and these are provisions and results that fall under the FDA's purview. It doesn't matter what their testing shows. It doesn't matter what our testing shows. It matters when the FDA walks in and they test it, it matters in their testing if Brooksville's products are consistent and meet the standards of the FDA.

So a litigant could come in and say I bought a product. It said a hundred proof but it was 90-proof and I want to bring a cause of action. That's liquor. That's different. If it's a drug, the case law is pretty clear on this, that this is the FDA's purview, and there's implied preemption. And there's good policy reasons for that.

There's a federal statutory scheme that the FDA uses to achieve a delicate balance of objectives. If private parties come along, that upsets that balance. And as we discussed the first go-around, there is a shortage of this medication. The FDA has balanced, has weighed the benefits of having compounds versus not, whether they are going to enforce, whether they're not. And this case is really all

about plaintiffs stepping into the Food and Drug Administration shoes or even the Florida Department of Business and Professional Regulation that has a concurrent enforcement authority for intrastate violations of the DCA. That's what this is all about. The plaintiff cannot enforce those rules against the defendant. The case law is clear.

THE COURT: Are you there?

MR. MODAFFERI: Yes, I'm here, Your Honor. And just to go back to my original point, and I'll close on it fairly quickly because Your Honor has a very good grasp on the subject matter.

Again, what we are dealing with here are claims for violating FDA rules. And misbranding and adulteration are the two core provisions that the FDA, you know, seeks to ensure and seeks to enforce. And that's exactly what this case is.

It's not a tort claim under traditional common law. This is the existence of the FDCA, and the misbranding and adulteration provisions are critical elements of the case. I think it's clear. We cited some cases in our papers that kind of courts are warning other courts basically don't be fooled by savvy plaintiffs. Don't be fooled by the disguises that competitors are going to put on to enforce the FDCA claims. And that's exactly what we have here. It is just another example of it.

And again as mentioned the last time, plaintiff is

not without recourse, right? They can petition the FDA for enforcement. They can petition the Florida Department of Business and Professional Regulation if there's an intrastate issue, but the law is clear that a private action is not permitted to enforce people.

And with that, Your Honor, I will save some of my time to --

THE COURT: Hold on. So suppose I get your stuff, okay. I'm probably five pounds overweight, so I wouldn't qualify. But let's say that I'm obese or whatever. I buy your stuff. This is just a hypothetical. And you guys are selling, I assume it is like an injection or something. It is just distilled water, not Brooksville but the other company down the street. It sells this stuff, advertises. It's just distilled water. They're ripping me off, taking advantage of this hot, new thing and stealing from me.

I don't have a cause of action against them?

MR. MODAFFERI: So another great question, Your Honor. You as the consumer could bring a tort claim against them, absolutely.

THE COURT: I could sue them for fraud. And that's not in the same way that these device cases where the hip implant blows up in a lady's hip. That would be my cause of action.

MR. MODAFFERI: Correct. So you would be bringing

tort claims under traditional common law consistent with the Eleventh Circuit decisions of *Mink, Godelia,* and *Jacob*, because someone who sells a product and puts it out there for consumers, they have a duty to consumers. There is no duty to a competitor. The competitor down the street, it would be their option if the store two doors down is selling a product that's basically water would be to again petition the FDA for enforcement, petition the Florida Department of Business and Professional Regulation. So everyone has their options and everyone has their recourse.

Consumers, yes, common law torts, traditional tort claims are available. Competitors, no, you cannot enforce the FDCA rules or DCA rules against a competitor. That's not the process of the Unfair Trade Practices Act.

And again, Your Honor, I think -- I'm not sure if I went over my 15 minutes or not.

THE COURT: I'll come back. I'll give you five minutes on the back side here.

MR. MODAFFERI: I appreciate it. Thank you.

THE COURT: Mr. Halperin, just a couple questions. I know it's in the record, but one wonders why there's a shortage of this. And to me there's two responses. Either you can't make enough of it, you know, your factory is overwhelmed, or the second one is it's contrived shortage for economic rent purposes.

The first reason seems -- and I know it's not relevant, but I just have to tell you what's in the judge's mind here. The first reason that you can't make enough of it, your factory is overwhelmed. It seems like everybody else is, so I'm not sure what that issue is.

What I hope and at the end of the day I'm sure Novo Nordisk being a big company is going to do what they want to do, but we are just not going around here trying to knock off the competition. So this testing, if we get there, it is going to be important that your people aren't just going around finding salt in the wrong spot and trying to stop all this, but apparently the FDA contemplates that other people are going to make this stuff because it's on that list.

Anyway, what do you say in rebuttal, Mr. Halperin?

MR. HALPERIN: Sure, Your Honor.

Novo's amended complaint is directly responsive to the Court's prior ruling and readily passes the test that Your Honor spelled out in that ruling, that to escape implied preemption, the alleged conduct must give rise to liability under state law even if the federal FDCA did not exist. That's what Your Honor articulated at Docket 33.

Novo's amended complaint is not the same complaint in disguise as Mr. Modafferi says. It differs both on the law and on the facts. The original complaint involved a provision of Florida law that expressly mentioned the FDCA; whereas, the

amended complaint relies on a provision that makes no such reference.

The original complaint alleged that Brooksville's drug was unapproved. The operative complaint alleges that Brooksville's drug had the wrong amount of active ingredients. It has nine eggs instead of twelve eggs, to use Your Honor's terms. It has dangerous impurities. It's not distilled water. It is actually harmful ingredients.

To apply the test that Your Honor articulated in its prior ruling, we can assume that tomorrow the federal government repeals the Federal Food, Drug and Cosmetic Act. Brooksville's ongoing manufacturer compounded semaglutide that contains impurities that risk patient safety. And significantly less active ingredients being represented on the label would still give rise to liability.

And I want to emphasize the patient safety consequences here because it's not as Your Honor said, picking off competition. We are bringing these suits motivated by patient safety concerns from what we seem to be a cottage industry that sprung up to take advantage of the popularity of these drugs and the demand for these drugs outpacing Novo's supply, which it is actively seeking to increase, none of which, as Your Honor noted is in the record, but I just want to note the context here. We are bringing these suits for patient safety. And the best evidence of that is we're not

seeking monetary damages. We're seeking to put an end to conduct that we believe is harming and potentially harming patients.

The test, Your Honor, articulates, gives rise to liability under state law even if the federal FDCA did not exist, is met here for two reasons. First, we brought a traditional FDUTPA claim, a claim that doesn't rely on any predicate state statute. And I will come to Your Honor's question in a moment about whether the Florida DCA has a private cause of action, but Your Honor doesn't even need to look at the Florida DCA because we've alleged a traditional FDUTPA claim, that it is unfair and deceptive, within the ordinary meaning of those terms, to sell a product that you say has one amount of ingredient and actually has another or to sell a product that actually has dangerous ingredients in it. That claim would survive even if the federal FDCA were to be repealed tomorrow.

Second, we have alleged a violation of the Florida DCA, and counsel for Brooksville keeps saying we're trying to enforce the federal DCA. We're actually not. We are expressly seeking only to bring a claim based on a violation of the Florida DCA, which stands on its own and doesn't require any reference to the federal FDCA's stated claim.

So let's start with the first reason, the traditional FDUTPA claim based on the ordinary meaning of unfair and

deceptive under FDUTPA's liberal construction.

Brooksville's motion to dismiss doesn't even address this theory at all. And its reply brief doesn't substantively engage with it, so we think that alone is enough to deny the motion to dismiss. But selling a product that says it has 2.1 milligrams per milliliter of semaglutide and actually has 1.6 milligrams per milliliter, which is the claim we brought, the pleadings that Your Honor has to accept as true at this stage, is deceptive no different than selling Coffee Mate that says it has 500 servings in it but actually has 25 percent less. That's exactly the claim that the Southern District evaluated in *Yonan*, 591 F. Supp 3d at 1301 from 2022 and said that state of deceptive trade practices claimed under FDUTPA is the exact claim that we're bringing here as to semaglutide, including almost to the exact amount the amount less of semaglutide as was alleged there with respect to Coffee Mate. And similarly, selling a product that contains impurities --

THE COURT: Yeah, but Coffee Mate is not regulated by the FDA, right?

MR. HALPERIN: It is, Your Honor. It's a food regulated by the same Food, Drug and --

THE COURT: It doesn't seem like the level of -- anyway, it's not quite a prescription drug. It's probably just ground up egg shells which, by the way, I consume every morning. Sorry.

MR. HALPERIN: It actually is regulated under the same Food, Drug and Cosmetic Act that's at issue here. Selling a drug that contains impurities that can cause anaphylaxis and other life-threatening injuries is an unfair practice under the ordinary meaning of that term because it offends established public policy and it's immoral, unethical, oppressive or unscrupulous. That argument goes entirely unrebutted by Brooksville in their papers. And we think that alone states a claim even if Your Honor were to decide there is no private cause of action under the Florida DCA and that we can't sue under FDUTPA based on a violation of the Florida DCA, but that's what I want to turn to next.

The second reason is the violation of the predicate statute, the Florida DCA that makes no reference to the federal DCA. The violation of the Florida DCA is not what we are suing on directly. Rather, our claim is that it is a per se violation of FDUTPA under Section 501.203(3) to violate the Florida DCA. The Florida DCA is a statute that prescribes unfair methods of competition or unfair, deceptive or unconscionable acts or practices. Nothing in FDUTPA says that the predicate statute has to create a private cause of action in order for that predicate statute to serve as a violation of FDUTPA.

Your Honor asked for case law. I would direct Your Honor to *Reilly v. Amy's Kitchen,* which was not in our brief,

2013 Westlaw 9638985 in the Southern District in 2013. There plaintiffs brought -- a class of plaintiffs brought a FDUTPA claim against a juice manufacturer saying, among other things, that the juice manufacturer violated the Florida DCA's misbranding provision, the same provision we bring a claim -- that we rely on for our predicate cause of action here.

The Court acknowledged that the Florida DCA doesn't have itself a private cause of action but said, quote, it is not apparent that a plaintiff must be able to maintain a private cause of action to establish a per se violation under FDUTPA. And the Court allowed that claim to proceed past a motion to dismiss.

That's consistent with the District of Connecticut case we cite in our brief, *Patane*, because it is common for consumer protection in unfair trade practices statutes to serve as a vehicle for a cause of action based on conduct that violates an independent state law standard that is not itself otherwise actionable. That's at 369 F. Supp. 3d at 394 against the District of Connecticut. So we think it's irrelevant that the underlying predicate statute itself doesn't create a cause of action if our cause of action is under FDUTPA, not the Florida DCA.

Going back to whether that claim is a preemptive claim or not, the Florida DCA makes it unlawful to sell a drug that's adulterated or misbranded. It defines what it means to

be adulterated, what it means to be misbranded without

reference to any federal law.  And so because of that, the

Florida DCA is not a statute.  The provision of the Florida

DCA that we would rely on is not a provision that says, in sum

and substance, comply with the Federal Food, Drug and Cosmetic

Act.  Instead it's a statute that says, in sum and substance,

don't sell adulterated and misbranded drugs.

So if Florida -- if the Federal Food, Drug and

Cosmetic Act were to be repealed tomorrow, the Florida DCA

would continue to make Brooksville's conduct unlawful no

different than it does today.  It makes no difference that the

conduct alleged may also violate the Federal Food, Drug and

Cosmetic Act.  Section 337a of the federal act bars

enforcement of violations, quote, of this chapter.  But Novo

is not suing under this chapter.  It's suing under the Florida

DCA which makes no reference to this chapter.

As the Court stated in its prior order, a state law

claim can survive implied preemption -- this is a direct

quote.  A state law claim can survive implied preemption even

if based on conduct that violates the FDCA.  That's Docket 33

at page 5.  That's consistent with *Jacob*.  It's consistent

with *Godelia*, and it's consistent with *Mink* where plaintiffs

explicitly pointed to breaches of federal regulations as

evidence of the state law violations that were brought in

those cases.  Where a case involves violations of both state

and federal law, litigation of the federal violation is left
to the FDA alone.  That's undisputed.  But the litigation of
the Florida DCA violation is not preempted simply because it
may also violate federal law.

And the FDA actually takes that exact same position.
In an amicus brief before the U.S. Supreme Court in
*Albertson's*, which we cited in our brief, plaintiffs brought a
claim under a California law that said a food is misbranded if
it has an artificial coloring in it but doesn't disclose the
presence of the artificial coloring.  That California law was
substantively identical to a provision in the Federal Food,
Drug and Cosmetic Act, and so defendant there said that the
claim brought under California law was preempted.

The United States submitted an amicus brief before
the Supreme Court saying, no, that claim is not preempted and
wrote, quote, actions to enforce state laws that impose
requirements identical to those under the FDCA are not actions
to enforce the FDCA itself.

Mr. Modafferi talks about how allowing private
parties to bring these circuit claims would upset the balance
of the federal FDCA.  Well, the FDA actually takes and has
taken in three things before the U.S. Supreme Court the very
opposite position.

I want to close with highlighting just how radical
the position that Brooksville takes here would be.  It would

be a radical departure from preemption jurisprudence including
from *Mink*, from *Godelia*, from *Jacob* and from the test that
Your Honor articulated previously because it would make the
Florida DCA unenforceable by anyone.  It would mean that the
Attorney General of Florida couldn't sue to bring a violation
of the types that Your Honor raised in the hypothetical, that
the Attorney General could not enforce under FDUTPA a pharmacy
that was selling distilled water and packaging it as a drug to
help with weight loose.  It would mean that consumers who
purchased that compound couldn't sue under FDUTPA.

Now, Mr. Modafferi says, well, they might have a
common law fraud claim, but that common law fraud claim would
bring the exact same preemption problems under Mr. Modafferi's
preemption test as the claim we brought here, because it would
require, in Mr. Modafferi's terms, adjudicating the FDA
testing that we don't believe, first of all, that the FDA is
the one responsible for doing the testing.  That's
Brooksville's responsibility, not the FDA's.  But even
accepting that proposition, it would mean, because the FDA is
the one responsible for the testing, the consumer couldn't
bring that common law fraud claim no different than
Mr. Modafferi's position that Novo doesn't have a claim here
because the FDA's testing is implicated.  That's a radical
proposition meaning that no one could bring a Florida DCA
claim, not the Attorney General, not consumers, and that

couldn't be what the Florida legislature had in mind when it passed the Florida DCA, and it's not required by preemption law.

So with that, Your Honor, unless Your Honor has further questions, I'll rest there.

THE COURT: All right. Well, thank you, Mr. Halperin.

Mr. Modafferi, why don't you button up anything you wish to share in rebuttal.

Mr. Modafferi is on mute. Hello.

MR. MODAFFERI: I apologize. Thank you, Your Honor.

Just buttoning up here, Mr. Halperin mentioned, you know, certain things that I had stated, one of them being the policy reasons and the federal statutory scheme that would be upset, and that's not from me. I was actually quoting the Supreme Court in *Buckman*. Presumably the test that counsel referred to as Mr. Modafferi's test, again, that's not my test. That's the Supreme Court test. So it's binding on this Court what I had mentioned before with respect to, you know, preemption and the test for preemption, but I just want to make two other quick points.

First of all, the Florida DCA is a law that says in substance comply with the FDCA. In the opening of the statute it's stated perfect. The legislature's stated purpose is conformity with the provisions and regulations issued under

the authority of the federal DCA. And Your Honor actually found that in the prior order that the Florida DCA is the law that says in substance comply with the federal DCA.

One other thing that I just want to finish on is counsel's comment about there would be no enforcement if the preemption law with respect to enforcing the FDCA through competition laws or the DCA were not available, but that's misguided. The DCA can be enforced. Violations of the DCA can be enforced by the state. That is clear. There is no private enforcement. And similarly consumers -- every case cited by my adversary, *Reilly*, *Patane*, those are all cases brought by consumers, not competitors and in filed tort claims. Yes, was there in *Patane* a consumer protection claim as well? There was, but that came to rely on California cases, a line of California cases that have since been basically rejected by the Ninth Circuit in the *Nexus Pharmaceuticals* case and the *Hope* case that followed.

So with that, I don't want to beat this drum. Your Honor has a very good handle on the issues here. We're dealing with a drug, not a food which, as Your Honor said, is a little more relaxed. And we submit that plaintiff's claim shall be or should be under *Buckman* and other binding case law preempted as a matter of law.

Thank you.

THE COURT: Well, I sure appreciate both arguments at

this high level.

Well, Mr. Modafferi, I'm going to deny your motion to dismiss. I'm not at all sure that -- I guess we'll find out whether the altruistic motive behind this lawsuit is as Mr. Halperin said. I hope it is. I certainly know he believes it is.

I don't intend to write a big order here because this is sui generis. I don't need to create a bunch of precedence for what I think is a very unique factual pattern related strictly to Brooksville. So the motion to dismiss is denied. I'm going to need an answer from Brooksville, say, in 14 days.

Now, let's do this on the case management report, Counsel. I saw where y'all just said we'll hold off until you get a ruling on this. And I saw where you requested a preliminary pretrial conference. I'm not sure you need that. You guys are A team on both sides. See if you can agree on a case management report. And if you can't, then file competing reports within 14 days, and I'll lay those out on my desk and see what looks good.

All right. Anything else from the movant, Mr. Modafferi, today?

MR. MODAFFERI: Yes, Your Honor. Two quick points, the first of which is this case is marked for mediation. So I'm not quite sure -- I would assume that we were kind of just waiting for the briefing to be resolved before the mediator

stepped in. I'm not too familiar with the mediation process in the Middle District of Florida, but I feel like that would have a direct impact on our case management plan.

Should we reach out to the mediator that's been selected and work with that individual?

THE COURT: Sure. Now, let me look here. McClelland, bright guy. That's right. So why don't you all communicate on that.

Now, I'm not going to require instanter mediation or early mediation. If the parties agree, that's fine. If not, put your deadline in your proposed case management report.

What was the other point, Mr. Modafferi?

MR. MODAFFERI: The other thing I was just going to say, Your Honor, for purposes of the record and, you know, circling back to my client for purposes of, you know, explaining the decisions and whether there will be any appeal, I understand that a lengthy order would not be required, but to the extent Your Honor is amenable, even a text order might work.

THE COURT: I'm certainly going to deny the motion on the record, but I'm sure your client understands that you will inform them that this is a nonfinal order. I'm not aware of any grounds for appeal in a normal course, but I'm pretty sure there's not any appeal from a denial of a motion to dismiss, but you may counsel them in any way you want. So there will

be a marginal order come out denying the motion. It is just based on the facts in the complaint, and I have to accept them as true. They may or may not be true. They are saying that you are selling a dozen eggs, to continue the multiple bad metaphors, and people are getting nine, and we will see how the case shakes out. I think the argument put up by Novo is well taken and carried the day today.

Anything else, Mr. Modafferi?

MR. MODAFFERI: No. Thank you, Your Honor. That would be all.

THE COURT: Answer within 14 days. Case management either together within 14 days or competing versions within 14 days.

Mr. Halperin, anything from you?

MR. HALPERIN: No, Your Honor. Thank you very much.

THE COURT: Thank you, Counsel. I appreciate it. Good day.

(Proceedings concluded at 10:05 a.m.)

UNITED STATES DISTRICT COURT )
)
MIDDLE DISTRICT OF FLORIDA )

**REPORTER TRANSCRIPT CERTIFICATE**

I, Tracey Aurelio, Official Court Reporter for the United States District Court, Middle District of Florida, certify, pursuant to *Section 753, Title 28, United States Code*, that the foregoing is a true and correct transcription of the stenographic notes taken by the undersigned in the above-entitled matter (Pages 1 through 25 inclusive) and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States of America.

/s *Tracey Aurelio*

Tracey Aurelio, RMR, RDR, CRR
Official Court Reporter
United States District Court
Middle District of Florida
Tampa Division
Date: February 7, 2024