# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISON

|  |  |
|---|---|
| NOVO NORDISK, INC., | Case No. 8:23-cv-1503-WFJ-TGW |
| Plaintiff, | |
| v. | **DEFENDANT'S NOTICE OF MOTION TO COMPEL DISCOVERY** |
| BROOKSVILLE PHARMACEUTICALS INC., | |
| Defendant. | |

Pursuant to Fed. R. Civ. P. 37(a), Defendant Brooksville Pharmaceuticals Inc. submits this Notice of Motion to Compel Discovery. This Notice is filed and served alongside the attached Memorandum of Law.

Dated: October 28, 2024

By:    */s/ Matthew J. Modafferi*
Matthew J. Modafferi
Frier & Levitt, LLC
*Attorneys for Defendant*
101 Greenwich Street, Ste 8B
New York, NY 10006
Tel: (646) 970-2711
mmodafferi@frierlevitt.com

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISON

NOVO NORDISK, INC.,

                                  Plaintiff,

      v.                                    Case No. 8:23-cv-1503-WFJ-TGW

BROOKSVILLE
PHARMACEUTICALS INC.,

                                  Defendant.

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
# RENEWED MOTION TO COMPEL DISCOVERY

## PRELIMINARY STATEMENT

Plaintiff Novo Nordisk, Inc. ("Novo") initiated the present suit against Brooksville Pharmaceuticals Inc. ("Brooksville"), alleging that Brooksville's compounded semaglutide contains impurities that pose a risk to patient safety. *See* First Amended Complaint ("FAC") ¶¶ 9-22, 32-39. Conversely, Novo claims that its semaglutide products (e.g., Ozempic and Wegovy) are safer than Brooksville's compounded semaglutide "because they contain impurities not present in the pharmaceutical-grade semaglutide in Novo's FDA-approved products." *Id.* ¶ 52; *see also id.* ¶¶ 31-32. Thus, Novo has put the issue of safety front and center in this case.[1] In fact, Novo has repeatedly represented that its primary motive in bringing this suit is "for patient safety."[2] Discovery on the overall safety of Novo's drugs is not just relevant, but ***necessary*** to Brooksville's defenses that its conduct is not "unfair" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

Novo's claims are premised on the lack of safety and efficacy of Brooksville's compounded semaglutide compared to Novo's products, and Brooksville is entitled to test such allegations in discovery by seeking documents and information directly relevant to the safety and efficacy of

---

[1] Novo also placed at issue the efficacy of the parties' products. *See* FAC ¶ 37 ("Upon information and belief, Defendant's drugs are less effective than Novo Nordisk's FDA-approved medicines.").

[2] *See* Feb. 2, 2024 Hr'g Tr. at 12-13 (Novo brought suit "for patient safety").

1

Novo's semaglutide products. *See Hoewischer v. Cedar Bend Club, Inc.*, 877 F. Supp. 2d 1212, 1224 (M.D. Fla. 2012) (noting that a defendant "may test Plaintiff's allegations through the discovery process"). However, Novo has refused to provide the requested discovery that relates to the safety of its products. The Court should thus order Novo to provide complete production and responses to the discovery identified herein.

## SUMMARY OF ALLEGATIONS IN THE AMENDED COMPLAINT

Novo alleges that compounded drugs often use API that contain impurities are less safe than the API used for FDA-approved drugs. FAC ¶ 9. The FAC dedicates seven pages to describing potential risks of compounded drugs generally and past adverse health events caused by compounded drugs, even though these risks and past events do not relate to Brooksville's compounded semaglutide. *Id.* ¶¶ 9-17.[3] Novo further alleges that testing performed on Brooksville's compounded semaglutide revealed that it contains peptide-related impurities not present in Novo's semaglutide products, including unknown impurities that present "unknown safety risks." *Id.* ¶ 31. Testing also revealed that Brooksville's compounded semaglutide contains 19% less pharmaceutical ingredient than labeled and is less effective than Novo's products. *Id.* ¶¶ 33-37.

---

[3] The import of these allegations is clear: drug compounding is inherently dangerous and less safe, and Novo's FDA-approved semaglutide products, which are not compounded, are thus safer than Brooksville's compounded semaglutide.

## SUMMARY OF FACTS LEARNED IN DISCOVERY

On May 30, 2023, Brooksville received a prescription for compounded semaglutide for a patient, D.S. Although the patient resides in South Carolina, D.S. requested that the compounded semaglutide be sent to an address in Wexford, PA. On June 1, 2023, Brooksville mailed the compounded semaglutide using overnight delivery. That day, the temperature high in Brooksville, FL was 88 degrees Fahrenheit. On June 2, 2023, the compounded semaglutide arrived at its destination in Wexford, PA, which was a UPS Store. On June 2 and 3, the temperature highs for Wexford, PA were 88- and 90- degrees Fahrenheit, respectively.[4] On June 9, 2023, Novo obtained the compounded semaglutide sent to patient D.S. and conducted testing on the compounded semaglutide intended for patient D.S. on June 27, 2023, roughly 4 weeks after it was dispensed.

Moreover, the version of Brooksville's compounded semaglutide tested by Novo was made using semaglutide sodium, a formulation that Brooksville ceased compounding in June 2023 due to guidance from the FDA. Brooksville

---

[4] Because semaglutide is sensitive to heat, the compounded semaglutide tested became less potent and suffered degradation, in which the semaglutide API degrades into impurities over time. Even still, the compounded semaglutide had less peptide-related impurities than the FDA-approved product.

ceased compounding said formulation voluntarily and unilaterally before Novo filed its lawsuit against Brooksville.[5]

## <u>PROCEDURAL HISTORY</u>

On March 12, 2024, Brooksville served its First Set of Interrogatories ("ROGs") and Document Requests to Novo ("1st RFPs"). *See* **Exhibit A**. On April 11, 2024, Novo served its initial responses to these Requests and on April 19, Brooksville sent Novo a deficiency letter regarding its responses. *See* **Exhibit B** (Brooksville's First Deficiency Letter). Later, Novo served amended responses to the RFPs and Interrogatories on May 28, 2024. *See* **Exhibit C** (Novo's Am. Responses to 1st ROGs). On May 30, 2024, Brooksville served its Third Set of Document Requests to Novo ("3rd RFPs"), to which Novo served its responses on July 1, 2024. *See* **Exhibits D** (3rd RFPs), **E** (Novo's response to 3rd RFPs). On July 2, 2024, Brooksville served its Notice of Deposition of Novo's corporate representative, with Novo's responses and objections served August 3, 2024. *See* **Exhibit F** (Dep. Notice), **G** (Novo's Responses and Objections to Dep. Notice).

---

[5] For this reason, even if Novo's allegations were true, the requested relief in the FAC for an injunction against the continued sale of misbranded and adulterated drugs (i.e., Brooksville's salt-based compounded semaglutide) is moot. Mootness is a jurisdictional issue which may be raised by the Court *sua sponte. Griffin v. Sec'y, Dep't of Corr.*, No. 8:17-cv-2750-CEH-UAM, 2024 U.S. Dist. LEXIS 153328 (M.D. Fla. Aug. 27, 2024). A court must find a case moot where it "can no longer offer any effective relief to the claimant." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018).

On September 12, 2024, Brooksville filed its first motion to compel, *see* ECF No. 67 (1st Mot.), and the same day, Novo supplemented its production of documents. *See* **Exhibits H (**Novo's 2d Am. Responses to 1st RFPs), **I** (Novo's Am. Responses to 3rd RFPs). Brooksville's motion to compel was denied without prejudice, *see* ECF No. 79.[6]

On October 8, 2024, Brooksville filed its second motion to compel, *see* ECF No. 80 (2d Mot.), which was also denied without prejudice.[7]

The parties had numerous back-and-forth communications to attempt to resolve outstanding discovery disputes. *See*, *e.g.*, **Exhibit J** (June 3 Letter to Novo), and **Exhibit K** (June 21 Response Letter to Brooksville).

## ARGUMENT

### I.    Legal Standard

The overall purpose of discovery under the Federal Rules of Civil Procedure is to require the disclosure of all relevant information as to make "trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). "Only strong public policies

---

[6] Brooksville mistakenly believed that the first motion would be decided by the Honorable Willaim F. Jung and thus did not comply with Your Honor's former Local Rule 3.04(a) requirement and filed a reply without seeking the Court's leave in accordance with Judge Jung's Individual Preferences. *See* ECF No. 60 (Case Management Order) at 4 (noting Judge Jung "permits Replies as a matter of course"). The undersigned apologizes for the oversight.

[7] This Motion addresses each disputed discovery request individually, as required by Your Honor's procedural rules.

weigh against disclosure." *Id*. "The Federal Rules of Civil Procedure strongly favor full discovery whenever possible, but the trial court is given wide discretion in setting the limits of discovery." *Herman v. Seaworld Parks & Entm't, Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 U.S. Dist. LEXIS 90880, at *5 (M.D. Fla. July 13, 2016) (quoting *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)). "The party resisting discovery has the burden to show that the requested discovery is not relevant and that the production of such discovery would be unduly burdensome." *Benavides v. Velocity IQ, Inc.*, No. 8:05-CV-1536-T-30, 2006 U.S. Dist. LEXIS 14777, 2006 WL 680656, at *2 (M.D. Fla. Mar. 15, 2006). Novo has failed to meet this burden on any of the disputed discovery requests outlined herein.

## I.    Outstanding Discovery Disputes

<u>Interrogatory 3</u>. Identify each adverse event or instance of patient harm associated with the use of Your semaglutide product, including but not limited to:

      - all adverse events reported to the FDA as fifteen-day reports of serious, unlabeled adverse events, quarterly or annual periodic reports, and "lack of effect" reports;
      - all product defect reports that involved an adverse event;
      - all adverse events and other reports, including immunogenicity testing results, in which Your semaglutide product was shown to have provoked an immune response in a patient or animal.

      RESPONSE: Novo objects to this interrogatory on the grounds that it is overbroad, disproportionate to the needs of this case, and requests information that is irrelevant to any claim or defense.

<u>Why Interrogatory 3 should be Ordered</u>:

As narrowed during the parties' meet and confers, Brooksville agreed to narrow Interrogatory 3 to seek information regarding adverse events reported by a Florida consumer after taking Novo's semaglutide products that involved either an immunological reaction, hospitalization or death, or an FDA 15-day alert report.[8] However, Novo unilaterally has limited its responses to Interrogatory 3 to immunological reactions, and has objected on the grounds that the general safety of Novo's semaglutide medicines are outside the scope of discovery.

However, the scope of discovery is not dictated by any party, but by what is relevant to the claims and defenses in the case. Fed. R. Civ. P. 26(b)(1). The FAC is replete with allegations that Brooksville's compounded semaglutide poses safety risks to patients, and that Novo's semaglutide products are comparatively safer. *See*, *e.g.*, FAC ¶¶ 9 (compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs"), 39 (Brooksville's compounded semaglutide "jeopardizes public health"), 52 (Brooksville's compounded semaglutide "were made under conditions whereby they could have been rendered 'injurious to health'"). Novo even emphasized

---

[8] An FDA 15-day alert report is a post marketing alert report that must be submitted to the FDA within 15 calendar days of receiving information about a serious and unexpected adverse experience. *See* https://www.fda.gov/drugs/investigational-new-drug-ind-application/ind-application-reporting-safety-reports.

that it brought this lawsuit for patient safety. *See* FAC at 1. Thus, the safety of Novo's products and Novo's semaglutide API, in comparison to Brooksville's compounded semaglutide, is a central allegation in the FAC.

It is axiomatic that "[a] party cannot make allegations against another and then refuse to produce materials relevant to those allegations." *TEC Serv, Ltd. Liab. Co. v. Crabb*, No. 11-62040-CIV-DIMITROULEAS/S, 2012 U.S. Dist. LEXIS 199880, at *23 (S.D. Fla. Dec. 21, 2012). "Plaintiff may not file a lawsuit in this Court [...] and then be heard to complain when Defendants engage in appropriate discovery tailored to Plaintiff's allegations." *Rance v. Bradshaw*, No. 15-cv-81210, 2016 U.S. Dist. LEXIS 129579, at *6 (S.D. Fla. Sep. 14, 2016); *see also Avirgan v. Hull*, 116 F.R.D. 591, 592 (S.D. Fla. 1987) (permitting discovery to issues "clearly related to the central allegations of the complaint"). Likewise, Novo cannot put the issue of the safety of Novo's semaglutide products front and center, then refuse discovery on that very issue.

By bringing a claim for unfair and deceptive practices under FDUTPA and seeking, *inter alia*, injunctive relief, Novo, not Brooksville, opened the door to discovery on the safety of Novo's products. FDUTPA defines an "unfair" practice as conduct that causes injury to a consumer which is "not [] outweighed by any countervailing benefits to consumers or competition that the practice produces." *See Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. Dist. Ct. App. 2014); *Envtl. Mfg. Sols., LLC v. Fluid Grp. Ltd.*,

No. 6:18-cv-156-Orl-40KRS, 2018 U.S. Dist. LEXIS 131382, at *51 (M.D. Fla. May 9, 2018). In other words, central to Brooksville's defense is a showing that Brooksville's compounded semaglutide produces "countervailing benefits" that outweigh any injury to a Florida consumer. In turn, if Brooksville's compounded semaglutide is generally safer than Novo's semaglutide drugs (unrelated to immunogenicity), then such a finding would be conclusive evidence of such "countervailing benefits."

The overall safety of Novo's semaglutide products is also directly relevant to Novo's request for injunctive relief (and Brooksville's defenses thereto). To be awarded injunctive relief under FDUTPA, a plaintiff must not only establish a FDUTPA violation, but further satisfy the traditional elements for an injunction, including (a) irreparable injury; (b) balance of hardships; and (c) the public interest. *See Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC*, No. 20-cv-25318-BLOOM/Otazo-Reyes, 2023 U.S. Dist. LEXIS 107479, at *32 (S.D. Fla. June 20, 2023). Thus, Brooksville may be able to defeat Novo's request for injunctive relief by demonstrating that its compounded semaglutide is generally safer than Ozempic and Wegovy, such that an injunction prohibiting Brooksville from selling its compounded semaglutide would be contrary to public interest.

Novo asserts that even if Novo's medicines were unsafe for reasons unrelated to immunogenicity, "that safety issue would have no bearing on

9

whether Brooksville's drugs were adulterated[.]" Opp. at 7. But Novo's narrow focus on "adulteration" as the sole issue in the case suggests that this lawsuit is merely an attempt to privately enforce the adulteration and misbranding provisions of the FDCA – a charge Novo has artfully denied before the Court, *see, e.g.*, ECF No. 56 (2/2/24 Hr'g Tr.) at 13-14. Novo cannot unilaterally limit discovery by investigating and privately enforcing the FDCA and the Florida DCA against Brooksville, while shielding its own products from discovery that bear on Novo's allegations in the FAC.

The comparative safety of Brooksville's compounded semaglutide is an essential element of Brooksville's defenses in this case. Brooksville is thus entitled to obtain discovery relating to the overall safety of Novo's products, including information regarding adverse events reported by a Florida consumer after taking Novo's semaglutide products that involved either an immunological reaction, hospitalization or death, or an FDA 15-day alert report.

Document Request 5. Produce any and all Documents related to any adverse events suffered or reported by patients after taking Your semaglutide products.

> RESPONSE: Novo objects to this request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of this case in its request for "all Documents." Novo objects to this request on the grounds that it requests information that is irrelevant to any claim or defense. Novo maintains that information about adverse event reports for Novo's semaglutide medicines, which do not contain the impurities in Brooksville's products, are irrelevant. Nevertheless, in order to resolve

this dispute, Novo produced documents related to adverse events reported by Florida consumers involving Novo's semaglutide medicines that involved an immunological response based on specified MedDRA terms at NNI-BV_001390.

<u>Why Document Request 5 should be Ordered</u>:

This request should be ordered for the same reasons set forth in detail under Interrogatory 3 *supra*. As an initial matter, Brooksville agreed to limit this request to adverse events reported by a Florida consumer after taking Novo's semaglutide products that involved either an immunological reaction, hospitalization or death, or an FDA 15-day alert report. Novo cannot unilaterally limit the scope of discovery on the safety risks of its semaglutide drugs to immunogenicity or adverse events involving immunological reactions.

Not only is the comparative safety and superiority of Novo's and Brooksville's semaglutide drugs a central allegation in the FAC—which Brooksville is entitled to test in discovery, *see Hoewischer*, 877 F. Supp. 2d at 1224—but the general safety risks of Novo's semaglutide products, even unrelated to immunogenicity, comprise an issue that is directly relevant to Brooksville's defense that Brooksville's compounding produces "countervailing benefits" in favor of the public interest, as explained *supra*. Accordingly, Brooksville is entitled to all documents regarding adverse events reported by a Florida consumer after taking Novo's semaglutide products that involved

either an immunological reaction, hospitalization or death, or an FDA 15-day alert report.

<u>Document Request 10.</u> Produce all adverse event reports or any other Documents You submitted to the FDA relating to Your semaglutide products, including, but not limited to, 15-day reports, quarterly or annual periodic reports, "lack of effect" reports, and Form 1639 reports.

> RESPONSE: Novo objects to this request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of this case, and vague in its request for "all adverse event reports" and "any other Documents You submitted to the FDA relating to Your semaglutide products." Novo further objects to this request on the grounds that it requests information that is irrelevant to any claim or defense. Novo maintains that information about adverse event reports for Novo's semaglutide medicines, which do not contain the impurities in Brooksville's products, are irrelevant. Nevertheless, in order to resolve this dispute, Novo produced documents related to adverse events reported by Florida consumers involving Novo's semaglutide medicines that involved an immunological response based on specified MedDRA terms at NNI-BV_001390.

<u>Why Document Request 10 should be Ordered</u>:

This request should be ordered for the same reasons set forth in detail under Interrogatory 3 and Document Request 5 *supra*. Brooksville agreed to limit this request to adverse events reported by a Florida consumer after taking Novo's semaglutide products that involved either an immunological reaction, hospitalization or death, or an FDA 15-day alert report. However, Novo unilaterally has limited its response to immunological reactions, and has objected on the grounds that the general safety of Novo's semaglutide medicines are outside the scope of discovery.

12

Not only is the comparative safety and superiority of Novo's and Brooksville's semaglutide drugs a central allegation in the FAC—which Brooksville is entitled to test in discovery, *see Hoewischer*, 877 F. Supp. 2d at 1224—but the general safety risks of Novo's semaglutide products, even unrelated to immunogenicity, comprise an issue that is directly relevant to Brooksville's defense that Brooksville's compounding produces "countervailing benefits" in favor of the public interest, as explained *supra*. Accordingly, Brooksville is entitled to all documents regarding adverse events reported by a Florida consumer after taking Novo's semaglutide products that involved either an immunological reaction, hospitalization or death, or an FDA 15-day alert report.

<u>Document Request 11</u>. Produce all adverse event reports or any other Documents that relates to hospitalization or death of a patient after taking Your semaglutide product.

> RESPONSE: Novo objects to this request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of this case in its request for "all adverse event reports" and "any other Documents that relates to hospitalization or death of a patient after taking Your semaglutide product" and requests information that is irrelevant to any claim or defense. Novo is withholding responsive documents based on these objections.

<u>Why Document Request 11 should be Ordered</u>:

This request should be ordered for the same reasons set forth in detail under Interrogatory 3 and Document Requests 5 and 10 *supra*. As mentioned, Brooksville agreed to limit this request to adverse events reported by a Florida

consumer after taking Novo's semaglutide products that involved either an immunological reaction, hospitalization or death, or an FDA 15-day alert report. Novo unilaterally has limited its response to immunological reactions, and has objected on the grounds that the general safety of Novo's semaglutide medicines are outside the scope of discovery.

Not only is the comparative safety and superiority of Novo's and Brooksville's semaglutide drugs a central allegation in the FAC—which Brooksville is entitled to test in discovery, *see Hoewischer*, 877 F. Supp. 2d at 1224—but the general safety risks of Novo's semaglutide products, even unrelated to immunogenicity, comprise an issue that is directly relevant to Brooksville's defense that Brooksville's compounding produces "countervailing benefits" in favor of the public interest, as explained *supra*. Accordingly, Brooksville is entitled to all documents regarding adverse events reported by a Florida consumer after taking Novo's semaglutide products that involved either an immunological reaction, hospitalization or death, or an FDA 15-day alert report.

Document Request 32. Produce any and all New Drug Applications (NDAs) for Your semaglutide products.

> RESPONSE: Novo objects to this request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of this case in its request for "all New Drug Applications." Novo further objects to this request on the grounds that it requests information that is irrelevant to any claim or defense. Subject to and without waiving these objections, Novo produced portions of the NDA relevant to impurities in

14

Novo's semaglutide products at NNI-BV_001454–2909; NNI-BV_002912–7597.

<u>Why Document Request 32 should be Ordered</u>:

Brooksville has narrowed this request to documents and information relating to the Chemistry, Manufacturing and Control ("CMC") section of the NDA, which in addition to impurity information (what Novo is limiting its responses to) contains information submitted to the FDA regarding the processes for manufacturing, preparing, storing, and quality assurance processes for Novo's semaglutide API, as well as the products' overall safety, potency, and effectiveness profiles.[9] Each of these topics is relevant to the overall safety of Novo's products and, as explained above, Brooksville is entitled to test the overall safety and efficacy of Novo's products in discovery. While Novo has agreed to produce the part of the CMC that solely relates to impurities, Novo has failed to provide any adequate basis to justify withholding the rest of the CMC.

For example, Novo alleges that its semaglutide API is superior to the API used in Brooksville's compounded semaglutide. *See*, *e.g.*, FAC ¶ 10 (Brooksville's compounded semaglutide may contain higher impurities and the "wrong ingredients, contain too little, too much or no active ingredient at all,

---

[9] To the extent that sections of the CMC are not relevant, such as such as sections relating to the style of packaging, the environmental impact assessment, and the floor plans of manufacturing facilities, Brooksville agrees that these sections do not need to be produced.

15

or contain other harmful ingredients."). To test this allegation, Document Request 32 seeks documents relevant to how Novo's API is manufactured and formulated. Novo's arguments that producing the rest of the CMC would be unduly burdensome and disproportionate are unpersuasive, as Novo has already produced limited portions of the CMC.

Accordingly, the Court should grant the Motion to Compel as to Document Request 32.

<u>Deposition Topic 9</u>: Adverse Events related to Your Semaglutide Product and documents from the FDA bearing Bates stamped Brooksville_002298 and Brooksville_002299.

> RESPONSE: Novo objects to this topic on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of this case, and requests information that is irrelevant to any claim or defense. Adverse events unrelated to immunogenicity, allergic reactions, hypersensitivity, and anaphylaxis are irrelevant to this litigation. Further, documents produced by Brooksville and which were not created by Novo are not the proper subject of 30(b)(6) testimony. Novo will not provide a witness to testify on this Topic.

<u>Why Deposition Topic 9 should be Ordered</u>:

The documents referenced at Brooksville_002298 and Brooksville_002299 are from the FDA Adverse Event Reporting System (FAERS) database.[10] They contain spreadsheets of "serious" adverse events reported to the FDA, most of which were submitted by Novo. Brooksville is

---

[10] *Available at* https://www.fda.gov/drugs/fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard.

entitled to corporate testimony about these adverse events that Novo alerted to the FDA. This is another example of Novo unilaterally refusing to produce relevant discovery. To recap, Novo refuses to produce documents relating to adverse events reported by a Florida consumer that involved either an immunological reaction, hospitalization or death, or an FDA 15-day alert report _and_ refuses to provide testimony from publicly available sources relating to serious adverse events. Brooksville seeks judicial intervention to obtain the relevant discovery relating to safety risks of Novo's products.

<u>Deposition Topic 10</u>: Any side-effects and alleged side-effects of Your Semaglutide Products (including immunogenicity, allergic reactions, hypersensitivity, anaphylaxis, gastroparesis) and allegations relating to gastroparesis.

> RESPONSE: Novo objects to this topic on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of this case, and requests information that is irrelevant to any claim or defense. Subject to these objections and the General Objections above, Novo will provide a witness to testify to the side effects and alleged side effects of its Semaglutide Products related to immunogenicity, allergic reactions, hypersensitivity, and anaphylaxis.

<u>Why Deposition Topic 10 should be Ordered</u>:

This request should be ordered for the same reasons set forth in detail under Interrogatory 3 and Document Requests 5 and 10 _supra_. Novo cannot arbitrarily and unilaterally limit the scope of discovery on the safety risks of the parties' semaglutide drugs to immunogenicity or adverse events involving immunological reactions.

Not only is the comparative safety and superiority of Novo's and Brooksville's semaglutide drugs a central allegation in the FAC—which Brooksville is entitled to test in discovery, *see Hoewischer*, 877 F. Supp. 2d at 1224—but the general safety risks of Novo's semaglutide products, even unrelated to immunogenicity, comprise an issue that is directly relevant to Brooksville's defense that Brooksville's compounding produces "countervailing benefits" in favor of the public interest, as explained *supra*. Accordingly, Brooksville is entitled to corporate testimony regarding all side-effects of Novo's semaglutide drugs, even those unrelated to immunogenicity, such as gastroparesis.

<u>Deposition Topic 13</u>: Any complaints made by Florida consumers or healthcare professionals about Your semaglutide products that relate to a lack of safety, lack of potency, immunogenicity, allergic reactions, hypersensitivity, anaphylaxis, and gastroparesis.

> RESPONSE: Novo objects to this topic on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of this case, and requests information that is irrelevant to any claim or defense. Subject to these objections and the General Objections above, Novo will provide a witness to testify to customer complaints made by Florida consumers related to immunogenicity, allergic reactions, hypersensitivity, and anaphylaxis.

<u>Why Deposition Topic 13 should be Ordered:</u>

This request should be ordered for the same reasons set forth in detail under Interrogatory 3 and Document Requests 5 and 10 *supra*. Novo cannot arbitrarily and unilaterally limit the scope of discovery to the safety and

potency of Brooksville's compounded semaglutide only, while refusing to produce any discovery on the safety and potency of Novo's semaglutide drugs. Novo also cannot limit the scope of discovery on the safety risks of the parties' semaglutide drugs to immunogenicity or adverse events involving immunological reactions, but refuse to produce discovery on non-immunological adverse events, such as gastroparesis.

Not only is the comparative safety and superiority of Novo's and Brooksville's semaglutide drugs a central allegation in the FAC—which Brooksville is entitled to test in discovery, *see Hoewischer*, 877 F. Supp. 2d at 1224—but the general safety risks of Novo's semaglutide products, even unrelated to immunogenicity, comprise an issue that is directly relevant to Brooksville's defense that Brooksville's compounding produces "countervailing benefits" in favor of the public interest, as explained *supra*. Accordingly, Brooksville is entitled to corporate testimony regarding all complaints made by a Florida consumer after taking Novo's semaglutide products relating to lack of safety, lack of potency, immunogenicity, allergic reactions, hypersensitivity, anaphylaxis, and gastroparesis.

<u>Deposition Topic 30</u>: The Chemistry, Manufacturing and Control ["CMC"] section of the New Drug Application(s) for Ozempic® and Wegovy®.

> RESPONSE: Novo objects to this topic on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of this case, and requests information that is irrelevant to any claim or defense. Subject to these objections and the General Objections above, Novo will

provide a witness to testify to the specific sections of the Chemistry, Manufacturing and Control section of the New Drug Applications for Ozempic and Wegovy that relate to testing of impurities in Novo's semaglutide products, produced at NNI-BV_000565–580, NNI-BV_000870–924.

<u>Why Deposition Topic 30 should be Ordered</u>:

This request should be ordered for the same reasons set forth in detail under Document Request 32 *supra*. The CMC section of the NDA includes information relating to impurities, the processes for manufacturing, preparing, storing, and quality assurance processes for Novo's semaglutide API, as well as the products' overall safety, potency, and effectiveness profiles. Each of these topics is relevant to the overall safety of Novo's products and, as explained above, Brooksville is entitled to test the overall safety and efficacy of Novo's products in discovery and question a Novo representative accordingly. Novo should be compelled provide corporate testimony on the CMC sections which are produced under Document Request 32.[11]

---

[11] Based on Novo's representations made in its October 22, 2024 submission to the Court, the parties are in agreement as to Deposition Topic 31.

## <u>CONCLUSION</u>

For the above reasons, the Court should grant the Motion and compel responses to the above discovery requests and deposition topics, and any other relief as the Court deems just and proper.

Dated:  October 28, 2024                                Respectfully Submitted,

By: <u>/s/*Matthew J. Modafferi*</u>
Matthew J. Modafferi
Frier & Levitt, LLC
*Attorneys for Brooksville*
101 Greenwich Street, Suite 8B
New York, New York 10006
(646) 970-2711
mmodafferi@frierlevitt.com

21

## LOCAL RULE 3.01(G) CERTIFICATION

Counsel for the parties have conferred as to the outstanding discovery disputes via email, letter correspondence, and video calls.  Plaintiff opposes the motion but reserves the right to amend its position after review of Brooksville's motion papers.

By: */s/Matthew J. Modafferi*
Matthew J. Modafferi
Frier & Levitt, LLC
