UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| NOVO NORDISK, INC., <br><br> Plaintiff, <br><br> v. <br><br> BROOKSVILLE PHARMACEUTICALS INC., <br><br> Defendants. | Case No. 8:23-cv-1503-WFJ-TGW |

**BROOKSVILLE'S MOTION FOR ENTITLEMENT TO PREVAILING PARTY ATTORNEYS' FEES AND COSTS PURSUANT TO FLA. STAT. § 501.2105**

Pursuant to Local Rule 7.01, Brooksville Pharmaceuticals, Inc. ("Brooksville") hereby moves for an award of attorneys' fees and costs under the Florida Deceptive and Unfair Trade and Practices Act, Fla. Stat. § 501.2105(1) ("FDUTPA").

### I.  Introduction

Novo Nordisk Inc. ("Novo") filed suit against Brooksville for allegedly selling adulterated and misbranded drugs that ***may*** be harmful – even though Novo was aware from the start that its claims were based on the flawed testing of degraded samples of Brooksville's compounds. *See* ECF No. 118-3 (Brooksville's Statement of Material Facts ("SMF")) at ¶¶ 20-27, 47-49, 83-85.

After filing a wholly speculative lawsuit, Novo failed to procure evidence to substantiate its claims in discovery. Indeed, Novo was not aware of any instances of patient harm caused by Brooksville's semaglutide compounds. And yet, Novo continued to pursue litigation even after it became clear that its case was without merit.

In the present litigation, there were many such inflexion points where it became evident that litigation should not have continued – even putting aside the fact that private entities like itself are barred from enforcing the adulteration and misbranding provisions of the Food Drug and Cosmetic act and the Florida Drug and Cosmetic Act.

The first came in October 2024, when Novo received testing results indicating that ███████████████████████████████████████ ███████████████████████████████████. SMF at ¶¶ 95-97. The second came near the close of fact discovery, when Novo realized there was ***zero*** evidence of consumer injury and consequently Novo's FDUTPA claim was bound to fail. Not only that, Novo knew much earlier in the case – presumably from conducting its mandatory Rule 11 investigation – that there was ***no*** evidence that Brooksville's compounded semaglutide was actually unsafe for patients. SMF at ¶¶ 104-06 (Novo testified that it was not aware of any patient injuries nor "any complaints or adverse events reported by patients or

2

healthcare providers specifically relating to Brooksville's compounded semaglutide.").

At each of the above developments, any reasonable plaintiff would have realized that its claim lacked merit and voluntarily dismissed the suit. Novo did the opposite. Novo doggedly pressed onward with the litigation, while opposing efforts by Brooksville to avoid protracted and unnecessary litigation. Specifically, on November 4, 2024, near the close of fact discovery, Brooksville moved to stay expert discovery and to bifurcate summary judgment briefing, raising the legal defects in Novo's case that Brooksville ultimately prevailed on — *i.e.*, preemption, mootness, and lack of consumer injury. *See* ECF No. 89 (Stay Mot.) at ¶ 14 ("Through discovery, Brooksville has identified several dispositive motions that can be made now based on the current factual record, including pre-emption, mootness…"); ECF No. 92 (Reply Br.) at 2-3 ("Novo has failed to produce any evidence of consumer injury caused by Brooksville, let alone a 'substantial' injury as required by FDUTPA").

Novo opposed the stay request. ECF No. 91 (Opp.). As a result, the parties expended hundreds of hours and hundreds of thousands of dollars in expert and attorney fees on expert discovery that had little or no bearing on the ultimate disposition of the case. Even after Brooksville's summary judgment motion was filed in February 2025, and after another judge in this district dismissed two virtually identical FDUTPA claims brought by Novo

3

against other compounders, Novo pursued what it acknowledged as an "aggressive" April trial date. *See* ECF No. 120 at 6. Novo baselessly accused Brooksville's counsel of seeking to "scuttle the trial date" and other misconduct before the Court, when Brooksville merely sought adjudication of likely meritorious legal defenses before expending further time and resources preparing for trial. Had Novo agreed to stay the case pending the Court's summary judgment ruling, Brooksville could have avoided, *inter alia*, deposing Novo's five expert witnesses, opposing Novo's *Daubert* motions, reviewing Novo's 2,787 trial exhibits, and other tasks.

The record in this matter shows Novo's disregard for the Parties' and the Court's limited time and resources. At minimum, Novo is directly responsible for the fees and costs borne by Brooksville after the close of fact discovery (December 30, 2024)—the date Novo knew it could not satisfy the elements of a FDUTPA claim (due to the lack of evidence of consumer injury) and yet refused to agree to a stay of costly expert discovery. Accordingly, the Court should award Brooksville its fees and costs after December 30, 2024.

## II. Fees and Costs Incurred by Brooksville Since December 31, 2024

Frier Levitt, LLC ("Frier Levitt") represented Brooksville and two attorneys, Matthew J. Modafferi, and Chunsoo "Terence" Park, were almost exclusively involved in the defense of Brooksville in this case. *See generally*

4

Civil Docket Sheet. In addition, Frier Levitt retained, on behalf of Brooksville, two expert witnesses, Amy Summers, PharmD, BCSCP, and Thomas Kupiec, Ph.D. Dr. Summers and Dr. Kupiec both expended a substantial amount of time reviewing the records in the case, authoring their expert reports, and testifying at their depositions.

As explained above, Brooksville is only seeking fees and costs incurred since December 30, 2024, after the close of fact discovery – when the numerous defects in the case were abundantly clear to Novo. The following is a fair estimate of the fees and costs incurred and paid by Brooksville from December 30, 2024 to the present:

<u>Attorneys' Fees</u>: $307,830
<u>Expert Fees</u>: $111,037.50
<u>Costs</u>: $20,871.13

Pursuant to Local Rule 7.01(b), this is a motion on entitlement to fees. After an order granting the motion and determining Brooksville's entitlement to fees and expenses, Brooksville will submit a supplemental motion as to the amount, including evidence as to the reasonable hourly rates and number of hours spent by Brooksville's attorneys and experts on this case and the expenses incurred by Brooksville.

### III. <u>Legal Standard</u>

Under FDUTPA, "[t]he trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for

the hours actually spent on the case as sworn to in an affidavit." Fla. Stat. § 501.2105(3); *see also Alhassid v. Bank of Am., N.A.*, 688 F. App'x 753, 757 (11th Cir. 2017) ("The [FDUTPA] statute provides that a prevailing party is entitled to reasonable attorneys' fees and costs in civil litigation."). The FDUTPA prevailing party fee provision applies with equal force to prevailing plaintiffs and defendants. *See Lanard Toys Ltd. v. Dolgencorp, LLC*, No. 3:15-CV-849-MMH-PDB, 2021 U.S. Dist. LEXIS 257355, at *37 (M.D. Fla. Aug. 20, 2021), as corrected (Oct. 19, 2021) (trial court "has discretion to award attorney's fees to a prevailing plaintiff *or a prevailing defendant*" (emphasis added)).

In exercising discretion to award fees and costs under FDUTPA, courts consider, without limitation, the following factors: (i) the scope and history of the litigation; (ii) the ability of the nonprevailing party to pay fees; (iii) whether an award of fees would deter future conduct by others in similar circumstances; (iv) the merits of the parties' positions, including the nonprevailing party's culpability or bad faith; (v) whether the claim was frivolous, unreasonable, or groundless; (vi) whether the nonprevailing party raised a defense mainly to delay the case; and (vii) whether the case posed a significant legal question. *Humane Soc'y of Broward Cty., Inc. v. Fla. Humane Soc'y*, 951 So. 2d 966, 971 (Fla. Dist. Ct. App. 2007); *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, No. 6:14-CV-2004-ORL-40KRS, 2018 U.S. Dist. LEXIS 67703, at *11 (M.D. Fla.

Mar. 26, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 67702 (M.D. Fla. Apr. 13, 2018). A prevailing party is not required to establish that the opposing party's position was frivolous, unreasonable or groundless to be entitled to a fee award. *HRCC*, 2018 U.S. Dist. LEXIS 67703, at *11-12.

### IV. Brooksville is Entitled to an Award of Fees and Costs as the Prevailing Party

Upon review of the *Humane Society* factors, the equities strongly support an award of fees and costs requested by Brooksville. Each factor is addressed in turn below.

#### a. Factor 1: Scope and History of the Litigation

This matter has been ongoing for nearly two years, and has involved vigorous litigation by both sides and substantial discovery and motion practice, including two motions to dismiss, two *Daubert* motions, discovery-related motions, stay/scheduling motions, sealing motions, and, finally, a summary judgment motion. *See, e.g.*, ECF Nos. 17, 41, 67, 80, 87, 89, 101, 105, 109, 116, 118, 128, 129, 130. This Court has routinely awarded attorneys' fees in FDUTPA cases that resolve at summary judgment after multiple years of complex discovery and litigation. *See Bluhm v. Wyndham Vacation Ownership, Inc.*, No. 6:19-cv-2300-WWB-LHP, 2024 U.S. Dist. LEXIS 111681, at *21 (M.D. Fla. June 25, 2024) (awarding attorneys' fees for defendant after granting summary judgment; litigation lasted 3 years and involved complex discovery);

7

*Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2017 U.S. Dist. LEXIS 131349, at *31 (S.D. Fla. Aug. 17, 2017) (awarding defendant fees after granting defendants' summary judgment motion after 4.5 years of discovery). Thus, this is not a case involving a "limited scope and relatively brief litigation history" that might weigh against a FDUTPA fee award. *See Hard Rock Cafe Int'l USA, Inc. v. Rockstar Hotels, Inc.,* No. 17-CV-62013, 2019 U.S. Dist. LEXIS 85437, at *28 (S.D. Fla. May 20, 2019) (litigation was dismissed after less than a year and involved no discovery).

Some courts have declined to find that this factor weighs in favor of a fee award where both parties litigated the case "in an aggressive manner" such that "neither party should be held solely accountable for the extensive length and scope of the litigation*." Reilly v. Chipotle Mexican Grill, Inc.,* No. 15-Civ-23425-COOKE/TORRES, 2018 U.S. Dist. LEXIS 14411, at *12 (S.D. Fla. Jan. 26, 2018). Not so here. After December 30, 2024, the extensive scope of litigation was driven entirely by Novo. Brooksville, anticipating that its arguments would prevail at summary judgment, repeatedly sought to hit the brakes on this litigation until the Court issued its summary judgment ruling. *See* ECF Nos. 89 (Mot. to Stay and Bifurcate Summary Judgment Briefing), 119 (Mot. to Stay Case Deadlines Until After Summary Judgment). Novo, in contrast, refused to acknowledge the evidentiary and legal gaps in its case, and proceeded to litigate the case as if it were infallible. *See* ECF No. 120 at 4 n.4

8

(characterizing Brooksville's summary judgment motion as "utterly meritless"). This is similar to *Fuccillo v. Century Enters.*, in which the court awarded fees for the defendant where the plaintiffs "proceeded to drag on with litigation" past the point it was clear that their claims were meritless. No. 8:18-cv-1236-T-36AEP, 2020 U.S. Dist. LEXIS 32887, at *11 (M.D. Fla. Jan. 15, 2020). *see also Collar v. Abalux, Inc.,* No. 16-20872-CIV-LENARD/GOODMAN, 2019 U.S. Dist. LEXIS 223174, at *2 (S.D. Fla. Mar. 6, 2019) (court awarded fees after determining that Plaintiff's counsel "was on notice of fatal defects in the lawsuit" yet did not voluntarily dismiss the case).

In other words, Novo "continued to litigate a case [it] knew to be frivolous and expended additional costs and fees for Defendants." *Id.* at *12; *see also Reilly*, 2018 U.S. Dist. LEXIS 14411, at *12 (awarding fees where plaintiff "unreasonably multiplied … the expenses" in the case). Accordingly, Novo is responsible for the extensive scope of litigation after December 30, 2024, and this factor weighs in favor of a fee award.

### b. Factor 2: Ability of the Nonprevailing Party to Pay Fees

"The Eleventh Circuit has long held that a district court should consider financial ability to pay in the award of attorney's fees and costs to a prevailing defendant." *Armstrong v. KG*, No. 8:21-cv-2771-SCB-DAB, 2023 U.S. Dist. LEXIS 190022, at *19 (M.D. Fla. Oct. 23, 2023) (finding the ability-to-pay

9

factor weighed in favor of fee award where non-prevailing party failed to provide specific evidence they were unable to pay the proposed fee award).

Novo is a pharmaceutical company with an annual revenue in the hundreds of billions of dollars. There is no question that Novo can pay the reasonable and limited subset of Brooksville's fees and costs incurred after December 30, 2024. Accordingly, this factor weighs in favor of a fee award.

### c. Factor 3: Whether an Award of Fees Would Deter Future Conduct by Others in Similar Circumstances

This Court has awarded fees under FDUTPA where such an award "would deter others from bringing baseless FDUTPA claims." *HRCC*, 2018 U.S. Dist. LEXIS 67703, at *14. In *Armstrong v. KG*, this Court also noted that a fee award would deter "unwarranted FDUTPA claim" where the plaintiff had brought identical "cookie-cutter complaints" against numerous Defendants. *See* 2023 U.S. Dist. LEXIS 190022, at *21-23.

Novo has filed other "cookie-cutter" FDUTPA suits against compounders, such that a fee award is necessary to deter future suits. *Compare* ECF No. 40 (Am. Compl.) *with Novo Nordisk Inc. v. Wellhealth Inc.*, M.D. Fla. No. 3:23-cv-782, Doc. 44 (Am. Compl.); *and Novo Nordisk Inc. v. Live Well Drugstore, LLC*, M.D. Fla. Noo. 3:23-cv-808, Doc. 70 (Am. Compl.). Like the present case, the complaints in *Wellhealth* and *Live Well* do not identify any

10

instance of consumer injury as a result of the respective defendants' compounds, and were found by Judge Conway to be preempted.

In an attempt to uproot and obliterate the practice of drug compounding, Novo has attacked compounders for financial profit. The Supreme Court has explained the purpose and value of compounding – even that it is "a traditional component of the practice of pharmacy and is taught as part of the standard curriculum at most pharmacy schools." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 360-61 (2002); *see id.* ("Drug compounding is a process by which a pharmacist or doctor combines, mixes, or alters ingredients to create a medication tailored to the needs of an individual patient. Compounding is typically used to prepare medications that are not commercially available, such as medication for a patient who is allergic to an ingredient in a mass-produced product."). But Novo has continued its assault on compounders. It continues to press similar FDUTPA claims against compounders and has appealed the decisions in *Wellhealth* and *Live Well*. Novo also is actively mailing cease-and-desist letters to compounders across the country, threatening litigation if the recipients do not stop selling compounded drugs containing semaglutide. *See* ECF No. 137 at 2 n.2. Thus, there is ample reason to believe that Novo will continue to file similar meritless and preempted FDUTPA claims against compounding pharmacies, and a fee award would help deter such lawsuits moving forward. Accordingly, this factor weighs in favor of a fee award.

11

### d. Factors 4 and 5: Merits of the Parties' Positions and Whether the Claim was Frivolous, Unreasonable, or Groundless

Brooksville submits that both factors 4 and 5 support an award of fees because Novo protracted a litigation which it knew was groundless at least as of the close of fact discovery.

Novo testified at its deposition that it was not aware of any instance of consumer injury caused by Brooksville's compounded semaglutide, *see* SMF at ¶¶ 102-107, and fact discovery did not produce any additional evidence of consumer injury—a necessary element of a FDUTPA claim, *see Stewart Agency, Inc. v. Arrigo Enterprises, Inc.*, 266 So. 3d 207, 214 (Fla. 4th DCA 2019). Thus, at least as of December 31, 2024, Novo knew or should have known that its FDUTPA claim was "frivolous, unreasonable or groundless."

Novo also knew that its allegations of misbranding and adulteration were based on biased and wholly unreliable test results. By now the Court is familiar with the flawed process used by Novo to obtain and test Brooksville's compounded semaglutide through a third party, IP Services. In 2023, Novo ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████ frozen sample of Novo's drug substance (not a finished drug product, like Brooksville's). *See* SMF ¶¶ 28-54. Novo's own testing results confirmed that ████████████████████████████████████████. *Id.*

¶ 49. In June and July 2024, Novo repeated the same surreptitious method to obtain Brooksville's samples and again compared them many weeks later to frozen and pristine samples of Novo's drug product and drug substance. *Id.* ¶¶ 55-89. Notably, by June 2024 the parties were actively engaged in discovery, and Novo could have requested to inspect Brooksville's compounds under controlled conditions. Yet, despite Novo stacking the deck against Brooksville, ███████████████ ███ ██████████████████████ ██████████████████████████. *Id.* ¶¶ 95-96. Novo obtained these results in October 2024, but still Novo continued litigating for nine months (entailing summary judgment briefing, Daubert motions, pre-trial proceedings) when Novo knew that its allegations were false and defamatory.

Accordingly, there is ample ground for the Court to conclude that Novo's claims were "frivolous, unreasonable, or groundless" at least as of December 30, 2024, which supports an award of fees and costs incurred by Brooksville since that date.

### e. Factor 6: Whether the Nonprevailing Party Raised a Defense Mainly to Delay the Case

This factor has no applicability to the present case, since Novo is not a Defendant. Accordingly, this factor is neutral.

### f. Factor 7: Whether the Case Posed a Significant Legal Question

This case can simply be characterized as Novo using FDUPTA to attack its competition during a drug shortage. Such a disguised attempt to be the Food and Drug Administration did not pose any significant or novel legal questions. Instead, this case was resolved based on application of well-established Eleventh Circuit law on preemption and clear-cut Florida law on the elements of a FDUTPA claim. The lack of a significant legal question in the case renders this factor neutral. *Rockstar Hotels*, 2019 U.S. Dist. LEXIS 85437, at *29.

\* \* \*

Accordingly, all of the *Humane Society* factors either are neutral or weigh in favor of a fee award. Based on FDUTPA's equitable factors, the Court should award Brooksville all fees and costs incurred after December 30, 2024 – which again is a very reasonable and limited time-period given the facts and circumstances of this litigation.

## CONCLUSION

For the above reasons, Brooksville respectfully requests that the Court enter an order granting Brooksville's entitlement to an award of attorneys' fees, expert fees, and costs from December 30, 2024 to the present.

Dated: May 27, 2025                                      Respectfully Submitted,

By: /s/ Matthew J. Modafferi
Matthew J. Modafferi
Frier & Levitt, LLC
101 Greenwich Street, Ste 8B
New York, NY 10006
Tel: (646) 970-6882
Fax: (646) 524-5027
mmodafferi@frierlevitt.com